## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| TAMARA MELLON BRAND, LLC, *et al.* | ) Case No. 15-_____ (___) |
| | ) |
| Debtor.[1] | ) |
| | ) |

## DISCLOSURE STATEMENT FOR DEBTOR'S PREPACKAGED PLAN OF
## REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

### DECEMBER 2, 2015

Derek C. Abbott, Esq.
Daniel B. Butz, Esq.
MORRIS, NICHOLS, ARSHT & TUNNELL
LLP
1201 N. Market Street, 16th Floor
Wilmington, Delaware 19801
(302) 658-9200

*Attorneys for Proposed Debtor*
*Tamara Mellon Brand, LLC*

TAMARA MELLON BRAND, LLC HAS NOT COMMENCED A CASE UNDER THE BANKRUPTCY CODE AT THIS TIME. THIS DISCLOSURE STATEMENT AND ACCOMPANYING PLAN OF REORGANIZATION SOLICITS ACCEPTANCES OF THE PLAN PRIOR TO THE FILING OF A VOLUNTARY REORGANIZATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE.

---

[1]     The last four digits of the Debtor's federal tax identification number are 7426. The Debtor's address is 660 Madison Avenue, New York, NY, 10065.

## DISCLAIMER

Tamara Mellon Brand, LLC, as proposed chapter 11 debtor and debtor in possession ("TMB" or the "Debtor"), is sending you this document and the accompanying materials (the "Disclosure Statement") because you may be a creditor entitled to vote on the Debtor's Prepackaged Chapter 11 Plan of Reorganization, as the same may be amended from time to time (the "Plan")². To the extent you are entitled to vote on the Plan, the Debtor is commencing the solicitation of your vote to approve the Plan (the "Solicitation") before the Debtor files a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

If the required creditors vote to approve the Plan and if other pre-filing conditions are satisfied, the Debtor intends to file a voluntary reorganization case (the "Chapter 11 Case") under chapter 11 of the Bankruptcy Code to implement the Plan. In order to expedite the Debtor's reorganization, however, the Debtor may commence the Chapter 11 Case prior to the Voting Deadline (as defined herein).

Because the Chapter 11 Case has not yet been commenced, this Disclosure Statement has not been approved by the Bankruptcy Court as containing "adequate information" within the meaning of Bankruptcy Code section 1125(a). Following the commencement of the Chapter 11 Case, the Debtor expects to seek an order of the Bankruptcy Court promptly to (a) approve this Disclosure Statement as having contained "adequate information," (b) approve the solicitation of votes as having been in compliance with Bankruptcy Code section 1126(b) and (c) confirm the Plan. The Bankruptcy Court may order additional disclosures.

The Plan has not been approved or disapproved by the SEC or any state securities commission and neither the SEC nor any state securities commission has passed upon the accuracy or adequacy of the information contained herein. Any representation to the contrary is a criminal offense. Neither the Solicitation of the Plan nor this Disclosure Statement constitutes an offer to sell nor the solicitation of an offer to buy securities in any state or jurisdiction in which such offer or solicitation is not authorized.

The deadline to accept or reject the Plan is *6:00 a.m. (prevailing Eastern Time) on December 3, 2015* (the "Voting Deadline") unless the Debtor extends the Voting Deadline. To be counted, a ballot ("Ballot") indicating acceptance or rejection of the Plan must be actually received by the Debtor and its counsel no later than the Voting Deadline.

---

²      Capitalized terms defined in this Disclosure Statement shall be used as defined herein whenever appearing in capitalized form, regardless of whether appearing in the singular, plural or possessive form(s). All capitalized terms not otherwise defined in this Disclosure Statement shall have the meanings set forth in the Plan; to the extent such terms are not defined in the Plan, they shall have the meanings ascribed under Section 101 of the Bankruptcy Code.

The Debtor cannot assure you that the Disclosure Statement, including any exhibits thereto, that is ultimately approved by the Bankruptcy Court in the Chapter 11 Case (a) will contain any of the terms described in this Disclosure Statement or (b) will not contain different, additional, or material terms that do not appear in this Disclosure Statement.  The Debtor urges each holder of a Claim entitled to vote on the Plan (i) to read and consider carefully this entire Disclosure Statement (including the Plan and the matters described under the "Risk Factors" section below) and (ii) to consult with its own advisors with respect to reviewing this Disclosure Statement, the Plan and each of the proposed transactions contemplated thereby prior to deciding whether to vote to accept or reject the Plan.  A creditor entitled to vote on the Plan should not rely on this Disclosure Statement for any purpose other than to determine whether to vote to accept or reject the Plan.

If the Plan is confirmed by the Bankruptcy Court and the Effective Date occurs, all holders of Claims against, and Interests in, the Debtor (including, without limitation, those holders of Claims or Interests who do not submit Ballots to accept or reject the Plan, to the extent applicable, or who are not entitled to vote on the Plan) will be bound by the terms of the Plan and the transactions contemplated thereby.

THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER, BUT, RATHER, AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.    THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO CONSTITUTE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN AS IT RELATES TO HOLDERS OF CLAIMS AGAINST OR INTERESTS IN THE DEBTOR. PARTIES SHOULD CONSULT WITH THEIR OWN COUNSEL, ACCOUNTANTS, AND/OR TAX ADVISORS WITH RESPECT TO THE LEGAL EFFECTS AND OTHER CONSEQUENCES OF THE PLAN.

THE DEBTOR AND THE REORGANIZED DEBTOR, AS APPROPRIATE, RESERVE THE RIGHT TO OBJECT TO THE AMOUNT OR CLASSIFICATION OF ANY CLAIM OR INTEREST.

THE ESTIMATES SET FORTH IN THIS DISCLOSURE STATEMENT CANNOT BE RELIED ON BY ANY CREDITOR OR INTEREST HOLDER WHOSE CLAIM OR INTEREST IS SUBJECT TO AN OBJECTION.  A CLAIM HOLDER WHOSE CLAIM IS SUBJECT TO AN OBJECTION MAY NOT RECEIVE THE SPECIFIED SHARE OF THE ESTIMATED DISTRIBUTIONS DESCRIBED IN THIS DISCLOSURE STATEMENT.

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ............................................................................................................ 1

II.     IMPORTANT INFORMATION ABOUT THE DISCLOSURE STATEMENT .............. 1

III.    QUESTIONS AND ANSWERS REGARDING THIS DISCLOSURE STATEMENT
        AND THE PLAN......................................................................................................... 3
        A. What is chapter 11? .......................................................................................... 3
        B. What is a "prepackaged" plan of reorganization?............................................ 3
        C. Why is the Debtor sending me this Disclosure Statement? .............................. 3
        D. Am I entitled to vote on the Plan? ................................................................... 4
        E. How do I vote on the Plan and what is the Voting Deadline?................................ 5
        F. Why is the Bankruptcy Court holding a Confirmation Hearing and
           when is the Confirmation Hearing set to occur?............................................... 5
        G. What is the purpose of the Confirmation Hearing? ............................................ 6
        H. What is the effect of the Plan on the Debtor's ongoing business? .......................... 6
        I. Who do I contact if I have additional questions with respect to this
           Disclosure Statement or the Plan?..................................................................... 6
        J. Does the Debtor recommend voting in favor of the Plan? ..................................... 6

IV.     GENERAL INFORMATION CONCERNING THE DEBTOR......................................... 7
        A. Overview of the Debtor and its Business.............................................................7
        B. The Term Loan Financing; New Equity Financing ...............................................7

V.      ANTICIPATED EVENTS DURING THE CHAPTER 11 CASE........................................ 8
        A. Commencement of Chapter 11 Case and First Day Orders....................................8
        B. Financing Facilities...............................................................................................9
           1. Debtor in Possession Financing ....................................................................... 9
           2. Post-Confirmation Financing of TMB ........................................................... 9
        C. Stay of Pending Litigation Proceedings and Potential Removal of Pending Litigation
           Proceedings to the Bankruptcy Court ...................................................................9
        D. Expected Timetable of the Chapter 11 Case..........................................................9

VI.     SUMMARY OF THE PLAN OF REORGANIZATION................................................. 10
        A. Summary of Treatment of Claims and Interests under the Plan ...........................10
        B. General Basis for the Prepackaged Plan ..............................................................11
        C. Plan Objectives ...................................................................................................11
        D. Classification and Allowance of Claims and Interests Generally.......................11
        E. Classification and Treatment of Unclassified Claims under the Plan.................12
           1. DIP Financing Claims..................................................................................... 12
           2. Administrative Expense Claims...................................................................... 12
           3. Fee Claims....................................................................................................... 13
           4. Priority Tax Claims......................................................................................... 13
        F. Treatment of Classified Claims and Interests under the Plan.............................13
           1. Class 1 – Other Priority Claims ..................................................................... 13

|  |  |  |
|---|---|---|
|  | 2. Class 2 – Other Secured Claims | 14 |
|  | 3. Class 3 – Term Loan Claims | 14 |
|  | 4. Class 4– General Unsecured Claims | 14 |
|  | 5. Class 5–Equity Interests | 15 |
| G. | Description of the Restructuring Transaction and Recapitalization of TMB | 15 |
|  | 1. Conversion into a Corporation or Transfer and Vesting of Assets in NewCo | 15 |
|  | 2. Issuance of TMB Stock | 15 |
|  | 3. New TMB's Officers and Board of Directors | 15 |
| H. | Distributions On Account of Allowed Claims | 15 |
| I. | Executory Contracts and Unexpired Leases | 17 |
|  | 1. General Treatment | 17 |
|  | 2. Cure of Defaults | 17 |
| J. | Means of Implementing the Plan | 19 |
|  | 1. Operations Between the Confirmation Date and Effective Date | 19 |
|  | 2. Exit Financing; Initial Capitalization of New TMB | 19 |
|  | 3. Issuance of New Stock. | 19 |
|  | 4. Cancellation of Certain Indebtedness, Agreements, and Existing Securities. | 20 |
|  | 5. Corporate Action. | 20 |
| VII. | EFFECTS OF CONFIRMATION OF THE PLAN | 20 |
| A. | Continued Corporate Existence and Vesting of Assets. | 20 |
| B. | Waiver of Avoidance Actions | 21 |
| C. | Preservation of Causes of Action. | 21 |
| D. | Claims Incurred After the Effective Date. | 22 |
| VIII. | Discharges, Releases and Injunctions | 22 |
| A. | General Settlement of Claims and Interests. | 22 |
| B. | Subordination of Claims. | 22 |
| C. | Discharge of the Debtor. | 22 |
| D. | Release of Liens. | 23 |
| E. | Releases by the Debtor. | 23 |
| F. | Exculpation. | 24 |
| G. | Injunction. | 25 |
| H. | Limitations on Exculpations and Releases. | 26 |
| I. | Preservation of Insurance. | 26 |
| IX. | CONDITIONS PRECEDENT to CONFIRMATION AND CONSUMMATION OF THE PLAN | 26 |
| A. | Conditions Precedent to Effectiveness. | 26 |
| B. | Effective Date of the Plan. | 26 |
| C. | Waiver of Conditions Precedent to the Effective Date | 27 |
| D. | Effect of Failure of the Effective Date of the Plan | 27 |
| X. | JURISDICTION OF BANKRUPTCY COURT. | 27 |
| A. | Retention of Jurisdiction | 27 |
| B. | Modification of Plan | 29 |
| C. | Revocation or Withdrawal of the Plan. | 29 |

| XI. | MISCELLANEOUS PROVISIONS | 29 |
|---|---|---|
| A. | Immediate Binding Effect. | 29 |
| B. | Governing Law. | 30 |
| C. | Filing or Execution of Additional Documents. | 30 |
| D. | Term of Injunctions or Stays. | 30 |
| E. | Withholding and Reporting Requirements. | 30 |
| F. | Exemption From Transfer Taxes. | 30 |
| G. | Plan Supplement. | 31 |
| H. | Conflicts. | 31 |

| XII. | GENERAL INFORMATION ON VOTING AND CONFIRMATION PROCEDURE | 31 |
|---|---|---|
| A. | Voting On the Plan. | 31 |
| B. | Voting Record Date | 32 |
| | 1. Who May Vote | 32 |
| | 2. Eligibility. | 32 |
| | 3. Binding Effect | 32 |
| C. | Procedure/Voting Deadlines | 32 |
| D. | Plan Confirmation Process. | 33 |
| | 1. Requirements. | 33 |
| | 2. Confirmation Hearing | 36 |

| XIII. | RISK FACTORS | 36 |
|---|---|---|
| A. | Bankruptcy Factors | 36 |
| | 1. Classifications of Claims and Interests | 36 |
| | 2. Non-Occurrence of the Effective Date. | 36 |
| | 3. Failure to Receive Requisite Accepting Votes. | 37 |
| | 4. Nonconsensual Confirmation. | 37 |
| | 5. Failure to Confirm the Plan. | 37 |
| | 6. Risk of Additional or Larger Claims. | 38 |
| | 7. Alternative Chapter 11 Plan. | 38 |
| | 8. Variances from Projections. | 38 |
| | 9. Certain tax implications of the Chapter 11 Case. | 39 |
| | 10. The Debtor's emergence from chapter 11 is not assured | 39 |
| | 11. The Debtor may fail to satisfy solicitation requirements. | 39 |
| | 12. Confirmation and consummation may be delayed if the Debtor has to resolicit. | 40 |

| XIV. | CERTAIN FEDERAL INCOME TAX CONSEQUENCES. | 40 |
|---|---|---|
| A. | Certain U.S. Federal Income Tax Consequences to the Debtor and Reorganized Debtor | 41 |
| B. | Certain U.S. Federal Income Tax Consequences to Holders of Allowed Claims or Interests | 41 |
| C. | Importance of Obtaining Professional Tax Assistance | 42 |

| XV. | ALTERNATIVES TO THE PLAN | 42 |
|---|---|---|

| XVI. | RECOMMENDATIONS | 43 |
|---|---|---|

XVII.  CONCLUSION................................................................................................ 43

## I.    INTRODUCTION

TMB submits this Disclosure Statement dated December 2, 2015 to certain holders of Claims and Interests in connection with the solicitation of acceptances with respect to the Plan. A copy of the Plan is attached hereto as Exhibit A and incorporated herein by reference. This Disclosure Statement describes certain aspects of the Plan, including the treatment of holders of Claims and Interests, and also describes certain aspects of the Debtor's operations, financial projections, and other related matters.

The purpose of this Disclosure Statement is to set forth information (a) regarding the Debtor's history, its business and the proposed Chapter 11 Case, (b) concerning the Plan and alternatives to the Plan, (c) advising the holders of Claims against and Interests in the Debtor of their rights under the Plan, (d) assisting the holders of Claims against in the Debtor in making an informed judgment regarding whether they should vote to accept or reject the Plan and (e) assisting the Bankruptcy Court in determining whether the Plan complies with the provisions of chapter 11 of the Bankruptcy Code and should be confirmed.

Because certain investors in TMB would not consent to allow additional secured or unsecured funding with priority over their dividend preference, the Debtor will be forced to seek protection under Chapter 11 of the Bankruptcy Code.

After giving effect to the transactions contemplated by the Plan, the Debtor will emerge from chapter 11 and will be appropriately capitalized with access to financing to support its emergence and go-forward business needs.

As provided by Article IX of the Plan, the Debtor may also undertake certain other restructuring transactions to implement the Plan.

**TMB BELIEVES THAT THE COMPROMISE CONTEMPLATED UNDER THE PLAN IS FAIR AND EQUITABLE, MAXIMIZES THE VALUE OF THE ESTATE AND PROVIDES THE BEST RECOVERY TO CLAIM HOLDERS.  AT THIS TIME, THE DEBTOR BELIEVES THIS IS THE BEST AVAILABLE ALTERNATIVE FOR COMPLETING THE CHAPTER 11 CASE.  FOR THESE REASONS AND OTHERS DESCRIBED HEREIN, THE DEBTOR STRONGLY RECOMMENDS THAT CREDITORS ENTITLED TO VOTE ON THE PLAN VOTE TO ACCEPT THE PLAN.**

## II.    IMPORTANT INFORMATION ABOUT THE DISCLOSURE STATEMENT

This Disclosure Statement provides information regarding the Plan.  The Debtor believes that the Plan is in the best interests of all creditors and urges all holders of Claims entitled to vote on the Plan to accept the Plan.

Unless the context requires otherwise, any references to *"we," "our" and "us"* are to the Debtor.

The confirmation and effectiveness of the Plan are subject to certain material conditions precedent described herein and in the Plan.  There is no assurance that the Plan will be

confirmed, or if confirmed, that the conditions required to be satisfied for the Effective Date to occur will be satisfied (or waived).

*If you are a creditor entitled to vote on the Plan, you are encouraged to read this Disclosure Statement in its entirety, including without limitation, the Plan, and the section entitled "Risk Factors," before submitting your Ballot to vote on the Plan.*

Summaries of the Plan and statements made in this Disclosure Statement are qualified in their entirety by reference to the Plan, this Disclosure Statement, and the Plan Supplement, and any exhibits, schedules or amendments thereto, as applicable, and the summaries of the financial information and the documents annexed to this Disclosure Statement, or otherwise incorporated herein by reference, are qualified in their entirety by reference to those documents. The statements contained in this Disclosure Statement are made only as of the date of this Disclosure Statement, and there is no assurance that the statements contained herein will be correct at any time after such date. Except as otherwise provided in the Plan or in accordance with applicable law, the Debtor is under no duty to update or supplement this Disclosure Statement.

The information contained in this Disclosure Statement is included for purposes of soliciting acceptances to, and confirmation of, the Plan and may not be relied on for any other purpose. The Debtor believes that the summary of certain provisions of the Plan and certain other documents and financial information contained or referenced in this Disclosure Statement is fair and accurate.

The Debtor has sought to ensure the accuracy of the financial information provided in this Disclosure Statement, but the financial information contained in, or incorporated by reference into, this Disclosure Statement has not been, and will not be, audited or reviewed by the Debtor's independent auditors unless explicitly stated herein.

The Debtor is relying on section 4(a)(2) of the Securities Act, and similar state securities law provisions, to exempt from registration under the Securities Act and state securities laws the offer to certain holders of Term Loan Claims to obtain Common and Preferred Shares in the Reorganized Debtor prior to the Commencement Date, including, without limitation, in connection with the solicitation of votes to accept or reject the Plan. After the Commencement Date, the Debtor will also rely on Bankruptcy Code section 1145(a) to exempt from registration under the Securities Act and state securities laws the offer, issuance, and distribution of such securities under the Plan. Upon confirmation of the Plan, the securities described in this Disclosure Statement will be issued without registration under the Securities Act, or similar federal, state, local, or foreign laws, in reliance on the exemption set forth in Bankruptcy Code section 1145. To the extent exemptions from registration other than Bankruptcy Code section 1145 apply, such securities may not be offered or sold except pursuant to a valid exemption or upon registration under the Securities Act, including, without limitation, section 4(a)(2) of the Securities Act.

The Debtor may make statements in this Disclosure Statement that are considered forward-looking statements under the federal securities laws. Statements concerning these and other matters are not guarantees of the Debtor's future performance. Such forward-looking statements represent the Debtor's estimates and assumptions only as of the date such statements

2

were made and involve known and unknown risks, uncertainties, and other unknown factors that could impact the Debtor's restructuring plans or cause the actual results of the Debtor to be materially different from the historical results or from any future results expressed or implied by such forward-looking statements. In addition to statements which explicitly describe such risks and uncertainties, readers are urged to consider statements labeled with the terms "believes," "belief," "expects," "intends," "anticipates," "plans," or similar terms to be uncertain and forward-looking. There can be no assurance that the restructuring transactions described herein will be consummated. Creditors and other interested parties should see the section entitled "Risk Factors" of this Disclosure Statement for a discussion of certain factors that may affect the future financial performance of the Reorganized Debtor.

## III.    QUESTIONS AND ANSWERS REGARDING THIS DISCLOSURE STATEMENT AND THE PLAN

### A.    What is chapter 11?

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. In addition to permitting debtor rehabilitation, chapter 11 promotes equality of treatment for similarly situated creditors and similarly situated equity interest holders, subject to the priority of distributions prescribed by the Bankruptcy Code.

The commencement of a chapter 11 case creates an estate that comprises all of the legal and equitable interests of the debtor as of the bankruptcy commencement date. The Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor in possession."

Consummating a plan is the principal objective of a chapter 11 case. The Bankruptcy Court's confirmation of a plan binds the debtor, any person acquiring property under the plan, any creditor or equity interest holder of a debtor, and any other person or Entity as may be ordered by the Bankruptcy Court, in accordance with the applicable provisions of the Bankruptcy Code. Subject to certain limited exceptions, the order issued by the Bankruptcy Court confirming a plan provides for the treatment of the debtor's debt in accordance with the terms of the confirmed plan.

### B.    What is a "prepackaged" plan of reorganization?

A "prepackaged" plan of reorganization is one in which a debtor seeks approval of a plan of reorganization from affected creditors before filing for bankruptcy. Because solicitation of acceptances takes place before the bankruptcy filing, the amount of time required for the bankruptcy case is often less than in more conventional bankruptcy cases. Greater certainty of results and reduced costs are other benefits generally associated with prepackaged bankruptcy cases.

### C.    Why is the Debtor sending me this Disclosure Statement?

The Debtor will be seeking to obtain Bankruptcy Court approval of the Plan. In connection with soliciting acceptances of the Plan, Bankruptcy Code section 1125 requires the Debtor to prepare a disclosure statement containing adequate information of a kind, and in

sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding acceptance of the Plan. This Disclosure Statement has been prepared in accordance with these requirements.

### D.   Am I entitled to vote on the Plan?

Your ability to vote on, and your distribution under, the Plan, if any, depends on what type of Claim or Interest you hold. Each category of holders of Claims or Interests, as set forth in Article III of the Plan pursuant to Bankruptcy Code section 1122(a), is referred to as a "Class."

Pursuant to the provisions of the Bankruptcy Code, only Classes of claims or interests that are "impaired" and receiving a distribution under a plan may vote to accept or reject such plan. Generally, a claim or interest is impaired under a plan if the holder's legal, equitable, or contractual rights are changed under such plan. In addition, Classes of Claims or Interests that are "unimpaired" are deemed to have accepted the Plan and do not cast votes on the Plan, and Classes of Claims or Interests that are "impaired" but are not receiving distributions under the Plan are deemed to have rejected the Plan and do not cast votes on the Plan.

Under the Plan, unclassified Claims and holders of Claims in Classes 1, 2 and 4 are Unimpaired and therefore deemed to accept the Plan. Holders of Claims in Class 3 are Impaired and are entitled to vote on the Plan. Holders of Interests in Class 5 are Impaired and are not entitled to vote on the Plan.

**ACCORDINGLY, A BALLOT FOR ACCEPTANCE OR REJECTION OF THE PLAN IS BEING PROVIDED ONLY TO HOLDERS OF CLAIMS IN CLASS 3.**

The respective voting status for unclassified Claims and each Class of Claims is set forth below.

The tables below designate the Classes of Claims against and Interests in the Debtor and specify which of those Classes are Impaired or Unimpaired by the Plan. FOR A COMPLETE DESCRIPTION OF THE DEBTOR'S CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS, SEE ARTICLES III and IV OF THE PLAN.

| Class | Designation | Impairment | Recovery | Entitled to Vote |
|-------|-------------|------------|----------|------------------|
| N/A | Administrative Expense Claims | Unimpaired | 100% | No (conclusively presumed to accept) |
| N/A | Priority Tax Claims | Unimpaired | 100% | No (conclusively presumed to accept) |
| Class 1 | Other Priority Claims | Unimpaired | 100% | No (conclusively presumed to accept) |

4

| Class 2 | Other Secured Claims | Unimpaired | 100% | No (conclusively presumed to accept) |
|---------|---------------------|------------|------|--------------------------------------|
| Class 3 | Term Loan Claims | Impaired | New Preferred Stock and Cash | Yes |
| Class 4 | General Unsecured Claims | Unimpaired | 100% | No (conclusively presumed to accept) |
| Class 5 | Equity Interests | Impaired | 0% | No (conclusively presumed to Reject) |

## E.    How do I vote on the Plan and what is the Voting Deadline?

If you are entitled to vote to accept or reject the Plan, a Ballot for the acceptance or rejection of the Plan is enclosed for the purpose of voting on the Plan. Detailed instructions regarding how to vote on the Plan are contained on the Ballots distributed to holders of Claims that are entitled to vote on the Plan. For your vote to be counted, your Ballot must be completed, signed and submitted so that it is **actually received** by the Debtor by 5:00 p.m. on the Voting Deadline (unless extended by the Debtor); provided that holders of Claims who cast a Ballot prior to the time for filing any of the Debtor's chapter 11 petition shall not be entitled to change their vote or cast a new Ballot after the Chapter 11 Case is commenced. See "**Solicitation and Voting Procedures**" Section XII of this Disclosure Statement for additional information.

If you are a holder of a Claim entitled to vote on the Plan and you did not receive a Ballot, received a damaged Ballot or lost your Ballot, or if you have any questions concerning the Disclosure Statement, the Plan or the procedures for voting on the Plan, please contact the Debtor as set forth herein.

## F.    Why is the Bankruptcy Court holding a Confirmation Hearing and when is the Confirmation Hearing set to occur?

Bankruptcy Code section 1128(a) requires the Bankruptcy Court to hold a hearing on Confirmation of the Plan and recognizes that any party in interest may object to Confirmation of the Plan.

Following commencement of the Chapter 11 Case, the Debtor will request that the Bankruptcy Court schedule promptly a Confirmation Hearing and will provide notice of the Confirmation Hearing to all necessary parties. The Confirmation Hearing may be adjourned or continued from time to time without further notice except for an announcement of the adjourned date made at the Confirmation Hearing or any adjournment thereof.

Objections to Confirmation of the Plan must be filed and served on the Debtor and certain other parties prior to the Confirmation Hearing in accordance with the notice of the Confirmation Hearing.

## G.    What is the purpose of the Confirmation Hearing?

The confirmation of a plan of reorganization by a bankruptcy court binds the debtor, any issuer of securities under the plan of reorganization, any person acquiring property under the plan of reorganization, any creditor or equity interest holder of a debtor and any other person or entity as may be ordered by the Bankruptcy Court in accordance with the applicable provisions of the Bankruptcy Code. Subject to certain limited exceptions, the order issued by the Bankruptcy Court confirming a plan of reorganization discharges a debtor from any debt that arose before the confirmation of the plan of reorganization and provides for the treatment of such debt in accordance with the terms of the confirmed plan of reorganization.

## H.    What is the effect of the Plan on the Debtor's ongoing business?

TMB is reorganizing under chapter 11 of the Bankruptcy Code. As a result, subject to the occurrence of the Effective Date, Confirmation means that TMB will not be liquidated or forced to go out of business. Rather, TMB will be converted into, or have all of its assets transferred to, a C-Corp and receive additional funding in exchange for distributing preferred stock to new investors. Following Confirmation, the Plan will be consummated on the Effective Date, which is a date selected by TMB that is a Business Day on or after the Confirmation Date on which (i) no stay of the Confirmation Order is in effect and (ii) the conditions to the effectiveness of the Plan specified in the Plan have been satisfied, or if capable of being waived, waived.

On or after the Effective Date, and unless otherwise provided in the Plan, the Reorganized Debtor may continue in business and, except as otherwise provided by the Plan, may use, acquire or dispose of property and compromise or settle any Claims, Interests or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. Additionally, upon the Effective Date, all actions contemplated by the Plan will be deemed authorized and approved.

## I.    Who do I contact if I have additional questions with respect to this Disclosure Statement or the Plan?

If you have any questions regarding this Disclosure Statement or the Plan, you may contact the Debtor's counsel at the addresses and phone numbers listed on the cover page of this Disclosure Statement. Copies of the Plan and this Disclosure Statement may be obtained by contacting Debtor's counsel.

## J.    Does the Debtor recommend voting in favor of the Plan?

Yes. The Debtor believes the Plan provides for a larger distribution to the Debtor's creditors than would otherwise result from any other available alternative. The Debtor believes the Plan, which preserves the operations of TMB's business is in the best interest of all creditors, and that other alternatives fail to realize or recognize the value inherent under the Plan.

## IV.   GENERAL INFORMATION CONCERNING THE DEBTOR

### A.   Overview of the Debtor and its Business

Tamara Mellon Brand, LLC, launched in November 2013, is the creation of Tamara Mellon, OBE, the co-founder and former president of designer footwear label Jimmy Choo. The goal of TMB is simple: to deliver the finest Italian-made luxury shoes and other luxury eveningwear and accessories at half the price of traditional luxury brands.

TMB aims to achieve this goal by disrupting the traditional fashion calendar and supply chain. Whereas traditional fashion labels release their collections months in advance of the wearing season (for example, showing Fall runway collections in the Spring), TMB targets a "shop now, wear now" model where new collections debut in the season they are meant to be worn. This season-relevant approach reduces the risk associated with the vagaries of forecasting fickle fashion trends months before they happen—reducing the potential for obsolete or unwanted inventory, and cutting the amount of items that need to be sold off price.

As part of disrupting the luxury fashion calendar, TMB is also changing the way it delivers luxury fashion to modern customers. Building on the success of mass market "fast fashion" retailers such as Zara and H&M, TMB's goal is to pursue total vertical integration of its design, manufacturing and delivery platforms. Vertical integration will allow TMB to respond to trends and customer desires in the shortest time possible, drastically reduce manufacturing turn-around times, and deliver its products direct to customers without the manacles of the traditional, rigid fashion calendar. And, as mentioned, delivering product that is in season takes the guess work out of trying to seize on the next hot style. Most importantly, TMB can dramatically reduce the price its customers pay for the highest quality luxury shoes, eveningwear and accessories. Whereas a similar quality shoe from a comparable luxury fashion label may cost a customer upwards of $800 in a traditional retail store, TMB can deliver the same product for $450, all while maintaining a higher gross margin than in traditional retail.

At present, TMB reaches its customers through its website, TamaraMellon.com, and through select, high-end online and brick-and-mortar retailers. Ultimately, however, TMB believes that transitioning away from traditional retailers and concentrating on direct sales to customers via both internet and company-operated stores will maximize TMB's goals of shortening the design and manufacturing process, enabling it to deliver to customers the fashions they want to wear, now.

TMB currently has three classes of membership units, common units, incentive units, which have the same priority as common units but no voting rights, and preferred units, which have a liquidation preference over the common units but no voting rights. TMB's equity financing resulted in $24,000,000 in proceeds in 2013.

### B.   The Term Loan Financing; New Equity Financing

By late 2014 it became apparent to TMB's management and investors that incremental financing would be required to enable the company to cover upfront, fixed costs and work through its initial seasons to achieve profitability. Given the company's lack of free cash flow, debt financing could not be obtained from typical third party sources such as banks, so TMB

began to seek incremental equity investments, as well as bridge debt financing, including from its existing shareholder base.

While all shareholders were offered the opportunity to provide such debt financing, only two of them, along with a third party, agreed to do so. The initial tranches of term loans were funded in January 2015, and subsequent advances were made in May, June, September, October and November 2015, in each case to fund payroll and/or make payments to critical vendors.

As of the date hereof, TMB was indebted to the various investors, including founder Tamara Mellon, in a principal amount of approximately \$4.111 million, which is secured by liens on substantially all of TMB's working capital assets, including all inventory and receivables.

TMB needs additional funding, however, to accomplish the Brand's goal of becoming a vertically-integrated high fashion ecommerce brand and survive as a viable going concern. Despite its best efforts, TMB has not been able to secure additional funding outside of chapter 11 because certain interest holders have not permitted it to raise new capital with (and/or convert the term loan debt into preferred equity interests with) priority over their interests, and no existing lenders or potential investors have been willing to invest subordinate to their existing equity interests. Therefore, in the fall of 2015, TMB began exploring opportunities and proposals from investors that would include a restructuring in chapter 11.

As a result of these efforts, in November 2015, the Debtor reached agreement with New Enterprise Associates 15, LP ("NEA") to fund the Debtor's marketplace transition and recapitalize the company to position it for future success. The agreement with NEA is to be implemented through the prepackaged chapter 11 Plan, and TMB believes that it represents the most effective way to maximize the value of its estate for the benefit of creditors and preserve as many jobs as possible. Towards that end, TMB now is soliciting votes on the Plan.

## V. ANTICIPATED EVENTS DURING THE CHAPTER 11 CASE

### A. Commencement of Chapter 11 Case and First Day Orders

To implement the restructuring transactions contemplated in the Plan, the Debtor intends to commence a case under chapter 11 of the Bankruptcy Code by filing a voluntary petition for relief in the Bankruptcy Court. On the Commencement Date, the Debtor will request a series of orders from the Bankruptcy Court to minimize any disruption to the Debtor's operations and to facilitate the Debtor's reorganization. These requests will include, but are not limited to, orders permitting the Debtor to: (i) obtain secured postpetition financing and use cash collateral, (ii) pay certain employee obligations, (iii) retain counsel, and (iv) approve the continued operation of the Debtor's cash management system. Additionally, to expedite the Chapter 11 Case, the Debtor intends to seek an immediate order setting dates for a combined hearing to (i) approve the adequacy of the Disclosure Statement; (ii) approve the procedures for the Solicitation; and (iii) confirm the Plan. The Debtor will seek the earliest possible date permitted by the applicable rules and the Bankruptcy Court's calendar for such hearing.

## B. Financing Facilities

### 1. *Debtor in Possession Financing*

The Debtor expects to receive debtor in possession financing in the aggregate principal amount of up to \$2 million from Tamara Mellon (the "DIP Lender") in DIP Financing. This DIP Financing will act as a bridge for the Debtor to implement and consummate the restructuring transactions contemplated in the Plan. Interest on the DIP Financing will accrue at the rate of 6.0% per annum, the same as the pre-petition term loans. The DIP Financing will be secured by liens on all of the company's assets, including, with the consent of the prepetition lenders, priming liens on the collateral securing the existing term loans. The DIP Financing will mature 60 days from the Petition Date, subject to extension up to another 15 business day to the extent the Plan has been confirmed as of the initial maturity date, but not yet consummated.

On the Commencement Date, the Debtor will seek interim authority to make immediate borrowings under the DIP Financing and, as soon as practicable thereafter, will seek final Bankruptcy Court approval of the DIP Financing. The Debtor believes that the commitment amount of the DIP Financing will satisfy the Debtor's financing needs during the expected duration of the Chapter 11 Case. Upon the Effective Date, any outstanding DIP Financing Claims will be paid in cash.

### 2. *Post-Confirmation Financing of TMB*

On the Effective Date, NEA and other lenders will provide additional post-reorganization financing to the Reorganized Debtor in the amount of \$12 million. NEA and the Debtor have memorialized this agreement pursuant to a Term Sheet, a copy of which is attached hereto as Exhibit B.

## C. Stay of Pending Litigation Proceedings and Potential Removal of Pending Litigation Proceedings to the Bankruptcy Court

With certain exceptions, the filing of the Chapter 11 Case will operate as a stay with respect to the commencement or continuation of litigation against the Debtor that was or could have been commenced before the commencement of the Chapter 11 Case. In addition, the Debtor's liability with respect to litigation that would be stayed by the commencement of the Chapter 11 Case will be subject to discharge, settlement, and release upon Confirmation of the Plan, with certain exceptions. Therefore, litigation claims against the Debtor may be subject to discharge in connection with the Chapter 11 Case. This may reduce the Debtor's exposure to losses in connection with the adverse determination of such litigation. Further, the Debtor may exercise its right pursuant to 28 U.S.C. § 1452 to remove any pending litigation proceedings to the Bankruptcy Court.

## D. Expected Timetable of the Chapter 11 Case

The Debtor expects the Chapter 11 Case to proceed quickly. As described above, the Debtor has been in extensive negotiations with NEA to restructure the Debtor's obligations and to obtain commitments for financing the Debtor's post-petition and post-confirmation operations.

The Debtor cannot assure, however, that the Bankruptcy Court will enter various orders on the timetable anticipated by the Debtor.  On the Commencement Date, the Debtor will promptly request the Bankruptcy Court to set a hearing date to approve this Disclosure Statement and to confirm the Plan.  If the Plan is confirmed, the Effective Date of the Plan is projected to be as soon as practicable after the date the Bankruptcy Court enters the Confirmation Order and the Confirmation Order becomes a Final Order, and the other conditions to consummation of the Plan set forth in the Plan are satisfied or waived (to the extent permitted under the Plan and applicable law).

## VI.    SUMMARY OF THE PLAN OF REORGANIZATION

The following sections summarize the salient provisions of the Plan.  This summary refers to, and is qualified in its entirety by, reference to the Plan, a copy of which is attached hereto as Exhibit A.  Parties are encouraged to review the Plan in its entirety for a full understanding of its provisions and its impact on holders of Claims and Interests.

**A.    Summary of Treatment of Claims and Interests under the Plan.**  The table below summarizes the classification and treatment of Claims and Interests under the Plan, as well as the estimated recovery for each Class.  Unless otherwise indicated, the characteristics and amount of the Claims or Equity Interests in the following Classes are based on the books and records of TMB, as of the date hereof.

The estimated recovery percentages set forth below have been calculated based upon a number of assumptions, including the estimated amount of Allowed Claims or Allowed Interests in each Class.

THE EXPECTED RECOVERIES SET FORTH BELOW ARE FOR ILLUSTRATIVE PURPOSES ONLY AND ARE SUBJECT TO MATERIAL CHANGE.

| Class | Description | Treatment | Estimated Recovery |
|---|---|---|---|
| N/A | Administrative Expense Claims | Payment in full (or as otherwise agreed). | 100% |
| N/A | Priority Tax Claims | Payment in full on the Effective Date, or regular installment payments over five years from the Effective Date or payment as otherwise agreed. | 100% |
| Class 1 | Other Priority Claims | Payment in full on the Effective Date (or as otherwise agreed). | 100% |
| Class 2 | Other Secured Claims | Payment in full on the Effective Date (or as otherwise agreed). | 100% |
| Class 3 | Term Loan Claims | Payment in part in cash and receipt of New Preferred Stock of New TMB as the Reorganized Debtor, as set forth on the Term Sheet. | Unknown |
| Class 4 | General Unsecured | Payment in full on the Effective Date (or as otherwise agreed). | 100% |

| Class | Description | Treatment | Estimated Recovery |
|-------|-------------|-----------|--------------------|
|       | Claims      |           |                    |
| Class 5 | Equity Interests | Cancelled. | 0% |

THE DEBTOR BELIEVES THAT THE PLAN PROVIDES THE BEST RECOVERIES POSSIBLE FOR HOLDERS OF CLAIMS AGAINST THE DEBTOR AND THUS STRONGLY RECOMMENDS THAT YOU VOTE TO ACCEPT THE PLAN.

**NOTHING IN THE DISCLOSURE STATEMENT SHALL AFFECT THE RIGHTS OF THE DEBTOR, OR THE REORGANIZED DEBTOR, AS APPLICABLE, TO OBJECT TO ANY PROOF OF CLAIM OR PROOF OF INTEREST ON ANY GROUND OR FOR ANY PURPOSE, INCLUDING IN ACCORDANCE WITH THE PROCEDURES SET FORTH IN THE PLAN.**

**B.    General Basis for the Prepackaged Plan**

The Debtor has determined that a prolonged Chapter 11 Case would damage its ongoing business operations and threaten its viability as a going concern.  The prepackaged nature of the Plan (as set forth in the Plan and described herein) allows the Debtor to exit chapter 11 quickly, while the provisions of the Plan allow the Debtor to reduce its debt service obligations, extend the maturity of its debt, and position the Debtor for the realization of the value of its Brand.

**C.    Plan Objectives**

The primary objectives of the Plan are to:  (i) maximize the value of the ultimate recovery to all holders of Claims on a fair and equitable basis, compared to the value they would receive if the assets of the Debtor were liquidated under chapter 7 of the Bankruptcy Code; and (ii) settle, compromise or otherwise dispose of certain Claims on terms believed to be fair and reasonable in the best interests of the Debtor, the Debtor's creditors and interest holders.  The Debtor believes that through the Plan, holders of Allowed Claims will obtain a recovery substantially better than any recovery they would receive if the assets of the Debtor were liquidated under chapter 7 of the Bankruptcy Code.

**D.    Classification and Allowance of Claims and Interests Generally**

Section 1123 of the Bankruptcy Code provides that, except for administrative expense claims and priority tax claims, a plan of reorganization must categorize claims against and equity interests in a debtor into individual classes.  Although the Bankruptcy Code gives a plan proponent significant flexibility in classifying claims and interests, section 1122 of the Bankruptcy Code dictates that a plan of reorganization may only place a claim or an equity interest into a class containing claims or equity interests that are substantially similar.

The Plan creates several "Classes" of Claims and Interests.  These Classes take into account the differing nature and priority of Claims against and Interests in the Debtor. Administrative Expense Claims and Priority Tax and Non-Tax Priority Claims are not classified

for purposes of voting or receiving distributions under the Plan, but are treated separately as unclassified Claims.

A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or Interest is in a particular Class only to the extent that such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

The Plan provides specific treatment for each Class of Claims or Interests. Only holders of Allowed Claims or Allowed Interests are entitled to vote on and receive distributions under the Plan.

Unless otherwise provided in the Plan or the Confirmation Order, the treatment of any Claim or Interest under the Plan will be in full satisfaction, settlement, release and discharge of, and in exchange for, such Claim or Interest.

The categories of Claims and Interests and their treatment listed below classify Claims and Interests for all purposes, including voting, confirmation and Distribution pursuant to the Plan, except as otherwise provided herein or in the Plan, and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

## E.    Classification and Treatment of Unclassified Claims under the Plan

Unclassified Claims are Unimpaired by the Plan. The following are the unclassified Claims: Administrative Expense Claims, Priority Tax Claims and Non-Tax Priority Claims.

### 1.    *DIP Financing Claims*

Under the Plan, each holder of an Allowed DIP Financing Claim shall receive, as of the Effective Date, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such DIP Financing Claim, Cash in an amount equal to the amount of such Allowed DIP Financing Claim on the Effective Date.

### 2.    *Administrative Expense Claims*

Under the Plan, each holder of an Allowed Administrative Claim (other than an Administrative Claim that is a Fee Claim) as of the Effective Date shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Administrative Claim, (i) Cash in an amount equal to the amount of such Allowed Administrative Claim as soon as reasonably practicable after either (a) the Effective Date, if such Administrative Claim is Allowed as of the Effective Date, (b) thirty (30) days after the date such Administrative Claim becomes an Allowed Administrative Claim, if such Administrative Claim is Disputed as of, or following, the Effective Date, or (c) the date such Allowed Administrative Claim becomes due and payable in the ordinary course of business in accordance with the terms, and subject to the conditions, of any agreements governing, instruments evidencing, or other documents relating to, the applicable transaction giving rise to such Allowed Administrative Claim, if such Allowed Administrative Claim is based on liabilities incurred by the Debtor in the ordinary course of its business; or (ii) such other treatment as the Debtor and such holder shall have agreed in writing.

3.    *Fee Claims*

Under the Plan, the Bankruptcy Court shall determine the Allowed amounts of Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code. The Reorganized Debtor shall pay Fee Claims in Cash in the amount Allowed by the Bankruptcy Court. All requests for compensation or reimbursement of Fee Claims shall be filed and served on the Reorganized Debtor, counsel to the Reorganized Debtor, the U.S. Trustee and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Court, no later than forty-five (45) days after the Effective Date, unless otherwise agreed by the Debtor. Holders of Fee Claims that are required to file and serve applications for final allowance of their Fee Claims that do not file and serve such applications by the required deadline shall be forever barred from asserting such Claims against the Debtor, Reorganized Debtor, or their respective properties, and such Fee Claims shall be deemed discharged as of the Effective Date. Objections to any Fee Claims must be filed and served on the Reorganized Debtor, counsel to the Reorganized Debtor, and the requesting party no later than thirty (30) days after the filing of the final applications for compensation or reimbursement (unless otherwise agreed by the party requesting compensation of a Fee Claim).

4.    *Priority Tax Claims*

Under the Plan, each holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive, as determined by the Debtor, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Priority Tax Claim (i) payment in full in Cash, payable in equal Cash installments made on a quarterly basis in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, over a period not to exceed five (5) years following the Petition Date, plus statutory interest on any outstanding balance from the Effective Date, calculated at the prevailing rate under applicable nonbankruptcy law for each taxing authority and to the extent provided for by section 511 of the Bankruptcy Code, and in a manner not less favorable than the most favored nonpriority General Unsecured Claim provided for by the Plan (other than cash payments made to a class of creditors pursuant to section 1122(b) of the Bankruptcy Code); or (ii) such other treatment as may be agreed upon by such holder and the Debtor or otherwise determined upon a Final Order of the Court.

F.    **Treatment of Classified Claims and Interests under the Plan**

The treatment of Claims against and Interests in the Debtor is set forth in detail in the Plan. A summary of that treatment is provided below.

Unless the holder of an Allowed Claim or Interest and the Debtor or the Reorganized Debtor, as applicable, agree to a different treatment, each holder of an Allowed Claim or Allowed Interest will receive the following distributions in accordance with the Plan:

1.    *Class 1 – Other Priority Claims*

Under the Plan, except to the extent that a holder of an Allowed Other Priority Claim and the Debtor agree in writing to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Other Priority Claim, each holder of an Allowed Other Priority Claim shall receive (i) payment in Cash in an amount equal to such

Allowed Other Priority Claim as soon as practicable after the later of (a) the Effective Date and (b) thirty (30) days after the date when such Other Priority Claim becomes an Allowed Other Priority Claim or (ii) such other treatment, as determined by the Debtor, that will render it Unimpaired pursuant to section 1124 of the Bankruptcy Code.

### 2.     *Class 2 – Other Secured Claims*

Under the Plan, except to the extent that a holder of an Allowed Other Secured Claim and the Debtor agree in writing to less favorable treatment, in full and final satisfaction, settlement, release and discharge of and in exchange for such Other Secured Claim, each holder of an Allowed Other Secured Claim shall, as determined by the Debtor, receive (i) Cash in an amount equal to such Allowed Other Secured Claim, including any interest on such Allowed Other Secured Claim, if such interest is required to be paid pursuant to sections 506(b) and/or 1129(a)(9) of the Bankruptcy Code, as soon as practicable after the later of (a) the Effective Date, and (b) thirty (30) days after the date such Other Secured Claim becomes an Allowed Other Secured Claim, (ii) the Collateral securing its Allowed Other Secured Claim as soon as practicable after the later of (a) the Effective Date and (b) thirty (30) days after the date such Other Secured Claim becomes an Allowed Other Secured Claim, or (iii) such other treatment, as determined by the Debtor, that will render it Unimpaired pursuant to section 1124 of the Bankruptcy Code.

### 3.     *Class 3 – Term Loan Claims*

Under the Plan, except to the extent that a holder of an Allowed Term Loan Claim and the Debtor agree in writing to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Term Loan Claim, on or as soon as practicable after the Effective Date, each holder of an Allowed Senior Notes Claim shall receive Preferred Stock in accordance with the capitalization table set forth on Exhibit A of the Exit Financing documents and approximately $676,126 in cash at the Closing

### 4.     *Class 4– General Unsecured Claims*

Under the Plan, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed General Unsecured Claim, on the Effective Date, each holder of an Allowed General Unsecured Claim shall, at the discretion of the Debtor, and only to the extent such holder's Allowed General Unsecured Claim was not previously paid in the ordinary course of business during the Chapter 11 Case, pursuant to an order of the Court, or otherwise: (i) have its Allowed General Unsecured Claim Reinstated as an obligation of the Reorganized Debtor, and be paid by the Debtor as soon as practicable after the Effective Date, (ii) receive such other treatment as may be agreed between such holder and the Debtor or (iii) receive such other treatment, as determined by the Debtor, that will render it Unimpaired pursuant to section 1124 of the Bankruptcy Code.  Payment of an Allowed General Unsecured Claim is subject to the rights of the Debtor, Reorganized Debtor or any other party in interest to dispute such Claim as if the Chapter 11 Case had not been commenced in accordance with applicable nonbankruptcy law.

### 5. *Class 5–Equity Interests*

On the Effective Date, Equity Interests shall be cancelled and discharged and shall be of no further force or effect, whether surrendered for cancellation or otherwise, and holders of Equity Interests shall not receive or retain any property under the Plan on account of such Equity Interests.

## G. Description of the Restructuring Transaction and Recapitalization of TMB

The primary component of TMB's Plan is a restructuring transaction in which TMB will be recapitalized and converted into a C-Corp.

### 1. *Conversion into a Corporation or Transfer and Vesting of Assets in NewCo*

On or before the Effective Date, TMB will either convert from a Delaware limited liability company to a Delaware "C" corporation or a new "C" corporation shall be formed. In either case, the Reorganized Debtor shall be New TMB.

### 2. *Issuance of TMB Stock*

On the Effective Date, New TMB shall issue (a) New Preferred Stock in full satisfaction of the Term Loan Claims in Class 3 and in exchange for the Exit Financing and (b) New Common Stock to Tamara Mellon in exchange for certain intellectual property of Tamara Mellon and Tamara Mellon, LLC, all as set forth in the Term Sheet attached hereto as **Exhibit B**.

### 3. *New TMB's Officers and Board of Directors*

New TMB shall initially have a six (6) member Board of Directors, consisting of the individuals identified in the Plan Supplement.

New TMB's initial officers shall be the existing officers of the Debtor on the Effective Date unless otherwise provided for in the Plan Supplement.

## H. Distributions On Account of Allowed Claims

One of the key concepts under the Bankruptcy Code is that only Claims that are "allowed" may receive distributions under a Chapter 11 plan. This term is used throughout the Plan and the descriptions below. In general, an "allowed" Claim simply means that the debtor agrees, or in the event of a dispute, that the Bankruptcy Court determines, that the Claim, and the amount thereof, is in fact a valid obligation of the Debtor.

### 1. Filing Proofs of Claim

Holders of Claims need not file proofs of Claim with the Court. In the event that a holder of a Claim elects to file a proof of Claim with the Court, it will be deemed to have consented to the exclusive jurisdiction of the Court for all purposes with respect to the determination, liquidation, allowance, or disallowance of such Claim.

## 2. Disputed Claims

If the Debtor disputes any Claim as to which no proof of Claim has been filed, such dispute shall be determined, resolved, or adjudicated, as the case may be, in a manner as if the Chapter 11 Case had not been commenced, provided, however, that the Reorganized Debtor may elect to object under section 502 of the Bankruptcy Code to any proof of Claim filed by or on behalf of a holder of a Claim.

## 3. Objections to Claims

Except insofar as a Claim is Allowed under the Plan, the Debtor, the Reorganized Debtor, and any other party in interest shall be entitled to object to Claims. Any objections to Claims other than General Unsecured Claims shall be filed and served by the Claims Objection Deadline. Any Claims other than General Unsecured Claims not objected to by the Claims Objection Deadline shall be deemed Allowed unless such period is extended upon approval of the Bankruptcy Court.

Notwithstanding the foregoing, the Debtor, Reorganized Debtor, or any other party with standing shall be entitled to dispute and/or otherwise object to any General Unsecured Claim in accordance with applicable nonbankruptcy law. If the Debtor, Reorganized Debtor, or any other party with standing dispute any General Unsecured Claim, such dispute shall be determined, resolved, or adjudicated, as the case may be, in the manner as if the Chapter 11 Case had not been commenced. In any action or proceeding to determine the existence, validity, or amount of any General Unsecured Claim, any and all claims or defenses that could have been asserted by the Debtor or the Entity holding such General Unsecured Claim are preserved as if the Chapter 11 Case had not been commenced.

## 4. Disallowance of Claims

Except as provided in the Plan or otherwise agreed, any and all proofs of Claim shall be deemed expunged from the claims register on the Effective Date without any further notice to or action, order, or approval of the Court and the Claim on which such proof of Claim was filed shall be determined, resolved, or adjudicated, as the case may be, in the manner as if the Chapter 11 Case had not been commenced and shall survive the Effective Date as if the Chapter 11 Case had not been commenced.

## 5. Delivery of Distributions in General

Except as provided in the Plan, distributions under the Plan shall be made by the Reorganized Debtor to the holders of Allowed Claims and Allowed Equity Interests in all Classes for which a distribution is provided in the Plan at the addresses set forth on the Schedules (if filed) or in the Debtor's books and records, as applicable, unless such addresses are superseded by proofs of Claim or Equity Interests or transfers of Claim filed pursuant to Bankruptcy Rule 3001 by the Record Date (or at the last known addresses of such holders if the Debtor or the Reorganized Debtor has been notified in writing of a change of address).

## 6. Distribution of Cash

Any payment of cash by the Reorganized Debtor pursuant to the Plan shall be made at the option and in the sole discretion of the Reorganized Debtor by (i) a check drawn on, or (ii) wire transfer from, a domestic bank selected by the Reorganized Debtor.

### 7.   Unclaimed Distributions of Cash

Any distribution of cash under the Plan that is unclaimed after six (6) months after it has been delivered (or attempted to be delivered) shall, pursuant to section 347(b) of the Bankruptcy Code, become the property of the Reorganized Debtor notwithstanding any state or other escheat or similar laws to the contrary, and the entitlement by the holder of such unclaimed Allowed Claim or Allowed Equity Interest to such distribution or any subsequent distribution on account of such Allowed Claim or Allowed Equity Interest shall be extinguished and forever barred.

## I.   Executory Contracts and Unexpired Leases

### 1.   *General Treatment*

Subject to approval of the Bankruptcy Court, section 365 of the Bankruptcy Code allows a debtor to assume or reject its executory contracts and unexpired leases.

Each Executory Contract and Unexpired Lease shall be deemed assumed, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date under section 365 of the Bankruptcy Code unless subject to a motion to reject such Executory Contract and Unexpired Lease. The assumption of Executory Contracts and Unexpired Leases hereunder may include the assignment of certain of such contracts to the Debtor. The Confirmation Order will constitute an order of the Bankruptcy Court approving the above-described assumptions and assignments pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

Except as otherwise provided in the Plan or agreed to by the Debtor and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

### 2.   *Cure of Defaults*

Generally, if there has been a default under an executory contract or unexpired lease (other than a default specified in section 365(b)(2) of the Bankruptcy Code), the debtor can assume the contract or lease only if the debtor cures the default.

At the election of the Debtor or the Reorganized Debtor, as applicable, any monetary defaults under each Executory Contract and Unexpired Lease to be assumed under the Plan shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code in one of the following ways: (i) payment of the Cure Claim in cash on or as soon as reasonably practicable following the occurrence of (A) thirty (30) days after the determination of the Cure Claim, and (B) the Effective Date or such other date as may be set by the Court; or (ii) on such other terms as agreed

to by the Debtor or the Reorganized Debtor and the non-Debtor counterparty to such Executory Contract or Unexpired Lease.

In the event of a dispute pertaining to assumption or assignment, the Cure Claim payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption. No later than thirty (30) days after the Effective Date, to the extent not previously filed with the Court and served on affected counterparties, the Debtor shall provide for notices of proposed assumption and proposed cure amounts to be sent to applicable contract and lease counterparties, together with procedures for objecting thereto and resolution of disputes by the Court. Any objection by a contract or lease counterparty to a proposed assumption or related cure amount must be filed, served, and actually received by the Debtor fifteen (15) days from service of the applicable assumption notice. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption or cure amount. Within thirty (30) days after service of any objection to the amount of the proposed Cure Claim the Reorganized Debtor shall: (a) resolve such objection, which resolution shall not require approval of the Bankruptcy Court; (b) schedule a hearing before the Bankruptcy Court to determine the proper Cure Amount; or (c) determine to reject the Executory Contract or Unexpired Lease, and provide notice thereof to the applicable non-Debtor party or parties

The only adequate assurance of future performance shall be the promise of the Reorganized Debtor to perform all obligations under any executory contract or unexpired lease under the Plan.

**ASSUMPTION OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE PURSUANT TO THE PLAN OR OTHERWISE SHALL RESULT IN THE FULL RELEASE AND SATISFACTION OF ANY CLAIMS OR DEFAULTS, WHETHER MONETARY OR NONMONETARY, INCLUDING DEFAULTS OF PROVISIONS RESTRICTING THE CHANGE IN CONTROL OR OWNERSHIP INTEREST COMPOSITION OR OTHER BANKRUPTCY-RELATED DEFAULTS, ARISING UNDER ANY ASSUMED EXECUTORY CONTRACT OR UNEXPIRED LEASE AT ANY TIME BEFORE THE DATE ANY OF THE DEBTOR OR THE REORGANIZED DEBTOR ASSUMES SUCH EXECUTORY CONTRACT OR UNEXPIRED LEASE. ANY PROOFS OF CLAIM FILED WITH RESPECT TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT HAS BEEN ASSUMED SHALL BE DEEMED DISALLOWED AND EXPUNGED, WITHOUT FURTHER NOTICE TO OR ACTION, ORDER OR APPROVAL OF THE COURT.**

Obligations arising under insurance policies assumed by the Debtor before the Effective Date shall be adequately protected in accordance with any order authorizing such assumption.

## J.   Means of Implementing the Plan

### 1.   *Operations Between the Confirmation Date and Effective Date*

During the period from the Confirmation Date through and until the Effective Date, the Debtor may continue to operate its business as a debtor in possession, subject to all applicable orders of the Bankruptcy Court and any limitations set forth in the Term Sheet.

### 2.   *Exit Financing; Initial Capitalization of New TMB*

On or before the Effective Date, the Debtor shall be authorized, without the need for any further corporate action or without any further action by the Debtor or the Reorganized Debtor, as applicable, to enter into any documents necessary or appropriate to satisfy the conditions to effectiveness of the Exit Financing. The proceeds of the Exit Financing shall be used to pay the Restructuring Expenses and provide New TMB as the Reorganized Debtor with working capital for its post-Effective Date operations and for other general corporate purposes.

On or before the Effective Date, the Debtor shall also be authorized, without the need for any further corporate action or without any further action by the Debtor or the Reorganized Debtor, as applicable, to enter into agreements with Tamara Mellon and Tamara Mellon, LLC whereby Tamara Mellon and Tamara Mellon, LLC will transfer certain marks, domain names and other intellectual property rights to New TMB in exchange for shares of, and a warrant to purchase further shares of, common stock in New TMB and in consideration of the overall restructuring transactions. Such agreements shall be part of the Plan Supplement.

### 3.   *Issuance of New Stock.*

Shares of New Stock shall be authorized under the New Charter and New Bylaws, and shares of New Preferred Stock and New Common Stock shall be issued on the Effective Date and distributed as soon as practicable thereafter in accordance with the Plan and the Term Sheet. The number of New Preferred Stock and New Common Stock to be distributed as set forth in the Plan and the Term Sheet are subject to adjustment by the Debtor in a manner that does not alter the respective percentages allocated to any Class or Claim holder, except for immaterial changes resulting from the treatment of fractional shares. All of the New Preferred Stock and New Common Stock issuable in accordance with the Plan and the Term Sheet, when so issued, shall be duly authorized, validly issued, fully paid, and non-assessable. The issuance of the New Preferred Stock and New Common Stock is authorized without the need for any further corporate action and without any further action by any holder of a Claim or Equity Interest.

The offering of the New Preferred Stock and New Common Stock under Article III of the Plan shall be exempt from the registration requirements of section 5 of the Securities Act and other applicable law under section 4(a)(2) of the Securities Act or another available exemption from registration under the Securities Act. The issuance and distribution of the New Preferred Stock and New Common Stock under Article III of the Plan shall be exempt from the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration of an offer or sale of securities under section 1145(a) of the Bankruptcy Code.

19

The issuance of the New Preferred Stock and New Common Stock shall be exempt from the requirements of section 16(b) of the Securities and Exchange Act of 1934 (pursuant to Rule 16b-3 promulgated thereunder) with respect to any acquisition of such securities by an officer or manager as of the Effective Date.

### 4.    *Cancellation of Certain Indebtedness, Agreements, and Existing Securities.*

On the Effective Date, except as otherwise specifically provided for in the Plan, the obligations of the Debtor under the Prepetition Operating Agreement, Term Loan and any other certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtor giving rise to any Claim or Equity Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligations of the Debtor that are specifically reinstated pursuant to the Plan), shall be cancelled as to the Debtor, and the Reorganized Debtor shall not have any continuing obligations thereunder; and the obligations of the Debtor pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, or similar documents governing the Prepetition Operating Agreement, the Term Loan and any other shares, certificates, notes, bonds, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtor (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligations of the Debtor that are specifically reinstated pursuant to the Plan or assumed by the Debtor) shall be released and discharged; provided, however, that, notwithstanding the occurrence of the Confirmation Date or the Effective Date, any such indenture or agreement that governs the rights of the holder of a Claim shall continue in effect solely for purposes of allowing holders of such Claims to receive distributions under the Plan as provided therein. For the avoidance of doubt, nothing in this section shall affect the discharge of or result in any obligation, liability, or expense of the Debtor or the Reorganized Debtor, or affect the discharge of Claims or Equity Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, or result in any additional obligation, expense, or liability of the Debtor or the Reorganized Debtor.

### 5.    *Corporate Action.*

Each of the matters provided for by the Plan involving the corporate structure of the Debtor or corporate or related actions to be taken by or required of the Reorganized Debtor, whether taken prior to or as of the Effective Date, shall be deemed authorized and approved in all respects without the need for any further corporate action and without any further action by the Debtor or the Reorganized Debtor, as applicable.

## VII.    EFFECTS OF CONFIRMATION OF THE PLAN

### A.    Continued Corporate Existence and Vesting of Assets.

Except as otherwise provided in the Plan: (i) the Reorganized Debtor will exist after the Effective Date as a separate legal entity, with all of the powers of such a legal entity under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger, dissolution or otherwise) under applicable law; and (ii) on the Effective

Date, all property of the Debtor's Estate, and any property acquired by the Debtor or Reorganized Debtor under the Plan, will vest in such Reorganized Debtor free and clear of all Claims, Liens, charges, other encumbrances, Equity Interests, and other interests, except for the Liens and Claims established under the Plan (if any).

On and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire, and dispose of property and compromise or settle any claims without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, subject only to those restrictions expressly imposed by the Plan or the Confirmation Order as well as the documents and instruments executed and delivered in connection therewith, including the documents, exhibits, instruments, and other materials comprising the Plan Supplement. Without limiting the foregoing, the Reorganized Debtor may pay the charges that they incur from and after the Effective Date for Fee Claims, disbursements, expenses, or related support services (including fees relating to the preparation of Professional fee applications) without application to, or the approval of, the Court.

## B.     Waiver of Avoidance Actions.

To the extent not already otherwise waived pursuant to another order of the Bankruptcy Court, effective as of the Effective Date, the Debtor shall be deemed to have waived the right to prosecute, and to have settled and released for fair value, any avoidance or recovery actions under sections 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code or other applicable law that belong to the Debtor on account of paying or having paid all General Unsecured Claims in full pursuant to an Order of the Court or the Plan.

## C.     Preservation of Causes of Action.

In accordance with section 1123(b) of the Bankruptcy Code, and except as expressly provided in the Plan (including Articles IV.L and VII), the Reorganized Debtor shall retain all Causes of Action, including without limitation any Causes of Action against J. Choo USA, Inc. or any of its parents, affiliates, principals, subsidiaries, employees, successors, or assigns. Nothing contained in the Plan or the Confirmation Order shall be deemed a waiver or relinquishment of any claim, Cause of Action, right of setoff, or other legal or equitable defense of the Debtor that is not specifically waived or relinquished by the Plan. The Reorganized Debtor shall have, retain, reserve, and be entitled to assert, all such claims, Causes of Action, rights of setoff, and other legal or equitable defenses that the Debtor had immediately before the Petition Date as fully as if the Chapter 11 Case had not been commenced, and all of the Reorganized Debtor's legal and equitable rights respecting any claim that is not specifically waived or relinquished by the Plan may be asserted after the Effective Date to the same extent as if the Chapter 11 Case had not been commenced. No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtor or the Reorganized Debtor, as applicable, will not pursue any and all available Causes of Action against such Person. The Debtor or the Reorganized Debtor, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Person, in accordance with the Plan. From and after the Effective Date, the Reorganized Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any

Cause of Action and to decline to do any of the foregoing without further notice to or action, order, or approval of the Court. The Reorganized Debtor is deemed a representative of the Estate for the purpose of prosecuting any Claim or Cause of Action and any objections to Claims pursuant to 11 U.S.C. § 1123(b)(3)(B).

## D.   Claims Incurred After the Effective Date.

Claims incurred by the Debtor after the Effective Date may be paid by the Reorganized Debtor in the ordinary course of business and without application for or Court approval, subject to any agreements with such holders of a Claim and applicable law.

# VIII.  DISCHARGES, RELEASES AND INJUNCTIONS

## A.   General Settlement of Claims and Interests.

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Equity Interests and controversies relating to the contractual, legal, and subordination rights that a holder of a Claim may have with respect to any Allowed Claim, or any Distribution to be made on account of such Allowed Claim.

The entry of the Confirmation Order shall constitute the Court's approval of each of the compromises and settlements embodied in the Plan, and the Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, its Estate, creditors, and other parties-in-interest, and are fair, equitable, and within the range of reasonableness. The Plan and the Confirmation Order shall have res judicata, collateral estoppel, and estoppel (judicial, equitable, or otherwise) effect with respect to all matters provided for, or resolved pursuant to, the Plan and/or the Confirmation Order, including, without limitation, the release, injunction, exculpation, discharge, and compromise provisions contained in the Plan and/or the Confirmation Order. The provisions of the Plan, including, without limitation, its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable.

## B.   Subordination of Claims.

The allowance, classification and treatment of all Allowed Claims and Equity Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto. However, the Debtor reserves the right to reclassify any Allowed Claim or Equity Interest in accordance with any contractual, legal or equitable subordination relating thereto, unless otherwise provided in a settlement agreement concerning such Allowed Claim.

## C.   Discharge of the Debtor.

**Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or**

document created pursuant to the Plan: (a) the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release of all Claims, Equity Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Equity Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against and Equity Interests in, the Debtor, the Reorganized Debtor or any of their assets, properties or Estate, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims, Equity Interests and Causes of Action, including demands, liabilities and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date; (b) the Plan shall bind all holders of Claims and Equity Interests, notwithstanding whether any such holders failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Claims and Equity Interests shall be satisfied, discharged and released in full, and the Debtor's liability with respect thereto, shall be extinguished completely, including debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not: (i) a proof of Claim or Equity Interest based upon such debt, right, or Equity Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Equity Interest based upon such debt, right or Equity Interest is Allowed; or (iii) the holder of such a Claim or Equity Interest has accepted the Plan or is entitled to receive a distribution hereunder; and (d) all Entities shall be precluded from ever asserting against the Debtor, the Debtor's Estate, the Reorganized Debtor, their successors and assigns, and their assets and properties any Claims and Equity Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date. Any default by the Debtor with respect to any Claim or Equity Interest that existed immediately before or on account of the filing of the Chapter 11 Case shall be deemed cured on the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Equity Interests subject to the Effective Date occurring.

**D.    Release of Liens.**

Except as otherwise expressly provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, and other security interests against any property of the Debtor's Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, and other security interests shall revert to the Reorganized Debtor and its successors and assigns.

**E.    Releases by the Debtor.**

Except as otherwise specifically provided in the Plan, for good and valuable consideration, including the service of the Released Parties to facilitate the reorganization of the Debtor, the implementation of the restructuring contemplated by the Plan and the compromises contained therein, on and after the Effective Date, the Released Parties are hereby released and discharged by the Debtor, the Reorganized Debtor and the Estate, including any successor to the Debtor or any Estate representative from all claims, obligations, rights, suits, damages, Causes of

Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or fixed, existing or hereafter arising, in law, at equity or otherwise, whether for indemnification, tort, contract, violations of federal or state securities laws or otherwise, including, those that the Debtor, the Reorganized Debtor or the Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Equity Interest or any other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtor and its Estate, the conduct of the business of the Debtor, the Chapter 11 Case, the purchase, sale or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the restructuring of Claims and Equity Interests prior to or during the Chapter 11 Case, the negotiation, formulation or preparation of the Plan, the Plan Supplement, the Disclosure Statement, Exit Financing or, in each case, related agreements, instruments or other documents, any action or omission as an officer, manager, member, representative, fiduciary, controlling person, affiliate or responsible party, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date of the Plan, other than claims or liabilities arising out of or relating to any act or omission of a Released Party to the extent such act or omission is determined by a Final Order to have constituted willful misconduct, gross negligence, bad faith, fraud or a criminal act. Without conceding the applicability or enforceability of any such law, the Debtor, the Reorganized Debtor and the Estate, including any successor to the Debtor or any Estate representative, knowingly and voluntarily waive and relinquish any and all provisions, rights and benefits conferred by any law of the United States or any state or territory of the United States, or principle of common law, which governs or limits a person's release of unknown claims, comparable or equivalent to California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

## F.   Exculpation.

Notwithstanding anything in the Plan to the contrary and to the extent permitted by applicable law, the Exculpated Parties shall neither have nor incur any liability to any Entity for any Restructuring-Related Action; provided that nothing in the foregoing "Exculpation" shall exculpate any Entity from any liability resulting from any act or omission that is determined by Final Order to have constituted fraud, willful misconduct, gross negligence, or criminal conduct; provided that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement.

Notwithstanding anything in the Plan to the contrary, as of the Effective Date, pursuant to section 1125(e) of the Bankruptcy Code, the Solicitation Parties upon appropriate findings of the Bankruptcy Court will be deemed to have solicited acceptance of the Plan in good

faith and in compliance with the applicable provisions of the Bankruptcy Code, and to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security, offered or sold under the Plan of a Reorganized Debtor, and shall not be liable to any Entity on account of such solicitation or participation.

In addition to the protections afforded in this Article VII.F to the Exculpated Parties, and not in any way reducing or limiting the application of such protections, the Bankruptcy Court retains exclusive jurisdiction over any and all Causes of Action asserted against any Debtor for any Restructuring-Related Action that are not otherwise exculpated or enjoined by the Plan.

## G.    Injunction.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, THE PLAN SUPPLEMENT OR RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR EQUITY INTERESTS THAT HAVE BEEN RELEASED OR DISCHARGED PURSUANT TO THIS PLAN OR ARE SUBJECT TO EXCULPATION PURSUANT TO THIS ARTICLE VII ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTOR, THE REORGANIZED DEBTOR, THE RELEASED PARTIES, OR THE EXCULPATED PARTIES: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, CAUSES OF ACTION, OR EQUITY INTERESTS; (2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH RELEASED PARTIES OR EXCULPATED PARTIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, CAUSES OF ACTION, OR EQUITY INTERESTS; (3) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH RELEASED PARTIES OR EXCULPATED PARTIES OR AGAINST THE PROPERTY OR ESTATE OF SUCH RELEASED PARTIES OR EXCULPATED PARTIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, CAUSES OF ACTION, OR EQUITY INTERESTS; (4) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DEBTOR OR REORGANIZED DEBTOR OR AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF THE DEBTOR OR REORGANIZED DEBTOR ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, CAUSES OF ACTION, OR EQUITY INTERESTS; AND (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, CAUSES OF ACTION, OR EQUITY INTERESTS RELEASED, SETTLED, OR DISCHARGED PURSUANT TO THE PLAN OR CONFIRMATION ORDER.

**H. Limitations on Exculpations and Releases.**

**Notwithstanding anything contained in the Plan to the contrary, the releases and exculpation contained therein do not release any obligations of any party arising under the Plan or any document, instrument or agreement (including those set forth in the documents related to the Exit Financing and the Plan Supplement) executed to implement the Plan.**

**I. Preservation of Insurance.**

The Debtor's discharge, exculpation and release, and the exculpation and release in favor of the Exculpated Parties, as provided in the Plan, shall not, except as necessary to be consistent with the Plan, diminish or impair the enforceability of any insurance policy that may provide coverage for claims against the Debtor, the Reorganized Debtor, the Non-Debtor their current and former managers and officers, or any other Person.

## IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

**A. Conditions Precedent to Effectiveness**

The Plan shall not become effective unless and until the Confirmation Date has occurred and the following conditions have been satisfied in full or waived in accordance with Article X.B:

    (i) the Confirmation Order entered by the Court shall be in form and substance reasonably satisfactory to the Debtor and NEA;

    (ii) the Confirmation Order shall not have been stayed, modified, or vacated on appeal;

    (iii) all definitive documents shall be in form and substance reasonably satisfactory to the Debtor and NEA;

    (iv) all actions, documents, certificates, and agreements necessary to implement the Plan shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable Governmental Units in accordance with applicable laws;

    (v) all authorizations, consents, and regulatory approvals required (if any) for the Plan's effectiveness shall have been obtained;

    (vi) the Reorganized Debtor shall have executed any documents necessary to implement the Exit Financing, and all conditions precedent to effectiveness of the Exit Financing shall have been satisfied or waived in accordance with the terms of the Exit Financing.

**B. Effective Date of the Plan**

The Plan shall become effective on the Effective Date.

## C. Waiver of Conditions Precedent to the Effective Date

The Debtor, with the consent of NEA, may waive conditions set forth in Article XI.A above at any time without leave of or order of the Court and without any formal action.

## D. Effect of Failure of the Effective Date of the Plan

In the event that the Effective Date does not occur on or before February 15, 2016, upon notification submitted by the Debtor to the Court: (i) the Confirmation Order may be vacated, (ii) no distributions under the Plan shall be made; (iii) the Debtor and all holders of Claims and Equity Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; and (iv) the Debtor's obligations with respect to the Claims and Equity Interests shall remain unchanged and nothing contained in the Plan shall constitute or be deemed a waiver, release, or discharge of any Claims or Equity Interests by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor unless extended by Court order.

## X. JURISDICTION OF BANKRUPTCY COURT

## A. Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction:

(a) to resolve any matters related to (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which the Debtor or the Reorganized Debtor is party or with respect to which the Debtor or the Reorganized Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; and (b) any dispute regarding whether a contract or lease is or was executory or expired;

(b) to determine, adjudicate, or decide any other applications, adversary proceedings, contested matters, and any other matters pending on the Effective Date;

(c) to ensure that distributions to holders of Allowed Claims and Equity Interests are accomplished as provided in the Plan;

(d) to resolve disputes as to the ownership of any Claim or Equity Interest;

(e) to allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Equity Interests;

(f)     to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, reversed, modified, or vacated;

(g)     to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(h)     to consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Court, including the Confirmation Order;

(i)     to hear and determine all applications for compensation and reimbursement of expenses of professionals under sections 330, 331, and 503(b) of the Bankruptcy Code;

(j)     to hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including the release of the Guarantee Claims;

(k)     to hear and determine any issue for which the Plan requires a Final Order of the Court;

(l)     to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(m)     to hear and determine disputes arising in connection with compensation and reimbursement of expenses of professionals for services rendered during the period commencing on the Petition Date through and including the Effective Date;

(n)     to hear and determine any Causes of Action preserved under the Plan;

(o)     to hear and determine any matter regarding the existence, nature, and scope of the Debtor's discharge;

(p)     to hear and determine any matter, case, controversy, suit, dispute, or Cause of Action (i) regarding the existence, nature, and scope of the discharge, releases, injunctions, and exculpation provided under the Plan, and (ii) enter such orders as may be necessary or appropriate to implement such discharge, releases, injunctions, exculpations, and other provisions;

(q)     to enter a final decree closing the Chapter 11 Case;

(r)     to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan;

(s)     to adjudicate any and all disputes arising from or relating to distributions under the Plan;

(t)     to enforce all orders previously entered by the Court; and

28

(u)   to hear any other matter not inconsistent with the Bankruptcy Code.

For the avoidance of doubt, the Court shall not retain exclusive jurisdiction with respect to the following documents entered into by the Reorganized Debtor on or after the Effective Date: (i) the Exit Financing documents Credit Agreement and (ii) the New Charter and New Bylaws.

## B.    Modification of Plan

Subject to the limitations contained in the Plan, and subject to the terms of the Term Sheet, (i) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code, and (ii) after entry of the Confirmation Order, the Debtor or the Reorganized Debtor, as the case may be, may, upon order of the Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code. Notwithstanding the foregoing, the Confirmation Order shall authorize the Debtor or the Reorganized Debtor, as the case may be, to make appropriate technical adjustments, remedy any defect or omission, or reconcile any inconsistencies in the Plan, the documents included in the Plan Supplement, any and all exhibits to the Plan, and/or the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided, however, that such action does not materially and adversely affect the treatment of holders of Allowed Claims or Equity Interests pursuant to the Plan.

## C.    Revocation or Withdrawal of the Plan

The Debtor reserves the right to revoke or withdraw the Plan at any time before the Effective Date. If the Debtor revokes or withdraws the Plan prior to the Effective Date, or if the Confirmation Date or the Effective Date does not occur, the Plan, any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Equity Interest or Class of Claims or Equity Interests), the assumption or rejection of Executory Contracts, Unexpired Leases or benefit plans effected by the Plan, any release, exculpation, or indemnification provided for in the Plan, and any document or agreement executed pursuant to the Plan shall be null and void. In such event, nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan shall be deemed to constitute a waiver or release of any Claims by or against or Equity Interests in the Debtor or any other Person, to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor, or to constitute an admission of any sort by the Debtor or any other Person.

## XI.    MISCELLANEOUS PROVISIONS

## A.    Immediate Binding Effect.

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtor, the Reorganized Debtor, and any and all holders of Claims or Equity Interests (irrespective of whether such Claims or Equity Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements,

compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor. The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

## B.   Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Delaware (without reference to the conflicts of laws provisions thereof that would require or permit the application of the law of another jurisdiction) shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, unless otherwise specified.

## C.   Filing or Execution of Additional Documents.

On or before the Effective Date or as soon thereafter as is practicable, the Debtor or the Reorganized Debtor shall (on terms materially consistent with the Plan) file with the Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

## D.   Term of Injunctions or Stays.

All injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

## E.   Withholding and Reporting Requirements.

In connection with the Plan and all instruments issued in connection therewith and distributions thereon, the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by any United States federal, state, local, or non-U.S. taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtor shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distribution pending receipt of information necessary or appropriate to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.

## F.   Exemption From Transfer Taxes.

Pursuant to, and to the fullest extent permitted by, section 1146(a) of the Bankruptcy Code, all transfers of property pursuant hereto, including (i) the issuance, transfer, or exchange under the Plan of New Preferred Stock and New Common Stock, (ii) the making or assignment of any lease or sublease, or (iii) the making or delivery of any other instrument whatsoever, in furtherance of or in connection with the Plan, shall not be subject to any stamp,

conveyance, mortgage, sales or use, real estate transfer, recording, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

## G.    Plan Supplement.

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. Holders of Claims or Equity Interests may obtain a copy of the Plan Supplement upon written request to counsel to the Debtor. The Debtor reserves the right, in accordance with the terms hereof, to modify, amend, supplement, restate, or withdraw any part of the Plan Supplement after they are filed.

## H.    Conflicts.

The terms of the Plan shall govern in the event of any inconsistency between the Plan and the Disclosure Statement. In the event of any inconsistency with the Plan and the Confirmation Order, the Confirmation Order shall govern with respect to such inconsistency.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), or a schedule or exhibit hereto or instrument, agreement or other document executed under the Plan provides otherwise, the rights, duties and obligations arising under the Plan, and the instruments, agreements and other documents executed in connection with the Plan, shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Delaware without giving effect to the principles of conflicts of law thereof.

## XII.    GENERAL INFORMATION ON VOTING AND CONFIRMATION PROCEDURE

### A.    Voting On the Plan

The following is a summary of the procedures and requirements that have been established for voting on the Plan. If you are entitled to vote to accept or reject the Plan, you should receive a Ballot for the purpose of voting on the Plan. If you are entitled to vote and did not receive a Ballot, or you received a damaged Ballot, or you lost your Ballot, please contact the Debtor.

Votes cannot be transmitted orally. Votes may be transmitted by facsimile or by electronic mail (e-mail) pursuant to the instructions enclosed with your Ballot. Accordingly, you are urged to return your signed and completed Ballot promptly. Any executed Ballot that does not indicate either an acceptance or a rejection of the Plan, or that indicates both an acceptance and a rejection of the Plan, will not be counted as a vote to either accept or reject the Plan.

THE DEBTOR WILL SEEK TO SATISFY THE REQUIREMENTS FOR CONFIRMATION OF THE PLAN UNDER THE CRAMDOWN PROVISIONS OF SECTION 1129(B) OF THE BANKRUPTCY CODE AS TO CLASS 5. IF NO VOTES TO ACCEPT OR

31

REJECT ARE TALLIED WITH THE VOTING CLASS, THE DEBTOR WILL SEEK TO HAVE SUCH CLASS DEEMED TO ACCEPT THE PLAN.

SUBJECT TO THE TERMS AND CONDITIONS OF THE PLAN, THE DEBTOR RESERVES THE RIGHT TO AMEND THE PLAN EITHER BEFORE OR AFTER THE CONFIRMATION DATE.

AMENDMENTS TO THE PLAN THAT DO NOT MATERIALLY AND ADVERSELY AFFECT THE TREATMENT OF CLAIMS MAY BE APPROVED BY THE BANKRUPTCY COURT AT THE CONFIRMATION HEARING WITHOUT THE NECESSITY OF RESOLICITING VOTES.

## B.   Voting Record Date

TMB has fixed December 2, 2015 (prevailing Eastern Time) as the "**Voting Record Date**" for the determination of the holders of Claims entitled to vote to accept or reject the Plan and the amount of such Claims.

### 1.   *Who May Vote*

Pursuant to section 1126 of the Bankruptcy Code, only the holders of Claims or Interests in Classes that are Impaired by, and are receiving distributions under, the Plan may vote on the Plan. Holders of Claims that are Unimpaired by the Plan are deemed to accept the Plan and do not have the right to vote on the Plan. Holders of Claims that are Impaired by the Plan and are not receiving a distribution are deemed to reject the Plan and do not have the right to vote on the Plan. Administrative Expense Claims and Priority Tax Claims are not generally classified for purposes of voting or receiving distributions under the Plan.

**In this case, holders of Claims in Class 3 are entitled to vote to accept or reject the Plan**. If you are entitled to vote to accept or reject the Plan, a Ballot has been enclosed for the purpose of voting.

### 2.   *Eligibility*

In order for a holder of a Claim to be entitled to vote to accept or reject the Plan, the holder's Claim must be listed on the Debtor's books and records.

### 3.   *Binding Effect*

Whether a holder of an Allowed Claim votes on the Plan or not, such holder shall be bound by the terms of the Plan if the Plan is confirmed by the Bankruptcy Court.

## C.   Procedure/Voting Deadlines

In order for your vote to be counted, you must complete, date, sign and properly mail or deliver the enclosed Ballot to the Balloting Agent, by one of the methods set forth below:

By Mail:        Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, DE 19899-1347,
Attn: Daniel B. Butz, Esq.

By Electronic Mail:  dbutz@mnat.com (with original to follow by mail).

By Facsimile:  (302) 658-3989 (with original to follow by mail).

Once you have delivered your Ballot to the Debtor, you may change your vote by submitting to counsel to the Debtor a valid subsequent Ballot to be received by the Voting Deadline.

You are urged to timely complete, date, sign and promptly return the original enclosed Ballot by mail, courier service or hand delivery or by electronic mail or facsimile, with original to follow by mail, courier service or hand delivery.

Please be sure to complete the Ballot properly and legibly, identifying the exact amount of your Claim, the Class or Classes in which the Claim(s) is/are classified under the Plan and the name of the Creditor.

## D.   Plan Confirmation Process

### 1.   *Requirements*

The requirements for confirmation of the Plan are set forth in detail in section 1129 of the Bankruptcy Code. The following summarizes some of the pertinent requirements:

#### (a)   *Acceptance by All Impaired Classes*

Except as noted below, each Impaired Class of Claims must vote to either accept the Plan or be deemed to accept the Plan. "Impaired" is defined in section 1124 of the Bankruptcy Code. A Claim or Interest is Impaired unless the Plan leaves unaltered the legal, equitable, or contractual rights of the holder. Under the Plan, Claims in Class 3 are Impaired and are entitled to vote, separately, to accept or reject the Plan.

As a voting Creditor, your acceptance of the Plan is important. In order for the Plan to be accepted by an Impaired Class of Claims, holders with a majority in number and two-thirds in dollar amount of the Claims voting (of the voting Class of Claims) must vote to accept the Plan. At least one Impaired Class, excluding the votes of Insiders (if any), must actually vote to accept the Plan.

#### (b)   *Feasibility*

Pursuant to section 1129(a)(11) of the Bankruptcy Code, the Bankruptcy Court must determine, among other things, that confirmation of the Plan is not likely to be followed by the liquidation or need for further financial reorganization of the Debtor or any successors to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan. In

33

addition, section 1129(a)(12) requires that all fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the Effective Date of the Plan. These conditions are often referred to as the "feasibility" of the Plan. The Plan is a reorganization plan and is predicated upon the continuation of business by the Reorganized Debtor.

The projections prepared by the Debtor are included in the feasibility analysis (the "**Feasibility Analysis**") attached hereto as Exhibit C. The Debtor believes the projections are reasonable and achievable. As demonstrated by the Feasibility Analysis, the post-Effective Date financing is sufficient to fund the Reorganized Debtor's operating losses until the refined business plan and increase in sales result in a net profit.

As a result of the above, the Plan satisfies the feasibility test. Moreover, the Plan provides for payment of all statutory fees due and owing to the United States Trustee. Accordingly, the Debtor believes that the Plan satisfies the requirements of feasibility under section 1129(a) of the Bankruptcy Code.

    (c)    *"Best Interests" Test*

Pursuant to section 1129(a)(7) of the Bankruptcy Code, the Bankruptcy Court must find that the Plan is in the best interests of holders of Claims and Interests (commonly referred to as the "**Best Interests Test**"). To satisfy the "Best Interests" test, the Bankruptcy Court must determine that each holder of an Impaired Claim or Impaired Interest either: (i) has accepted the Plan; or (ii) will receive or retain under the Plan money or other property which, as of the Effective Date, has a value not less than the amount such holder would receive if the Debtor's property were liquidated under chapter 7 of the Bankruptcy Code on that date.

The first step in meeting the "Best Interests" test is to determine the proceeds that would be generated from the hypothetical liquidation of the Debtor's assets and properties in the context of a chapter 7 liquidation. The gross amount of cash and cash equivalents available would be the sum of the proceeds from the disposition of the Debtor's assets and the cash held by the Debtor at the time of the commencement of its chapter 7 case. Such amount is reduced by the amount of any Claims secured by such assets, the costs and expenses of the liquidation, and such additional administrative expenses and priority claims that may result from the termination of the Debtor's business and the use of chapter 7 for the purposes of a liquidation.

    i.    Costs and Expenses of Liquidation

In a chapter 7 liquidation, a trustee in bankruptcy would be appointed. The net amount generated from the liquidation of the Debtor's assets would be reduced by the administrative expenses of both the chapter 7 case and the Chapter 11 case, including the fees and commissions of the chapter 7 trustee, as well as those of counsel and other professionals that might be retained by the chapter 7 trustee, in addition to unpaid expenses incurred by the Debtor during the Chapter 11 case. These expenses and costs would reduce the net proceeds available to holders of Allowed Claims or Allowed Interests.

Any remaining net cash would be allocated to creditors and interest holders in strict accordance with the priorities set forth in section 726 of the Bankruptcy Code. The present value

of such allocation of the hypothetical liquidation proceeds (after deducting the amounts described above) is then compared with the present value of the proposed distributions under the Plan to each of the Classes of Claims and Interests to determine if the Plan is in the best interests of each holder of a Claim or Interest.

If the present value of the distributions available to unsecured creditors under the hypothetical liquidation is less than or equal to the present value of the distributions available to unsecured creditors under the Plan, then the Plan is in the best interests of creditors and can be considered in the "best interests of creditors" by the Bankruptcy Court.

      ii.      The Plan Meets the Best Interests Test

The Debtor believes that the Plan will produce a recovery for holders of Claims that would be equal to or better than would be achieved in a chapter 7 liquidation. If the Chapter 11 Case were converted to a case under chapter 7, the Debtor's business operations would cease and there would be no financing to pay Claims.

Importantly, a chapter 7 liquidation would likely result in an increase in Administrative Expense Claims, because there would be an additional tier of Administrative Expense Claims by the chapter 7 trustee and his or her professionals. The chapter 7 trustee's professionals, including legal counsel and accountants, would add administrative expenses that would be entitled to be paid ahead of Allowed Claims against the Debtor. The Estate would also be obligated to pay all unpaid expenses incurred by the Debtor during the Chapter 11 Case (such as compensation for professionals), which would continue to be allowed in the chapter 7 case as well. In addition, the cash to be distributed to holders of Claims would be reduced by the chapter 7 trustee's statutory fee, which is calculated on a sliding scale from which the maximum compensation is determined based on the total amount of moneys disbursed or turned over by the chapter 7 trustee. Finally, it is likely that distributions from a chapter 7 estate would be significantly deferred. As a result, the present value of such distributions is likely to be lower than if made under the Plan.

For the reasons set forth above, the Debtor believes that the Plan provides a recovery at least equal to, if not better than, the recovery in a chapter 7 case for holders of Claims, and the Plan meets the requirements of the Best Interests Test. A Liquidation Analysis to the same effect is attached to this Disclosure Statement as Exhibit D.

### (d)     *"Cramdown" Provisions*

Pursuant to section 1129(b) of the Bankruptcy Code, the Bankruptcy Court may confirm a plan even though a class of claims or equity interests has not voted to accept the plan, as long as one impaired class of claims has accepted the plan (excluding the votes of Insiders, if any) and the plan is "fair and equitable" and "does not discriminate unfairly" against the non-accepting classes.

The Plan impairs a Class of Secured Claims and all Equity Interests. The Debtor may, if applicable, pursue confirmation through a "cramdown" provision under section 1129(b)(2)(B), which states, in pertinent part, that a plan must be "fair and equitable" to such dissenting class and does not discriminate unfairly against such dissenting class. A plan is "fair and equitable" to

35

an secured creditor class if, among other possible treatment, the plan provides the secured creditor with the "indubitable equivalent" of its claim. A plan is "fair and equitable" to a class of equity interests if no holder of any equity interest that is junior to the equity interests of such class will receive or retain, on account of such junior equity interest, any property unless the senior class is paid in full.

A plan does not discriminate unfairly if the legal rights of a dissenting class are treated in a manner consistent with the treatment of other classes whose legal rights are similar to those of the dissenting class and if no class receives more than it is entitled to receive on account of its claim or interest. The Debtor will invoke the "cramdown" provisions of section 1129(b)(2) of the Bankruptcy Code.

## 2. *Confirmation Hearing*

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of a plan. To confirm the Plan, the Bankruptcy Court must determine whether the Plan meets the requirements of section 1129 of the Bankruptcy Code (the "**Confirmation Hearing**"). On the Commencement Date, TMB will request that the Bankruptcy Court promptly set a Confirmation Hearing.

## XIII. RISK FACTORS

ALL IMPAIRED HOLDERS OF CLAIMS SHOULD READ AND CAREFULLY CONSIDER THE FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS DISCLOSURE STATEMENT, PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN.

## A. Bankruptcy Factors

### 1. *Classifications of Claims and Interests*

Parties in interest may object to the Debtor' classification of Claims and Interests. Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class. The Debtor believes that the classification of Claims and Interests under the Plan complies with the requirements set forth in the Bankruptcy Code. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

### 2. *Non-Occurrence of the Effective Date*

If the conditions precedent to the Effective Date, which are set forth in the Plan, have not been satisfied or waived, the Bankruptcy Court may vacate the Confirmation Order. THERE CAN BE NO ASSURANCE THAT ALL OF THE VARIOUS CONDITIONS PRECEDENT TO THE EFFECTIVE DATE OF THE PLAN WILL BE TIMELY SATISFIED OR WAIVED. In the event that the conditions precedent to the Effective Date have not been timely satisfied or waived, the Plan would be deemed null and void and (i) the Debtor or another party-in-interest may propose or solicit votes on an alternative plan that may not be as favorable to parties-in-

interest as the current Plan, (ii) the Chapter 11 Case could be converted to a case under chapter 7 of the Bankruptcy Code; or (iii) the Chapter 11 Case could be dismissed.

### 3. Failure to Receive Requisite Accepting Votes

There can be no assurance that the requisite acceptances to confirm the Plan will be received. In order for the Plan to be accepted, of those holders of Claims who cast Ballots, the affirmative vote of at least two-thirds (2/3) in amount and more than one-half (1/2) in number of Allowed Claims in each voting Class is required.

If the requisite votes are not received, the Chapter 11 Case could be converted into a case under chapter 7 of the Bankruptcy Code or dismissed. There can be no assurance that the distributions under a chapter 7 liquidation or dismissal would be similar to or as favorable to holders of Claims as those proposed in the Plan. TMB believes that distributions to holders of Claims would be significantly reduced and delayed under a chapter 7 liquidation, as discussed herein, above.

### 4. Nonconsensual Confirmation

The Debtor intends to seek Confirmation over the rejection of the Plan by Class 5. Although the Debtor believes that the Plan satisfies the nonconsensual Confirmation requirements of Bankruptcy Code section 1129(b), there can be no assurance that the Bankruptcy Court will reach the same conclusion. In addition, the pursuit of nonconsensual Confirmation or consummation of the Plan may result in, among other things, delay and increased expenses relating to Administrative Expense Claims of professionals.

### 5. Failure to Confirm the Plan

Even if the requisite acceptances are received, there can be no assurance that the Bankruptcy Court will confirm the Plan. A non-accepting creditor or equity holder of the Debtor might challenge the confirmation of the Plan or the balloting procedures and/or voting results as not being in compliance with the Bankruptcy Code or Bankruptcy Rules. Even if the Bankruptcy Court determines that the Disclosure Statement and the balloting procedures and results are appropriate, the Bankruptcy Court could decline to confirm the Plan if it finds that any of the statutory requirements for confirmation have not been met, including that the terms of the Plan are fair and equitable to non-accepting Classes.

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation and requires, among other things, a finding by the Bankruptcy Court that the Plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting Classes and that the value of distributions to non-accepting holders of Claims or Interests within a particular Class under the Plan will not be less than the value of distributions such holders would receive if the Debtor was liquidated under chapter 7 of the Bankruptcy Code. While there can be no assurance that these requirements will be met, the Debtor believes that non-accepting holders within each Class under the Plan will receive distributions at least as great as would be received following a liquidation under chapter 7 of the Bankruptcy Code when taking into consideration all administrative claims and costs associated with any such chapter 7 case.

If the Plan is not confirmed, it is unclear what distributions holders of Claims or Interests ultimately would receive with respect to their Claims and Interests. If an alternative Plan could not be agreed to, it is possible that the Debtor would convert the Chapter 11 Case to a chapter 7 case or dismiss the Chapter 11 Case, in which case it is likely that holders of Claims or Interests would receive substantially less favorable treatment than they would receive under the Plan.

In addition, in the event that the Plan is not confirmed, the Debtor could incur substantial expenses related to the development and confirmation of a new plan and possibly the approval of a new disclosure statement. This would only unnecessarily prolong the administration of the Debtor's assets and negatively affect Creditors' recoveries on their Claims.

Similarly, as described above, in the event the Chapter 11 Case is converted to a case under chapter 7 of the Bankruptcy Code, the Debtor will incur substantial expenses related to hiring additional professionals and paying the fees of the chapter 7 trustee. The additional cost will only serve to reduce distributions to Creditors.

### 6.   Risk of Additional or Larger Claims

The Disclosure Statement necessarily includes estimates, including estimates of future events and unliquidated Claims. These estimates include, but are not limited to, estimates as to the total amount of Claims that will be asserted against the Debtor. The Debtor believes that the estimates presented are reasonable and appropriate under the circumstances. Nevertheless, there is a risk that unforeseen future events may cause one or more of these estimates to be materially inaccurate. Among the potential risks are that: (i) additional prepetition or Administrative Expense Claims may be asserted; (ii) Disputed Claims may be resolved at higher amounts than expected; or (iii) the resolution of Claims may require the expenditure of unanticipated professional fees.

### 7.   Alternative Chapter 11 Plan

If the Plan is not confirmed, any other party-in-interest may attempt to formulate an alternative chapter 11 plan. However, the Debtor believes that such an alternative chapter 11 plan will necessarily be significantly inferior to the Plan proposed herewith. The prosecution of an alternative chapter 11 plan would unnecessarily delay creditors' receipt of distributions and, due to the incurrence of additional administrative expenses during such period of delay, may provide for smaller distributions to holders of Allowed Claims and Interests than are currently provided for in the Plan. Accordingly, the Debtor believes that the Plan will enable all holders of Claims to realize the greatest possible recovery on their respective Claims and with the least delay.

### 8.   Variances from Projections

The projections reflect assumptions concerning, among other things, TMB's operations prior to the Effective Date and on-going business operations following the Effective Date. The Debtor believes that the assumptions underlying the projections are reasonable; however, unanticipated events occurring subsequent to the preparation of the projections may affect the actual financial results of the Debtor or the Reorganized Debtor. The projections have not been compiled, audited, or examined by independent accountants and the Debtor makes no

representations or warranties regarding the accuracy of the projections or the ability to achieve forecasted results.

### 9.    *Certain tax implications of the Chapter 11 Case*

Holders of Claims should carefully review Section XIV hereof, "Certain Federal Income Tax Consequences of the Plan," to determine how the tax implications of the Plan and the Chapter 11 Case may adversely affect the Reorganized Debtor and certain holders of Claims

### 10.    *The Debtor's emergence from chapter 11 is not assured*

While the Debtor expects to emerge from chapter 11, there can be no assurance that the Debtor will successfully reorganize or when this reorganization will occur, irrespective of the Debtor's obtaining Confirmation of the Plan.

### 11.    *The Debtor may fail to satisfy solicitation requirements*

Bankruptcy Code section 1126(b) provides that the holder of a claim against, or equity interest in, a debtor who accepts or rejects a plan of reorganization before the commencement of a chapter 11 case is deemed to have accepted or rejected such plan under the Bankruptcy Code so long as the solicitation of such acceptance was made in accordance with applicable non-bankruptcy law governing the adequacy of disclosure in connection with such solicitations, or, if such laws do not exist, such acceptance was solicited after disclosure of "adequate information," as defined in Bankruptcy Code section 1125.

In addition, Bankruptcy Rule 3018(b) states that a holder of a claim or equity interest who has accepted or rejected a plan before the commencement of the case under the Bankruptcy Code shall not be deemed to have accepted or rejected the plan if the court finds that the plan was not transmitted to substantially all creditors and equity security holders of the same class, that an unreasonably short time was prescribed for such creditors and equity security holders to accept or reject the plan, or that the solicitation was not in compliance with Bankruptcy Code section 1126(b).

To satisfy the requirements of Bankruptcy Code section 1126(b) and Bankruptcy Rule 3018(b), the Debtor is attempting to deliver this Disclosure Statement to all holders of Claims entitled to vote as of the Voting Record Date. In that regard, the Debtor believes that the solicitation of votes to accept or reject the Plan is proper under applicable non-bankruptcy law, rules and regulations. The Debtor cannot be certain, however, that the solicitation of acceptances or rejections will be approved by the Bankruptcy Court, and if such approval is not obtained, the Confirmation of the Plan could be denied. If the Bankruptcy Court were to conclude that the Debtor did not satisfy the solicitation requirements then the Debtor may seek to resolicit votes to accept or reject the Plan or to solicit votes to accept or reject the Plan from one or more Classes that were not previously solicited. The Debtor cannot provide any assurances that such a resolicitation would be successful.

### 12. *Confirmation and consummation may be delayed if the Debtor has to resolicit*

If the Debtor resolicits acceptances of the Plan from parties entitled to vote thereon, or if the Debtor is required to solicit the votes of the holders of Claims that have been deemed to reject the Plan, Confirmation of the Plan could be delayed and possibly jeopardized. Nonconfirmation of the Plan could result in an extended chapter 11 proceeding, during which time the Debtor could experience significant deterioration in its relationships with trade vendors and major customers.

### XIV. CERTAIN FEDERAL INCOME TAX CONSEQUENCES

The following discussion is a summary of certain material United States federal income tax aspects of the Plan, is for general information purposes only, and should not be relied upon for purposes of determining the specific tax consequences of the Plan with respect to a particular holder of a Claim or Interest. This discussion does not purport to be a complete analysis or listing of all potential tax considerations.

This discussion is based on provisions of the Internal Revenue Code of 1986, as amended (the "IRC"), proposed Treasury Regulations promulgated thereunder, and administrative rulings and court decisions, all as in effect on the date hereof. Legislative, judicial, or administrative changes or interpretations enacted or promulgated after the date hereof could alter or modify the analyses set forth below with respect to the United States federal income tax consequences of the Plan. Any such changes or interpretations may be retroactive and could significantly affect the United States federal income tax consequences of the Plan. To the extent that the following discussion relates to the consequences to holders of Allowed Claims or Interests, it is limited to holders that are United States persons within in the meaning of the IRC. For purposes of the following discussion, a "United States person" is any of the following:

•    An individual who is a citizen or resident of the United States;

•    A corporation created or organized under the laws of the United States or any state or political subdivision thereof;

•    An estate, the income of which is subject to federal income taxation regardless of its source; or

•    A trust that (a) is subject to the primary supervision of a United States court and which has one or more United States fiduciaries who have the authority to control all substantial decisions of the trust, or (b) has a valid election in effect under applicable United States Treasury regulations to be treated as a United States person.

The federal income tax consequences of the Plan are complex and are subject to significant uncertainties. No ruling has been requested or obtained from the Internal Revenue Service (the "IRS") with respect to any tax aspects of the Plan and no opinion of counsel has been sought or obtained with respect thereto. Thus, no assurance can be given as to whether the IRS will agree with the assertions and conditions discussed herein. No representations or assurances are being made to the holders of Claims or Interests with respect to the United States federal income tax consequences described herein. In addition, this summary does not address foreign, state or local tax consequences of the Plan, nor does it purport to address the federal income tax consequences of the Plan to special classes of taxpayers (such as banks, mutual

funds, insurance companies, tax-exempt organizations, investors in pass-through entities and holders of Claims who are themselves in bankruptcy). Furthermore, this discussion assumes that holders of Claims hold only Claims in a single Class.

Any discussion of United States federal tax issues set forth in this Disclosure Statement is written solely in connection with the confirmation of the Plan. A holder of a Claim or Interest should seek advice based on their particular circumstances from an independent tax advisor.

## A.    Certain U.S. Federal Income Tax Consequences to the Debtor and Reorganized Debtor

The Debtor may report net operating loss ("NOL") carryforwards for U.S. federal income tax purposes as of the Commencement Date. The amount of the NOL carryforward may be adjusted downward as a result of cancellation of indebtedness income ("COD Income") and the elimination of the Term Loan Claims resulting from the holders exchanging such Claims for Preferred Stock pursuant to the Plan. The NOL carryforwards, as adjusted, will remain with the Reorganized Debtor following consummation of the Plan.

The Debtor does not anticipate undergoing an "ownership change", under Section 382 of the IRC. Consequently, the Debtor does not anticipate that the use of its NOL carryforwards will be subject to limitation following consummation of the Plan.

## B.    Certain U.S. Federal Income Tax Consequences to Holders of Allowed Claims or Interests

A holder of an Allowed Claim or Interest will generally recognize ordinary income to the extent that the amount of cash or property received (or to be received) under the Plan is attributable to interest that accrued on a Claim or Interest but was not previously paid by the Debtor or included in income by the holder of the Allowed Claim or Interest. Holders of Claims or Interests who were not previously required to include any accrued but unpaid interest with respect to a Claim or Interest may be treated as receiving taxable interest income to the extent any consideration they receive under the Plan is allocable to such interest. Holders previously required to include in their gross income any accrued but unpaid interest with respect to a Claim or Interest may be entitled to recognize a deductible loss to the extent such interest is not satisfied under the Plan.

Subject to the discussion below, a holder of an Allowed Claim will generally recognize gain or loss equal to the difference between the holder's adjusted basis in its Claim and the amount realized by the holder upon consummation of the Plan that is not attributable to accrued but unpaid interest. The amount realized will equal the sum of cash and the fair market value of other consideration received (or to be received).

The character of any gain or loss that is recognized as such will depend upon a number of factors, including the status of the holder of a Claim or Interest, the nature of the Claim in the holder's hands, whether the Claim was purchased at a discount, whether and to what extent the holder of a Claim has previously claimed a bad debt deduction with respect to the Claim, and the holder's holding period of the Claim. If the Claim in the holder's hands is a capital asset, the gain or loss realized will generally be characterized as a capital gain or loss. Such gain or loss will constitute long-term capital gain or loss if the holder held such Claim for longer than one year, or short-term capital gain or loss if the holder held such Claim for less than one year.

A holder of an Allowed Claim who receives, in respect of its Claim, an amount that is less than its tax basis in such Claim may be entitled to a bad debt deduction if either: (i) the holder is a corporation; or (ii) the Claim constituted (a) a debt created or acquired (as the case may be) in connection with a trade or business of the holder or (b) a debt the loss from the worthlessness of which is incurred in the holder's trade or business. A holder that has previously recognized a loss or deduction in respect of its Claim may be required to include in its gross income (as ordinary income) any amounts received under the Plan to the extent such amounts exceed the holder's adjusted basis in such Claim or Interest.

Holders of Term Loan Claims may experience gain or loss under the Plan. Holders of such Claims will have gain or loss in an amount equal to the value of the Preferred Stock received less the tax basis in the indebtedness surrendered in exchange therefor. Holders of such Claims should seek their own tax advice with regard to whether any such holder would experience a gain or loss as a result of the implementation of the Plan. The Debtor may experience gain or loss as result of the Preferred Stock being exchanged for the release of Term Loan Claims.

## C.    Importance of Obtaining Professional Tax Assistance

**THE FOREGOING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE FOREGOING DISCUSSION IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT TAX ADVICE. THE TAX CONSEQUENCES ARE UNCERTAIN IN MANY CASES AND MAY VARY DEPENDING ON A CLAIM HOLDER'S OR INTEREST HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, CLAIM HOLDERS AND INTEREST HOLDERS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE UNITED STATES FEDERAL, STATE AND LOCAL, AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.**

## XV.    ALTERNATIVES TO THE PLAN

The Debtor has determined that the Plan is the most practical means of providing for maximum recoveries to the holders of Allowed Claims. Alternatives to the Plan that have been considered and evaluated by the Debtor include liquidation of the Debtor's assets under chapter 7 of the Bankruptcy Code. Through consideration of this alternative to the Plan, the Debtor has concluded that the Plan, in comparison, will likely provide a greater recovery to holders of Allowed Claims on a more expeditious timetable, and in a manner that minimizes certain risks inherent in any other course of action available to the Debtor.

If the Plan or any other chapter 11 plan for the Debtor cannot be confirmed under sections 1129(a) and (b) of the Bankruptcy Code, the Chapter 11 Case may be converted to a case under chapter 7 of the Bankruptcy Code, and a trustee would be elected or appointed to liquidate any remaining assets of the Debtor for distribution to holders of Allowed Claims and Interests pursuant to chapter 7 of the Bankruptcy Code. If a trustee is appointed and the remaining assets of the Debtor are liquidated under chapter 7 of the Bankruptcy Code, all Creditors and Interest holders under the Plan may receive distributions of a lesser value on

account of their Allowed Claims and Allowed Interests and may have to wait a longer period of time to receive such distributions than they would under the Plan.

## XVI.  RECOMMENDATIONS

The Debtor believes that the Plan is substantially preferable to any other plan, preferable to liquidation under chapter 7 of the Bankruptcy Code.  Conversion to a case under chapter 7 or dismissal of the Chapter 11 Case would result in substantial delays in the distribution of proceeds available and would significantly increase administrative costs, and, therefore, would materially reduce the recoveries of holders of Claims and Interests.  Therefore, the Debtor strongly recommends that you vote in favor of the Plan.

## XVII.  CONCLUSION

It is important that you exercise your right to vote on the Plan.  The Debtor believes that the Plan fairly and equitably provides for the treatment of all Claims against, and Interests in, the Debtor and recommends that you cast your Ballot in favor of the Plan.

Dated: December 2, 2015

### TAMARA MELLON BRAND, LLC

By:/s/ _Tamara Mellan_

Name:  Tamara Mellon
Title:  CEO

43

## EXHIBITS

**Exhibit A**   Prepackaged Plan of Reorganization

**Exhibit B**   Term Sheet

**Exhibit C**   Feasibility Analysis

**Exhibit D**   Liquidation Analysis