**Exhibit B**

Term Sheet

## TAMARA MELLON BRAND, INC.

### TERM SHEET FOR
### SERIES A PREFERRED STOCK FINANCING AND
### FINANCIAL RESTRUCTURING

*This term sheet dated as of December 2, 2015 ("**Term Sheet**") summarizes the principal terms of the proposed Series A Preferred Stock financing of Tamara Mellon Brand, Inc., a to-be-formed Delaware corporation, by New Enterprise Associates 15, Limited Partnership and its affiliated funds ("**NEA**") and the financial restructuring through a chapter 11 plan of reorganization (the "**Plan**") of Tamara Mellon Brand, LLC ("**TMB**") to be implemented through a chapter 11 case (the "**Case**") to be filed in the United States Bankruptcy Court for the District of Delaware (the "**Court**"). This term sheet is for discussion purposes only, and except as expressly set forth below, there is no obligation on the part of any negotiating party until a definitive stock purchase agreement is signed by all parties and other conditions set forth herein are met. The transactions contemplated by this term sheet are subject to, among other things, the satisfactory completion of due diligence. This term sheet does not constitute either an offer to sell or an offer to purchase securities.*

**OFFERING TERMS:**

| | |
|---|---|
| **PLAN DISTRIBUTIONS; TREATMENT OF EXISTING TMB CLAIMS AND INTERESTS** | • allowed administrative, priority, and tax claims, including without limitation DIP financing up to $1.9M provided by some party other than NEA, will be satisfied in full, in cash, or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code; such total amount of DIP financing shall be repaid in cash as accounts receivables related thereto are paid to the Company and the existing lease deposit is returned to the Company; any shortfall following collection of the preceding amounts shall be repaid out of working capital; it is anticipated that the total net amount of DIP financing required after collection of outstanding receivables related thereto and lease deposit should be no more than $600,000; |
| | • $3.435 million of principal (out of an aggregate $4.111 million at commencement of the Case) and accrued interest under the outstanding promissory notes (held by Canvas Service, LLC, Tamara Mellon and Sandbridge Consumer Fund I, LP) will be converted into Series A Preferred Stock at the Closing in accordance with the capitalization table set forth on Exhibit A. The remaining principal balance, $676,126, will be paid in cash at the Closing; |
| | • general unsecured claims shall be unimpaired and either paid at Closing or assumed and paid in the ordinary course; |
| | • the Preferred Units and Common Units of TMB currently |

| | |
|---|---|
| | outstanding, and all warrants and options with respect thereto, will be cancelled, and no consideration will be distributed in respect thereof. |
| **NEW MONEY INVESTMENT:** | Shares of Series A Preferred Stock ("*Series A Preferred Stock*") of Tamara Mellon Brand, Inc., a to-be-formed Delaware corporation (the "*Company*"). |
| | Prior to Closing (as defined below), TMB shall convert to a C-Corporation. |
| **RELEASE:** | The Plan (and the Plan confirmation order of the Court) shall provide for a release satisfactory to NEA pursuant to which, to the fullest extent permitted by law, NEA, TMB, the Company, each past, present or future director, officer, employee, member, partner, equityholder, affiliate, agent, attorney or representative of NEA, TMB or the Company and all of their respective affiliates shall be forever released and discharged from any obligation or liability in connection with the transactions contemplated under this Term Sheet and the Plan or relating to the business, assets or operations of TMB prior to the Closing, including, without limitation, stockholder, employee and creditor claims, and any losses resulting from the conversion or restructuring of TMB contemplated hereby (all matters described in this paragraph collectively, the "*Released Matters*"). |
| **INDEMNITY:** | In addition, NEA shall be indemnified and held harmless by the Company from any obligation or liability with respect to the Released Matters. Should NEA suffer any losses, liabilities, obligations, claims, costs, demands, actions and causes of action, suits, damages or judgments (collectively, "*Damages*") related to the Released Matters, it shall be entitled to an adjustment to the conversion ratio of any Series A Preferred Stock held by it in such amount that will compensate for such Damages (it shall be assumed that the original pre-money fully-diluted valuation set forth below is reduced on a dollar-for-dollar basis by such Damages). |
| **AGGREGATE PROCEEDS:** | A total of $12.0 million in new money, with $10.0 million from NEA and the remaining amount from existing investors and new investors mutually acceptable to NEA and the Company (such investors together with NEA, the "*Investors*"). |
| **CAPITALIZATION:** | The pro-forma capitalization of the Company shall be as set forth in the table attached as **Exhibit A**. |
| **TARGET CLOSING DATE:** | On or before February 1, 2015 (the "*Closing*"). |
| **USE OF PROCEEDS:** | Working capital and general corporate purposes, including payment of the Company's transaction and bankruptcy expenses and the distributions contemplated by the Plan. |

INTELLECTUAL PROPERTY: The Company shall enter into a new agreement with Tamara Mellon (the "*Founder*") regarding the ownership (and license) of intellectual property relating to "Tamara Mellon Brand" satisfactory to NEA and including, without limitation, the domain names and trademarks, and her name and likeness (the "*Founder IP*"). Such agreement shall contain customary protective provisions for a founder/namesake without a controlling interest in the company. In connection with the Founder IP agreement, Founder will receive equity as described in Exhibit A, including common stock warrants struck at the same price as newly issued employee options.

## TERMS OF SERIES A PREFERRED STOCK; GOVERNANCE OF COMPANY ON EXIT

DIVIDENDS: The holders of Series A Preferred Stock shall be entitled to receive non-cumulative dividends in preference to any dividend on the Common Stock of the Company ("*Common Stock*") at the rate of 6% of the original purchase price of the Series A Preferred Stock, whether paid in cash or with converted prepetition debt (the "*Original Purchase Price*") per annum for Series A Preferred Stock, if, when and as declared by the Board of Directors (the "*Board*"). For any other dividends or distributions, the holders of Series A Preferred Stock also shall be entitled to participate pro rata in any dividends paid on Common Stock on an as-if-converted basis.

LIQUIDATION PREFERENCE: In the event of any liquidation, dissolution or winding up of the Company, the holders of Series A Preferred Stock shall be entitled to receive prior and in preference to the holders of Common Stock an amount equal to the original purchase price per share (as adjusted for stock splits, stock dividends, recapitalizations, etc.), plus any declared but unpaid dividends on such shares (the "*Liquidation Preference*"). After the payment of the Liquidation Preference to the holders of Series A Preferred Stock, the remaining assets shall be distributed ratably to the holders of Common Stock.

A merger, acquisition, sale of voting control, sale of substantially all of the assets of the Company or any other transaction or series of transactions in which the stockholders of the Company do not own a majority of the outstanding shares of the surviving corporation (but excluding the issuance of stock pursuant to customary venture capital financings by the Company) shall be deemed to be a liquidation or winding up (a "*Liquidation Event*") and shall entitle the holders of Preferred Stock to receive at the closing (and at each date after the closing on which additional amounts (such as earnout payments, escrow amounts and other contingent payments) are paid to stockholder of the Company) the greater of (1) the amount they are entitled to receive as holders of Preferred Stock above, or (2) the amount they would be entitled to receive had such holder of Preferred

|                          |                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                             |
|--------------------------|---|
|                          | Stock converted such shares into Common Stock immediately prior to the closing of such transaction. |
| **REDEMPTION:**          | The Series A Preferred Stock shall not be redeemable. |
| **CONVERSION:**          | The holders of Series A Preferred Stock shall have the right to convert the Series A Preferred Stock, at any time, into shares of Common Stock at an initial conversion price of 1:1, subject to adjustment as provided below. |
| **AUTOMATIC CONVERSION:** | The Series A Preferred Stock and future series of preferred stock of the Company (collectively, the "*Preferred Stock*") shall be automatically converted into Common Stock, at the then applicable conversion price (i) in the event that the holders of at least a majority of the voting power of the outstanding Preferred Stock consent to such conversion or (ii) upon the closing of a firmly underwritten public offering of shares of Common Stock of the Company pursuant to a registration statement under the Securities Act of 1933 (the "*Act*") at a per share price not less than five times the Original Purchase Price of the Series A Preferred Stock and for a total offering of not less than $50 million (before deduction of underwriters commissions and expenses) (a "*Qualified IPO*"). |
| **ANTIDILUTION PROVISIONS:** | Proportional antidilution protection for stock splits, stock dividends, recapitalizations, etc.

In addition, the conversion price of the Series A Preferred Stock shall be subject to adjustment to prevent dilution on a broad-based weighted average basis in the event that the Company issues additional shares of Common Stock or securities convertible into or exercisable for Common Stock at a purchase price less than the then-effective conversion price, subject to customary exclusions. |
| **VOTING RIGHTS:**       | The Series A Preferred Stock and Common Stock shall vote together and not as a separate class except as otherwise provided herein for Series A Preferred Stock or as otherwise required by law. Each share of Series A Preferred Stock shall have a number of votes equal to the number of shares of Common Stock then issuable upon conversion of such share of Series A Preferred Stock. Upon conversion of the Preferred Stock, the Common Stock received shall have full and complete rights as a holder of Common Stock, including but not limited to the ability to designate and vote for directors to be elected by the holders of the Common Stock, except as may otherwise be agreed by the parties. For all votes of the Common Stock, each share shall have one vote.

Subject to the Protective Provisions below, the Company's Certificate of Incorporation will provide that the number of authorized shares of Common Stock may be increased or decreased with the approval of a |

|  |  |
|---|---|
|  | majority of the voting power of the outstanding shares of Preferred Stock and Common Stock, voting together as a single class, and without a separate class vote by the Common Stock. |
| **BOARD OF DIRECTORS:** | The Board initially shall have six (6) directors. The holders of Series A Preferred Stock, voting as a single class, will have the right to elect two members of the Board, both of whom shall be designated by NEA (one of whom initially shall be Tony Florence) (the "*Series A Directors*"). The holders of Common Stock, voting as a single class, will have the right to elect two members of the Board, both of whom shall be designated by Tamara Mellon, one of whom shall be the then current CEO. The remaining two members of the Board shall be outside industry experts designated by a majority of the other Board members and elected by the holders of the Series A Preferred Stock and Common Stock (voting together as a single class on an as-converted basis). The parties shall enter into a voting agreement with respect to the election of the directors. In addition, NEA shall have the right to appoint an observer to the Board. |
| **PROTECTIVE PROVISIONS:** | For so long as at least 25% of the Series A Preferred Stock issued at the Closing remain outstanding, in addition to any other vote or consent required herein or by law, the vote or written consent of the holders of at least a majority of the voting power of the outstanding shares of Series A Preferred Stock, voting together as a single class on an as-if converted basis, shall be necessary for effecting or validating certain material actions of the Company (whether consummated by merger, amendment, recapitalization, consolidation or otherwise) to be agreed by the parties. |
| **SUPER-MAJORITY OF BOARD APPROVAL RIGHTS:** | Under certain circumstances to be agreed by the parties, the vote or written consent of a super-majority of the Board shall be necessary to effect certain material actions of the Company. |
| **INFORMATION RIGHTS:** | NEA and each other holder of 10% or more of the Company's Series A Preferred Stock (each, a "*Major Investor*") shall be entitled to customary information rights. |
| **REGISTRATION RIGHTS:** | The holders of a majority of the Common Stock issued or issuable upon conversion of the Series A Preferred Stock shall be entitled to customary demand and registration rights. |
| **RIGHT OF FIRST REFUSAL WITH RESPECT TO COMPANY OFFERINGS:** | The Major Investors shall be entitled to customary preemptive rights on future Company securities offerings. |
| **MANAGEMENT RIGHTS:** | The Company shall provide NEA a management rights letter in a form acceptable to NEA. |

## EMPLOYEE AND VESTING MATTERS

| | |
|---|---|
| **EMPLOYEE OPTION POOL:** | An amount as described in Exhibit A will be reserved for future grants pursuant to the Company's unallocated employee option pool. |
| **EMPLOYMENT AGREEMENT** | The Company and the Founder will enter into an employment agreement, with terms to be agreed by Tamara Mellon and NEA.[1] |
| **STOCK RESTRICTION AGREEMENT; DRAG ALONG RIGHTS:** | The holders of the Company's Common Stock will be subject to customary rights of first refusal and co-sale and drag-along rights, subject to customary limitations. |
| **LEGAL COUNSEL AND FEES:** | Upon the closing of the transaction, the Company shall bear its own legal fees and expenses and shall pay the reasonable fees and expenses of a single counsel to the Investors with a limit to be determined by the parties. |

---

[1] Addressed in separate term sheet.

The foregoing correctly reflects our mutual intentions as a basis for proceeding toward negotiation of definitive agreements.

| TAMARA MELLON BRAND, LLC | NEW ENTERPRISE ASSOCIATES 15, LIMITED PARTNERSHIP |
|---|---|
| By: _____ | By: *Louis S. Citron* (signature) |
| Name: _____ | Name: Louis S. Citron |
| Title: CEO | Title: Chief Legal Officer |
| Date: _____, 2015 | Date: 12/2, 2015 |

The foregoing correctly reflects our mutual intentions as a basis for proceeding toward negotiation of definitive agreements.

| **TAMARA MELLON BRAND, LLC** | **NEW ENTERPRISE ASSOCIATES 15, LIMITED PARTNERSHIP** |
|---|---|
| By: *Tamara Mellon* | By: _____ |
| Name: Tamara Mellon | Name: _____ |
| Title: CEO | Title: Chief Legal Officer |
| Date: 12-2, 2015 | Date: _____, 2015 |

## Exhibit A

## Post Financing Capitalization Table

**Tamara Mellon Brand Cap Table**
*(000s, except for price per share)*

|  | Common | Shares Outstanding Preferred Series A | Fully-Diluted Post | Fully-Diluted Ownership % Post |
|---|---|---|---|---|
| NEA | 0 | 10,000 | 10,000 | 31.1% |
| Other Investors New Money | 0 | 2,000 | 2,000 | 6.2% |
| Prepetition Debt Holders | 0 | 3,435 | 3,435 | 10.7% |
| Tamara Mellon Common Shares at Closing* | 3,499 | 0 | 3,499 | 10.9% |
| Tamara Mellon Options and Warrants* | 8,195 | 0 | 8,195 | 25.5% |
| Employee Options (Other Than Tamara Mellon) | 5,007 | 0 | 5,007 | 15.6% |
| Total | 16,701 | 15,435 | 32,136 | 100.0% |

* Tamara Mellon common stock and options and warrant in consideration of employment and IP agreements