## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| TAMARA MELLON BRAND, LLC, *et al.* | ) | Case No. 15-12420 (KG) |
| | ) | |
| Debtor.[1] | ) | |
| | ) | |

### DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING DEBTOR TO USE CASH COLLATERAL, OBTAIN POSTPETITION FINANCING AND GRANT SECURITY INTERESTS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO 11 U.S.C. §§ 105 AND 364; (B) MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362; (C) AUTHORIZING DEBTORS TO ENTER INTO RATIFICATION AGREEMENT AND (D) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001

Tamara Mellon Brand, LLC ("TMB" or the "Debtor"), the debtor and debtor in possession hereby moves (the "Motion") for: (1) entry of an interim order, substantially in the form attached hereto as **Exhibit 1** (the "Interim Order") (a) authorizing TMB to (i) obtain postpetition senior secured superpriority financing; (ii) grant super-priority liens and super-priority claims to the DIP Lender (as defined herein); and (iii) use the cash collateral of the Pre-Petition Lenders and Factor (as defined herein) and provide adequate protection to the Pre-Petition Lenders and Factor; (b) scheduling a hearing to consider the relief in this Motion on a final basis (the "Final Hearing") and (c) modifying the automatic stay to the extent necessary to effectuate the relief sought herein; and (2) entry of a final order granting the relief requested in this Motion on a final basis (the "Final Order," together with the Interim Order, the "DIP Orders"). In support of this Motion, TMB relies upon and incorporates by reference the *Declaration of Tamara Mellon in Support of First Day Motions* (the "First Day Declaration"),

---

[1] The last four digits of the Debtor's federal tax identification number are 7426. The Debtor's address is 660 Madison Avenue, New York, NY, 10065.

which was filed with the Court concurrently herewith.  In further support of this Motion, TMB respectfully represents as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b).  Venue is appropriate in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief sought herein are sections 105, 361, 362, 363(c), 363(e), 364(c), 364(e) and 507 of the Bankruptcy Code, as supplemented by Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the U.S. Bankruptcy Court for the District of Delaware (the "Local Rules").

3.      TMB consents pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## BACKGROUND

A.      **Debtor's Business**

4.      A description of TMB's business and the reasons for filing this chapter 11 case is set forth in the First Day Declaration, filed concurrently herewith, and incorporated by reference as if fully set forth herein.

**B.**    **Debtor's Debt Structure**

**Capital Structure**

5.    TMB currently has three classes of membership units: (1) common units; (2) incentive units, which have the same priority as common units but no voting rights; and (3) preferred units, which have a liquidation preference over the common units but no voting rights. TMB's equity financing resulted in $24,000,000 in proceeds in 2013.

**Prepetition Credit Facility**

6.    As of the Petition Date, TMB was indebted to various investors (the "Pre-Petition Lenders"), including founder Tamara Mellon (the "DIP Lender"), in an amount in excess of $4.111 million which is secured by liens on certain of TMB's assets (the "Pre-Petition Secured Debt").

7.    Additionally, TMB is indebted to its factor, Hilldun Corporation (the "Factor"), for approximately $796,000.  To the extent the receivables sold to the Factor are insufficient to cover this debt, the Factor is also secured by liens on substantially all of TMB's assets.

**C.**    **The Chapter 11 Case and the Prepackaged Chapter 11 Plan**

9.    On December 2, 2015 (the "Petition Date"), TMB filed a voluntary petition in this Court for relief Chapter 11 of the Bankruptcy Code.

10.    After considering alternatives and in an effort to maximize the value of TMB's assets and maintain jobs for employees, TMB has determined that the appropriate course is to seek confirmation of a prepackaged plan of reorganization.

11.    TMB was able to negotiate the use of the Pre-Petition Lenders' cash collateral and entry in a debtor-in-possession financing credit arrangement (the "DIP Facility") consisting of that certain Ratification and Amendment Agreement, by and among Debtor, DIP Lender, and the Pre-Petition Lenders (the "Ratification Agreement"), which ratifies, extends, adopts and amends

the Fifth Amended and Restated Loan Agreement, dated as of October 29, 2015, by and among Borrower and the Pre-Petition Lenders (the "Existing Credit Agreement," a copy of which is attached hereto as Exhibit 2, and as ratified and amended by the Ratification Agreement, the "DIP Credit Agreement").  TMB believes that the use of cash collateral and the DIP Facility provide TMB with sufficient liquidity to complete a plan process that will enable TMB to maximize the value of its estate for the benefit of its stakeholders.

12.    Towards that end, commencing on December 2, 2015, TMB solicited votes on the *Debtor's Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* (the "Plan").  The Plan was unanimously accepted by the sole voting class, and TMB thereafter promptly commenced this case to seek confirmation of the Plan.  The DIP Lender's agreement to extend postpetition financing is conditioned upon and tied to TMB's continued pursuit of confirmation of the Plan.

13.    Additionally, the Debtor is party to a certain Discount Factoring Agreement dated June 8, 2015 (the "Factoring Agreement"), pursuant to which the Factor factors certain of the Debtor's accounts receivable (the "Factored Accounts").  The Factoring Agreement is a beneficial arrangement under which the Debtor has been able to rapidly transform what would otherwise be longer-term receivables into immediately liquidity and is more favorable than non-factoring alternatives for those receivables.  The Debtors expects it will continue to use the factoring services of the Factor when it emerges from bankruptcy protection.  Due, however, to the expected short duration of these cases and the time and expense of a full debtor-in-possession factor financing arrangement, the Debtor does not intend to factor receivables in the postpetition, pre-confirmation period.  Nonetheless, because there are continuing obligations on the part of both the Factor and the Debtor, the Debtor requests certain relief to maintain and facilitate

continued performance on account of existing factored receivables and other obligations under the Factoring Agreement.  In addition, as of the Petition Date the Debtor had received advances under the Factoring Agreement in excess of outstanding factored receivables.  The Debtor therefore requests authority to fulfill its obligations under the Factoring Agreement, including to continue to purchase and ship goods for customer orders backing the advances so as to generate receivables necessary to repay the advances pursuant to the language set forth in section 2.4.5 in the Interim Order.

<u>**RELIEF REQUESTED**</u>

14.    By the Motion, and for the reasons contained herein as well as the First Day Declaration, and pursuant to sections 105, 361, 362, 363(c), 363(e), 364(c), 364(e) and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, and 9014, and Local Rule 4001-2, TMB respectfully requests that the Court:

(a)    authorize TMB to access and use cash collateral;

(b)    authorize TMB, among other things, to: (i) obtain approximately $2 million (approximately $1.6 million on an interim basis) in postpetition financing pursuant to the DIP Facility; (ii) use the Cash Collateral; (ii) grant first priority, senior secured, super-priority liens and superpriority claims to the DIP Lender; and (iv) grant adequate protection to the Pre-Petition Lenders and the Factor;

(c)    approve the DIP Facility and all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of the DIP Lender;

(d)    schedule the Final Hearing to be held within thirty (30 days) of the entry of the Interim Order; and

(e)      grant certain related relief, in each case on the terms and subject to the conditions described in this Motion and set forth in the Interim Order and the DIP Facility.

## SUMMARY OF PRINCIPAL TERMS OF DIP FACILITY AND INFORMATION REQUIRED BY LOCAL RULE 4001-2

15.      Pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, the following are material provisions of the DIP Facility and the Interim Order, as well as those provisions required to be set forth under Local Rule 4001-2(a)(i):[2]

| | |
|---|---|
| The Borrower: | Tamara Mellon Brand, LLC |
| The DIP Lender: | Tamara Mellon |
| Interim and Final Financing Commitment: | The DIP Facility permits advances in an amount not to exceed $1,969,384, consisting of $1,564,979 during the interim period with an additional $404,405 during the final period. *See* Ratification Agreement at § 1.1(w). |
| Terms of DIP Facility | The DIP Facility calls for the accrual of simple interest at the rate of 6% per annum on the outstanding principal balance. Interest shall be payable at the Maturity Date. All unpaid principal, together with accrued and unpaid interest thereon, shall be due and payable or otherwise satisfied on the Maturity Date. |
| Priority and Liens under 364(c) or 364(d): | To secure the prompt payment and performance of any and all Post-Petition Obligations of Debtor to DIP Lender of whatever kind, nature or description, absolute or contingent, now existing or hereafter arising, DIP Lender, shall have and is hereby granted, effective as of the Petition Date, valid and perfected first priority security interests and liens, superior to all other liens, claims or security interests that any creditor of the Debtor's Estate may have (but subject to certain claims entitled to priority, including the Permitted Liens and Claims (as defined in the Interim Order) as and to the extent expressly provided in Section 2.1.2 of the Interim Order), in and upon all of the Post-Petition Collateral (as defined in the Ratification Agreement and including all |

[2] Unless otherwise specified, the capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the DIP Facility and the Interim Order, as applicable. The summaries and descriptions of the terms and conditions of the DIP Facility and the Interim Order set forth in this Motion are intended for informational purposes for the Court and other parties in interest. In the event, of any inconsistency between this Motion and the summary contained herein, the DIP Facility and the Interim Order shall govern.

|  | tangible and intangible assets of the Debtor, including without limitation, subject to the entry of a Final Financing Order (as defined in the Ratification Agreement), any and all claims of the Debtor under Chapter 5 of the Bankruptcy Code) (the "DIP Liens"). |
|---|---|
|  | The postpetition liens and security interests of DIP Lender granted under the Loan Documents and the Interim Order in the Collateral shall be first and senior in priority to all other interests and liens of every kind, nature and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or interests granted in favor of third parties in conjunction with section 363, 364 or any other section of the Bankruptcy Code or other applicable law; provided, however, that DIP Lender's liens on and security interests in the Collateral shall be subject only to (i) the Carve Out Expenses (as defined below) solely to the extent provided for in Sections 2.3 and 2.4 of the Interim Order, and (ii) other valid, enforceable, non-avoidable liens and security interests perfected prior to the Petition Date that are senior to the prepetition liens of the Pre-Petition Lenders, including the liens and security interests of the Factor perfected prior to the Petition Date other than liens and security interests with respect to the Debtor's general intangibles |
|  | *See* Interim Order, ¶¶ 2.1.1 and 2.1.2. |
| Adequate Protection: | Paragraphs 2.4.2 – 2.4.4 of the Interim Order provide adequate protection for the Pre-Petition Lenders in the form of replacement liens, superpriority claims and expense reimbursement. |
|  | Paragraph 2.4.5 of the Interim Order provides adequate protection for the Factor as follows: |
|  | The Factor shall be provided the following as adequate protection for any diminution in the value of its prepetition collateral: notwithstanding the commencement of the Chapter 11 Cases, (a) the Factor's prepetition ownership interest in the certain of the Debtor's accounts receivable (the "Factored Accounts") (as and to the extent existing on the Petition Date or as provided below at subsection f) is hereby confirmed, (b) the Factor shall have the right, in accordance with the terms of that certain Discount Factoring Agreement dated June 8, 2015 (the "Factoring Agreement"), to set off and apply all amounts, including but not limited to, costs, fees, expenses (legal, audit, and otherwise), minimum commissions, interest, and collection days, whether accruing prepetition or postpetition, owed by the Debtor to the Factor under the Factoring Agreement, against the purchase price owed to the Debtor by the Factor for the Factored Accounts; (c) subject to any offsets or defenses existing thereunder, the Factor shall comply with all of its obligations under the Factoring Agreement with respect to the Factored Accounts; (d) the Factor is authorized and directed to return to customers payments received by the Factor with respect to non-factored accounts for collection by and remittance directly to the Debtor by such customers; (e) subject to the Factor's right to implement necessary and |

| | |
|---|---|
| | appropriate reserves in accordance with the terms of the Factoring Arrangement, Factor shall remit proceeds when due and payable under the Factoring Agreement directly to the Company pursuant to the Factoring Agreement; and (f) the Debtor is hereby authorized to continue to purchase and ship goods consistent with fulfilling its existing obligations under the Factoring Agreement, and receivables or invoices thereby generated shall be Factored Accounts.  The automatic stay in effect pursuant to section 362(a) of the Bankruptcy Code is modified to the extent necessary to implement the foregoing.  For the avoidance of doubt, the Debtor shall not incur additional advances under the Factoring Agreement and shall sell or pledge receivables postpetition except as authorized under section f above. |
| Permitted Uses: | General operating and working capital purposes in the ordinary course of business of Debtor and administration of the Chapter 11 Case all in accordance with or as permitted by the Budget pursuant to Section 5.3 of the Ratification Agreement.<br><br>*See* Ratification Agreement at § 5.2. |
| Deadlines related to a plan: | The Confirmation Date shall occur by February 1, 2016.  The Effective Date shall occur by February 15, 2016.<br><br>*See* Ratification Agreement at § 5.6. |
| Events of Default: | The Ratification Agreement provides the following are events of default, in addition to the events of default in the Existing Credit Agreement:<br><br>(a)  the occurrence of any condition or event which permits DIP Lender to exercise any of the remedies set forth in the Financing Order, including, without limitation, any "Event of Default" (as defined in the Financing Order);<br><br>(b)  the termination or non-renewal of the Loan Documents as provided for in the Financing Order;<br><br>(c)  any act, condition or event occurring after the Petition Date that has or would reasonably expect to result in the occurrence of a material adverse effect upon the assets of the Debtor, or the Collateral, or the ability of the Debtor to perform under and comply with the Budget in accordance with the terms and conditions hereof, or the ability of the Debtor to perform under, or the rights and remedies of the DIP Lender under, the Existing Credit Agreement, the Existing Loan Documents, this Ratification Agreement or any other Loan Documents or the Financing Order;<br><br>(d)  conversion of the Chapter 11 Case to a Chapter 7 case under the Bankruptcy Code;<br><br>(e)  dismissal of the Chapter 11 Case or any subsequent Chapter 7 case |

either voluntarily or involuntarily;

(f)  the grant of a lien on or other interest in any property of the Debtor, other than a lien or encumbrance expressly permitted by the Financing Order, which is superior to or ranks in parity with DIP Lender's security interest in or lien upon the Collateral;

(g)  the grant of an administrative expense claim in the Chapter 11 Case, other than such administrative expense claim expressly permitted by the Financing Order or this Ratification Agreement, which is superior to or ranks in parity with DIP Lender's Superpriority Claim (as defined in the Financing Order);

(h)  the Financing Order shall be modified, reversed, revoked, remanded, stayed, rescinded, vacated or amended on appeal or by the Bankruptcy Court without the prior written consent of DIP Lender (and no such consent shall be implied from any other authorization or acquiescence by DIP Lender);

(i)  the appointment of a trustee pursuant to sections 1104(a)(1) or 1104(a)(2) of the Bankruptcy Code;

(j)  the appointment of an examiner with special powers pursuant to section 1104(a) of the Bankruptcy Code;

(k)  the filing of a plan of reorganization or liquidation by or on behalf of the Debtor, to which DIP Lender has not consented in writing;

(l)  the confirmation of any plan of reorganization or liquidation in the Chapter 11 Case, to which DIP Lender has not consented to in writing, which does not provide for payment in full in cash of all Obligations on the effective date thereof in accordance with the terms and conditions contained herein;

(m)  entry of an order granting relief from the automatic stay to the holder or holders of security interests to permit foreclosures (or granting similar relief) on any property of the Debtor having a value in excess of $25,000 without the prior written consent of DIP Lender;

(n)  the filing of a motion by the Debtor seeking, or the entry of any order permitting, recovery from any portion of the Collateral (or from the DIP Lender directly) any costs or expenses of preserving or disposing of the Collateral under section 506(c) or section 552(b) of the Bankruptcy Code (or otherwise);

(o)  if, for whatever reason and at any time, subject to the approvals required by the Bankruptcy Code, the Board of the Debtor should fail to have the full and exclusive right and control over the business and affairs of the Debtor and all decisions affecting the business and affairs of the Debtor; or

| | |
|---|---|
| | (p)  if Borrower fails to comply with any covenant set forth in this Ratification Agreement. |
| | *See* Ratification Agreement § 6.4. |
| Relief from the Automatic Stay: | The Interim Order provides as follows: |
| | The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified and vacated without further notice, application or order of the Court to the extent necessary to permit DIP Lender to perform any act authorized or permitted under or by virtue of the Interim Order or the Loan Documents, including, without limitation, (a) to implement the postpetition financing arrangements authorized by the Interim Order and pursuant to the terms of the Loan Documents, (b) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the Collateral, and (c) to assess, charge, collect, advance, deduct and receive payments with respect to the Obligations, including, without limitation, all interests, fees, costs and expenses permitted under the Loan Documents, and apply such payments to the Obligations pursuant to the Loan Documents and the Interim Order.  In addition, and without limiting the foregoing, upon the occurrence of an Event of Default and after providing three (3) business days prior written notice (the "Enforcement Notice") to counsel for the Debtor, counsel for the Committee (if appointed), the U.S. Trustee, and all creditors who have served DIP Lender with written notice of a filed or recorded prepetition lien or security interest against any of the Debtor's assets in their favor, DIP Lender, shall be entitled, without further order of or application or motion to the Court and without restriction or restraint by any stay under section 362 or 105 of the Bankruptcy Code, to take any action and exercise all rights and remedies provided to it by the Interim Order, the Loan Documents or applicable law as DIP Lender may deem appropriate in its sole discretion to, among other things, proceed against and realize upon the Collateral or any other assets or properties of Debtor's Estate upon which DIP Lender has been or may hereafter be granted liens or security interests to obtain the full and indefeasible repayment of all Obligations. |
| | *See* Interim Order at ¶ 3.4. |
| Modification of the Debtor's authority or right to file a plan, seek an extension of time in which the Debtor has the exclusive right to file a plan, request use of cash collateral, or request authority to obtain credit: | The following are events of default under the Ratification Agreement: |
| | (a)  the filing of a plan of reorganization or liquidation by or on behalf of the Debtor, to which DIP Lender has not consented in writing; |
| | (b)  the confirmation of any plan of reorganization or liquidation in the Chapter 11 Case, to which DIP Lender has not consented to in writing, which does not provide for payment in full in cash of all Obligations on the effective date thereof in accordance with the terms and conditions |

| | contained herein; |
|---|---|
| | *See* Ratification Agreement § 6.4. |
| Releases and Indemnification: | Paragraph 4.5.1 of the Interim Order provides that the Debtor, on behalf of itself, its successors and assigns, and its estate (collectively, the "<u>Releasors</u>"), will release the Pre-Petition Lenders and the DIP Lender for from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of every kind, nature and description, including, without limitation, any so-called "lender liability" claims or defenses, that Releasors had, have or hereafter can or may have against Releasees as of the date hereof, in respect of events that occurred on or prior to the date hereof with respect to the Debtor, the Obligations, the Loan Documents and any advances or other financial accommodations made by DIP Lender and Pre-Petition Lenders to Debtor pursuant to the Loan Documents; related to related to the Debtor, the Obligations, the Loan Documents and any advances or other financial accommodations made by DIP Lender and Pre-Petition Lenders to Debtor pursuant to the Loan Documents. <br><br>The Ratification Agreement contains similar releases at section 7.1. <br><br>Paragraph 4.5.2 of the Interim Order provides that The Debtor's indemnification obligations to the DIP Lender (the "<u>Indemnification Obligations</u>") provided for in the Loan Documents are approved and such Indemnification Obligations shall be deemed to be Post-Petition Obligations. |
| <u>Local Rule 4001-2(a)(i)(A)</u>: Provisions that grant cross-collateralized protection to the prepetition secured creditors | None. |
| <u>Local Rule 4001-2(a)(i)(B)</u>: Provisions or findings of fact that bind the estate with respect to validity, perfection or amount of the secured creditor's prepetition lien or waiver of claims against the seemed creditor without first giving parties in interest at least seventy five (75) days from the entry of the order and the creditors' committee, if formed, or at least sixty (60) days from the date of its formation to investigate such matters. | The Debtor's stipulations, acknowledgments, and agreements in the Interim Order provide parties in interest at least seventy five (75) days from the entry of the order and the creditors' committee, if formed, or at least sixty (60) days from the date of its formation to investigate such matters, provided however, that, in the event the Debtor's chapter 11 Plan is confirmed prior to the expiration of this period, that the period may be shortened or terminated by the Court. <br><br>*See* Interim Order at ¶ 4.1. |
| <u>Local Rule 4001-2(a)(i)(C)</u>: | None. Upon the entry of a Final Financing Order, no costs or expenses |

| | |
|---|---|
| Provisions that seek to waive, without notice, whatever rights the estate may have under 11 U.S.C. § 506(c). | of administration which have or may be incurred in the Cases at any time during the Interim Financing Period (and subject to the entry of a Final Financing Order, any time after the expiration of the Interim Financing Period) shall be charged against Pre-Petition Lenders, their claims or the Collateral pursuant to section 506(c) of the Bankruptcy Code without the prior written consent of Pre-Petition Lenders, and no such consent shall be implied from any other action, inaction or acquiescence by Pre-Petition Lenders.<br><br>*See* Interim Order at ¶ 4.3. |
| Local Rule 4001-2(a)(i)(D): Provisions that immediately grant to the prepetition secured creditor liens on certain claims and causes of action. | Causes of action arising under sections 544, 545, 547, 548, 549, 550, 553(b) and 724(a) (the "<u>Bankruptcy Actions</u>") are specifically excluded from the Collateral solely for purposes of the Interim Order.<br><br>*See* Interim Order at ¶2.1.1.<br><br>The inclusion of the Bankruptcy Actions as Collateral under the Final Order is reasonable given the Debtor's urgent need for postpetition financing.  But for the inclusion of the Bankruptcy Actions, the DIP Lender would be unwilling to provide the DIP Facility. |
| Local Rule 4001-2(a)(i)(E): Provisions that deem prepetition secured debt to be postpetition secured debt or that use postpetition loans for a prepetition secured creditor to pay part or all of that secured creditor's prepetition debtor, other than as provided in 11 U.S.C. § 552(b). | None |
| Local Rule 4001-2(a)(i)(F): Provisions that provide disparate treatment for the professionals retained by a creditors' committee from those professionals retained by the debtor with respect to a professional fee carve-out. | The Debtor does not expect there to be a 341 meeting or committee appointed in this case in light of the results of the voting on the pre-packaged plan of reorganization. |
| Local Rule 4001-2(a)(i)(G): Provisions that prime any secured lien without the consent of the lienor. | The Prepetition Secured Lenders have consented to the priming of their liens.  The Debtor, the DIP Lender and the Factor have a deal in principal which is continuing to be negotiated.<br><br>*See* Interim Order at ¶ 2.1.2. |

| Local Rule 4001-2(a)(i)(H): Provisions that seek to affect the Court's power to consider the equities of the case under 11 U.S.C. §§ 363 and 364. | The Interim Order provides that, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to DIP Lender with respect to proceeds, products, offspring or profits of any of the Collateral. *See* Interim Order at ¶ 5.9. |
| --- | --- |

## APPLICABLE AUTHORITY

### A.    The DIP Facility Should be Approved

16.    Section 364(c) of the Bankruptcy Code provides that if a debtor in possession is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, then the Court, after notice and a hearing, may authorize the debtor in possession to obtain credit or incur debt:

(i)    with priority over any and all administrative expenses of the kind specified in section 503(b) or 507(b) of [the Bankruptcy Code]; or

(ii)   secured by a lien on property of the estate that is not otherwise subject to a lien; or

(iii)  secured by a junior lien on property of the estate that is subject to a lien. 11 U.S.C. § 364(c).

17.    Pursuant to section 364(d) of the Bankruptcy Code, a debtor in possession may also grant liens and security interests in all or a part of its assets that are prior and superior to all other liens or security interests therein.

18.    Bankruptcy Rule 4001(c) governs the procedures for obtaining authorization to obtain postpetition financing and provides in relevant part:

***

(2)   Hearing.  The Court may commence a final hearing on a motion for authority to obtain credit no earlier than 14 days after service of the motion.  If the motion so requests, the court may conduct a hearing before such 14 day period expires, but the court may authorize the obtaining of credit only to the extent necessary

to avoid immediate and irreparable harm to the estate pending a
final hearing.

Bankruptcy Rule 4001(c).  Accordingly, the Court is authorized to grant the relief requested

herein.

19.      Courts have articulated a three-part test to determine whether a debtor may obtain

financing under section 364(c) of the Code: (i) the debtor is unable to obtain unsecured credit

under section 364(b) (i.e., by granting a lender administrative expense priority); (ii) the credit

transaction is necessary to preserve the assets of the estate; and (iii) the terms of the transaction

are fair, reasonable and adequate, given the circumstances of the debtor and the proposed lender.

*In re Aqua Assocs.,* 123 B.R. 192, 195-96 (Bankr. E.D. Pa. 1991) (applying the above test and

holding that "[o]btaining credit should be permitted not only because it is not available

elsewhere, which could suggest the unsoundness of the basis for the use of the funds generated

by credit, but also because the credit required is of significant benefit to the debtor's estate and

the terms of the proposed loan are within the bounds of reason, irrespective of the inability of the

debtor to obtain comparable credit elsewhere"); *In re Ames Dep't Stores, Inc.,* 115 B.R. 34, 37-

39 (Bankr. S.D.N.Y. 1990) (holding that financing will not be approved where "it is apparent

that the purpose of the financing is to benefit a creditor rather than the estate" and that the debtor

must show that it has made a reasonable effort to seek other sources of financing under sections

364(a) and (b) of the Bankruptcy Code).  Here, TMB has been unable to obtain unsecured credit

(or any additional secured credit), and entering into the DIP Facility is necessary to preserve

TMB's assets.  Accordingly, TMB believes that the terms of the DIP Facility are fair and

reasonable under the circumstances.

20.      Pursuant to section 364(d)(1) of the Code, a debtor can also obtain financing on a

superpriority basis over other secured creditors.  In order to obtain superpriority financing, the

debtor must show that the interest of the holder of the lien on the property on which the senior priority lien is proposed to be granted is adequately protected. *In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3d Cir. 1994). The Bankruptcy Code does not expressly define adequate protection, but section 361 provides that adequate protection can be provided by periodic cash payments, additional replacement liens, or other relief resulting in the "indubitable equivalent" of the secured creditor's interest in such property. *Swedeland*, 16 F.3d at 564. "Whether protection is adequate depends directly on how effectively it compensates the secured creditor for loss of value caused by the superpriority given to the post-petition loan." *Id.*

21. TMB believes that the best means to maximize the value of its assets is to promptly seek confirmation of the Plan. TMB, however, lacks sufficient funds to operate its business and meet its postpetition obligations during the Plan confirmation process.

22. TMB has virtually no unencumbered funds or credit available to fund its business operations. Without funding under the debtor-in-possession financing facility from the DIP Lender and the use of cash collateral, as proposed herein, TMB's operations will have to immediately cease, the value of its assets will be severely diminished, and jobs will be lost. Further, to date, TMB has been unsuccessful in its attempts to secure funding outside of Chapter11, and TMB could not secure funding inside of Chapter 11 on an unsecured or subordinated basis or from any party other than the DIP Lender. In short, without the use of cash collateral and funding under the proposed debtor-in-possession financing facility, TMB's prospects for maximizing value of its assets through confirmation of the Plan will be substantially undermined and the value of TMB's assets will be placed in serious jeopardy. Therefore, it is imperative that TMB be authorized to use cash collateral and obtain debtor-in-possession financing in order to preserve its assets pending confirmation of the Plan.

23.     To protect and preserve TMB's assets during the confirmation process, the DIP Lender is prepared to proceed with its commitment under the DIP Facility.  The DIP Facility contemplates that TMB will first use available cash collateral to satisfy obligations, and then use proceeds from the DIP Facility.

24.     TMB believes that advances under the DIP Facility coupled with use of cash collateral will be sufficient to enable TMB to continue to operate on a going concern basis and allow TMB to seek confirmation of the Plan, implement the Plan (if confirmed by this Court) and close this Case.

25.     The DIP Facility was negotiated at in good faith, and its terms and conditions are reasonable under the circumstances.  Accordingly, the DIP Lender should be accorded the benefits of section 364(e) of the Bankruptcy Code.

26.     Based on the above, TMB decided, in the exercise of its business judgment, that the DIP Facility (together with the use of cash collateral) was the most favorable under the circumstances and addressed TMB's working capital needs.  The DIP Facility and access to cash collateral will afford TMB the time and funding to pursue confirmation of the Plan while maintaining the going concern value of its business.

27.     TMB requires immediate access to funds in order to pay essential expense items pending the Final Hearing.

**B.      The Automatic Stay Should Be Modified On a Limited Basis**

30.     The relief requested in this Motion contemplates a modification of the automatic stay pursuant to section 362 of the Bankruptcy Code to: (a) permit TMB to grant the security interests, liens, and superpriority claims described above with respect to the DIP Facility and to perform such acts as may be reasonably requested to assure the perfection and priority of such security interests and liens; (b) permit the DIP Lender to exercise (solely with respect to the DIP

Facility), upon the occurrence and continuance of an Event of Default, the rights and remedies provided for in the DIP Facility, the Interim Order, and the Final Order, as applicable; and (c) implement the terms of the DIP Orders.

31.     In TMB's business judgment, the stay modification requested in this Motion (and provided for in the Interim Order) is fair and reasonable under the circumstances.

## C.     The Debtor Should be Permitted to Make Interim Borrowings Under the DIP Facility

32.     Bankruptcy Rules 4001(b) and (c) provide that a final hearing on a motion to use cash collateral or obtain credit may not be commenced earlier than 14 days after service of such motion.  Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on such a motion and authorize the use of cash collateral and the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a hearing to consider the relief requested on a final basis.

33.     Pursuant to Bankruptcy Rule 4001(b) and (c), TMB requests that the Court conduct an expedited preliminary hearing on this Motion and (i) authorize TMB to use Cash Collateral and, consistent with the Budget and the DIP Facility, use the proceeds of the DIP Facility on an interim basis, pending the Final Hearing and entry of the Final Order, to avoid immediate and irreparable harm to TMB's estate and (ii) schedule the Final Hearing.

34.     TMB requires the ability to obtain immediate credit under the DIP Facility on an interim basis pending the Final Hearing in an amount of up to $1.6 million.

35.     This funding is needed to satisfy TMB's obligations in connection with the operation of its business, including, but not limited to, the payment of employee wages, salaries and benefits, as well as TMB's postpetition office rent.  The immediate and irreparable harm that

could result in the absence of approval of interim financing is detrimental to the interests of all concerned.

## SATISFACTION OF BANKRUPTCY RULE 6003

36.    Pursuant to Bankruptcy Rule 6003, the Bankruptcy Court may grant a motion to "use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" within 21 days after the Petition Date to the extent the relief is necessary to avoid immediate and irreparable harm.  Fed. R. Bankr. P. 6003.  As set forth above and in the First Day Declaration, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to TMB and its estate and, therefore, entry of the Interim Order is appropriate under Bankruptcy Rule 6003.

## WAIVER OF BANKRUPTCY RULES 6004(a) AND (h)

37.    For the reasons set forth herein, to implement the foregoing immediately, TMB requests that the Bankruptcy Court waive the notice requirements under Bankruptcy Rule 6004(a), if applicable, and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## NOTICE

38.    As this Motion is seeking first-day relief, notice of this Motion and any order entered hereon will be served on all parties required by Local Rule 9013-l(m).  TMB submits that, in light of the nature of the relief requested, no other or further notice need be given.

## CONCLUSION

WHEREFORE, TMB respectfully requests that this Court enter the Interim Order, attached hereto, schedule the Final Hearing and thereafter enter the Final Order, and (ii) grant such other and further relief as is just and proper.

Dated:  December 4, 2015
        Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Daniel B. Butz*
Derek C. Abbott (No. 3376)
Daniel B. Butz (No. 4227)
Tamara K. Minott (No. 5643)
1201 N. Market St., 16th Flr.
PO Box 1347
Wilmington, DE  19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
dabbott@mnat.com
dbutz@mnat.com
tminott@mnat.com

*Proposed Counsel for Debtor
and Debtor in Possession*