## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TAMARA MELLON BRAND, LLC, | ) | Case No. 15-12420 (KG) |
| | ) | |
| Debtor.[1] | ) | |
| | ) | **Re: D.I. 13** |

### ORDER (A) AUTHORIZING DEBTOR TO OBTAIN INTERIM POSTPETITION FINANCING AND GRANT SECURITY INTERESTS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO 11 U.S.C. §§ 105 AND 364; (B) MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362; (C) AUTHORIZING DEBTORS TO ENTER INTO RATIFICATION AGREEMENT; (D) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001; AND (E) GRANTING OTHER RELIEF

Upon the motion (the "**Motion**") of Tamara Mellon Brand, LLC (the "**Debtor**" or "**Borrower**"), in the above-captioned Chapter 11 case (the "**Case**"), pursuant to Sections 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), and 364(d) of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**") and Rules 2002, 4001(c), and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeking, among other things:

(1)     authorization for Borrower to obtain postpetition loans, advances and other financial accommodations on an interim basis for a period through and including the date of the Final Hearing (as defined below) from Tamara Mellon ("**Lender**") in accordance with the Existing Credit Agreement, as amended and ratified by the Ratification Agreement (each as defined below), and in accordance with this Interim Order (as defined below), secured by security interests in and liens upon all of the

---

[1]     The last four digits of the Debtor's federal tax identification number are 7426. The Debtor's address is 660 Madison Avenue, New York, NY, 10065.

Collateral (as defined below) pursuant to Sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code;

(2)     authorization for Debtor to enter into the Ratification and Amendment Agreement, by and among Debtor, Lender, and the Pre-Petition Lenders (as defined in the Ratification Agreement) (the "**Ratification Agreement**," a copy of which is annexed hereto as <u>Exhibit A</u> and is incorporated herein),[2] which ratifies, extends, adopts and amends the Existing Credit Agreement and the other Pre-Petition Loan Documents (as defined below);

(3)     authorization for Debtor to enter into the First Amendment to Discount Factoring Agreement, by and among Hilldun Corporation (the "**Factor**") and Debtor  (the "**Amendment to Factoring Agreement**"),  a copy of which is annexed hereto as Exhibit B and is incorporated herein), which ratifies, extends, adopts and amends the Existing Factoring Agreement (as defined below);

(4)     modification of the automatic stay to the extent hereinafter set forth;

(5)     the grant to Lender of superpriority administrative claim status pursuant to Section 364(c)(1) of the Bankruptcy Code in respect of all Post-Petition Obligations (as defined in the Ratification Agreement);

(6)     the grant to Lender of priming liens pursuant to Section 364(d) of the Bankruptcy Code in respect of the Post-Petition Obligations, subject to the Permitted Liens and Claims and the Factor Replacement Lien (each as defined below);

---

[2]     Capitalized undefined terms used herein shall have the meanings set forth in the Ratification Agreement.

(7)    the grant of adequate protection to the Pre-Petition Lenders on account of their liens on the Pre-Petition Collateral in accordance with the terms of the Interim Order;

(8)    the grant of adequate protection to the Factor, on account of its blanket first lien on all of the Debtor's assets, in accordance with the terms of this Interim Order; and

(9)    the setting of a final hearing on the Motion.

The initial hearing on the Motion having been held by this Court on December 8, 2015 (the "**Interim Hearing**").

It appearing that due and appropriate notice of the Motion, the relief requested therein, and the Interim Hearing (the "**Notice**") having been served by the Debtor in accordance with Rule 4001(c) on (i) counsel to Lender, (ii) counsel to the Pre-Petition Lenders, (iii) counsel to the Factor, (iv) the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), (v) the entities listed on the Consolidated List of Creditors Holding the 20 Largest Unsecured Claims filed by the Debtors on the Petition Date (the "**20 Largest Unsecured Creditors**"), (vi) all appropriate state taxing authorities, (vi) all landlords, owners, and/or operators of premises at which any of the Debtor's inventory and/or equipment is located, and (viii) certain other parties identified in the certificate of service filed with the Court, including, without limitation, all creditors who have filed or recorded prepetition liens or security interests against any of the Debtor's assets (collectively, the "**Noticed Parties**").

Upon the record of the Interim Hearing, including the Motion, and the filings and pleadings in the Case, and good and sufficient cause appearing therefor;

BASED ON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.    Petition.  On December 2, 2015 (the "**Petition Date**"), the Debtor filed a voluntary petition (the "**Petition**") under Chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its businesses and manage its properties as debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

B.    Jurisdiction and Venue.    The Court has jurisdiction of this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  The Motion is a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (D) and (M).  Venue of the Case and the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    Notice.  Under the circumstances, the Notice given by the Debtor of the Motion, the Interim Hearing and the relief granted under the Interim Order constitutes due and sufficient notice thereof and complies with Bankruptcy Rule 4001(c).

D.    Debtor's Acknowledgments and Agreements.  Subject to the rights of a Committee (as defined below) or other parties in interest as set forth in Sections 4.1 and 4.2 of the Interim Order, the Debtor admits, stipulates, acknowledges and agrees that:

(i)    *Pre-Petition Loan Documents.*

i    *Pre-Petition Loan Documents.* Prior to the commencement of the Case, the Pre-Petition Lenders made loans, advances and provided other financial accommodations to Borrower pursuant to the terms and conditions set forth in: (1) the Fifth Amended and Restated Loan Agreement, dated as of October 29, 2015, by and among Borrower and the Pre-Petition Lenders (as the same has heretofore been amended, supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date, the "**Existing Credit Agreement**," a copy of which, excluding exhibits and schedules was attached to the Motion as Exhibit 2, and as ratified and amended by the Ratification Agreement, the "**DIP Credit Agreement**") and (2) all other agreements, documents and instruments executed and/or delivered with, to, or in favor of the Pre-Petition Lenders or the Lender, including, without limitation, all security agreements,

notes, guarantees, mortgages, Uniform Commercial Code financing statements and all other related agreements, documents and instruments executed and/or delivered in connection therewith or related thereto (all of the foregoing, together with the Existing Credit Agreement, as all of the same have heretofore been amended, supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date, collectively, the "**Pre-Petition Loan Documents**"). Copies of the operative Pre-Petition Loan Documents are on file with counsel to Lender and are available upon reasonable request.

ii    *Pre-Petition Obligations Amount.* As of the Petition Date, the aggregate principal amount of all Obligations (as such term is defined in the Existing Credit Agreement) and other amounts and obligations owing by Debtor to the Pre-Petition Lenders under and in connection with the Pre-Petition Loan Documents was not less than $4,111,350, plus interest accrued and accruing thereon, together with all costs, fees, expenses (including attorneys' fees and legal expenses) and other charges accrued, accruing or chargeable with respect thereto (collectively, and as such term is defined in the Ratification Agreement, the "**Pre-Petition Obligations**"). The Pre-Petition Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of Debtor, and are not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, and Debtor does not possess and shall not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition Obligations.

iii    *Pre-Petition Collateral.* As of the Petition Date, the Pre-Petition Obligations were fully secured pursuant to the Pre-Petition Loan Documents by valid, perfected, enforceable and non-avoidable first priority security interests and liens granted by Debtor to the Pre-Petition Lenders upon all of the Pre-Petition Collateral (except to the extent of any Permitted Liens and Claims). The Debtor does not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity,

enforceability and non-avoidability of any of Pre-Petition Lender's liens, claims or security interests in the Pre-Petition Collateral.

iv   *Proof of Claim.*  The acknowledgment by Debtor of the Pre-Petition Obligations and the liens, rights, priorities and protections granted to or in favor of the Pre-Petition Lenders as set forth herein and in the Pre-Petition Loan Documents shall be deemed a timely filed proof of claim on behalf of the Pre-Petition Lenders in the Case.

(ii)   *Discount Factoring Agreement.*

i   *Discount Factoring Agreement.*   Prior to the commencement of the Case, the Factor made loans, advances and provided other financial accommodations on to Debtor pursuant to the terms and conditions set forth in (1) that certain Discount Factoring Agreement dated June 8, 2015 (the "Existing Factoring Agreement") and (2) all other agreements, documents and instruments executed and/or delivered to or in favor of the Factor (collectively, the "Factoring Documents"). Copies of the Factoring Documents are on file with counsel to Lender and are available upon reasonable request.

ii   *Pre-Petition Factor Obligations Amount.*   As of the Petition Date, the aggregate principal and interest owing by Debtor to the Factor in connection with the Factoring Documents was not less than $796,860.47, plus interest accrued and accruing thereon, together with all costs, fees, expenses (including attorneys' fees and legal expenses) and other charges accrued, accruing or chargeable with respect thereto (collectively, the "**Pre-Petition Factor Obligations**"). The Pre-Petition Factor Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of Debtor, and are not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, and Debtor does not possess and shall not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition Factor Obligations.

iii  *Pre-Petition Factor Collateral.* As of the Petition Date, the Pre-Petition Factor Obligations were fully secured pursuant to the Factoring Documents by a valid, perfected, enforceable and non-avoidable first priority security interests and blanket lien granted by Debtor to the Factor upon all of the Debtor's assets (the "**Factor Collateral**"). The Debtor does not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Factor's liens, claims or security interests in the Factor Collateral.

iv  *Proof of Claim.* The acknowledgment by Debtor of the Pre-Petition Factor Obligations and the liens, rights, priorities and protections granted to or in favor of the Factor as set forth herein and in the Factoring Documents shall be deemed a timely filed proof of claim on behalf of the Factor in the Case.

E.    <u>Findings Regarding the Postpetition Financing.</u>

(i)    *Postpetition Financing.* The Debtor has requested from Lender and Lender is willing to extend, certain loans, advances and other financial accommodations on the terms and conditions set forth, in this Interim Order and the Loan Documents (as defined below).

(ii)    *Need for Postpetition Financing.* Absent the relief requested in the Motion, Debtor will not have sufficient available sources of working capital, including Cash Collateral, to operate its business as contemplated by the Budget (as defined below). The Debtor's ability to maintain business relationships with its vendors, suppliers and customers, to pay its employees, and to otherwise fund its operations is essential as the Debtor seeks to maximize the value of the assets of the Estate (as defined below) for the benefit of all creditors of the Debtor. The ability of the Debtor to obtain sufficient working capital, liquidity and other final accommodations through the proposed postpetition financing arrangements with Lender and Factor as set forth in this Interim Order, the Loan Documents and the Factoring Documents, as modified by the Amendment to Factoring Agreement, is vital to the preservation and

maintenance of the value of the Debtor's assets. Accordingly, the Debtor has an immediate need to obtain the postpetition financing and other financial accommodations in order to, among other things, permit the orderly continuation of the operation of its business, minimize the disruption to its business operations as a result of the commencement of this case, and preserve and maximize the value of the assets of the Debtor's bankruptcy estate (as defined under Section 541 of the Bankruptcy Code, the "**Estate**") in order to maximize the recovery to all creditors of the Estate.

(iii)    *No Credit Available on More Favorable Terms.*  The Debtor is unable to procure financing in the form of unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code, as an administrative expense under Section 364(a) or (b) of the Bankruptcy Code, or in exchange for the grant of an administrative expense priority pursuant to Section 364(c)(1) of the Bankruptcy Code, without the grant of liens on assets.  The Debtor has been unable to procure the necessary financing on terms more favorable than the financing offered by Lender pursuant to the Loan Documents.

(iv)    *No Credit Available Without Liens.*  The Debtor is unable to procure financing without granting a superpriority lien on assets that are subject to a lien.  The Debtor has been unable to procure the necessary financing on terms more favorable than the financing offered by Lender pursuant to the Loan Documents.

(v)    *Budget.*  The Debtor has prepared and delivered to Lender an initial Budget (as defined in the Ratification Agreement), which has been thoroughly reviewed by the Debtor and its management.  The Debtor represents that the Budget is achievable in accordance with the terms of the Loan Documents.  Lender is relying upon the Debtor's compliance with the Budget in accordance with Section 5.3 of the Ratification Agreement, the other Loan Documents and this Interim Order in determining to enter into the postpetition financing and other arrangements provided for herein.

(vi)    *Business Judgment and Good Faith Pursuant to Section 364(e)*.  The terms of the Loan Documents and this Interim Order are fair, just and reasonable under the circumstances, are ordinary and appropriate for secured financing to a debtor-in-possession and other financial accommodations, reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.  The terms and conditions of the Loan Documents, the Factoring Documents, as modified by the Amendment to Factoring Agreement, and this Interim Order have been negotiated in good faith and at arms' length by and among the Debtor, on one hand, and Pre-Petition Lenders, Lender, and Factor on the other hand, with all parties being represented by counsel.  Any credit and other financial accommodations extended under the terms of this Interim Order shall be deemed to have been extended in good faith by Lender or Factor, as the case may be, as that term is used in Section 364(e) of the Bankruptcy Code.

(vii)    *Good Cause*.    The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtor, its creditors and its Estate, as its implementation will, among other things, provide the Debtor with the necessary liquidity to (a) minimize disruption to the Debtor's businesses and ongoing operations, (b) preserve and maximize the value of the Debtor's Estate for the benefit of all the Debtor's creditors, and (c) avoid immediate and irreparable harm to the Debtor, its creditors, its businesses, its employees, and its assets.

(viii)    *Immediate Entry*.    Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(c)(2).  No party appearing in the Case has filed or made an objection to the relief sought in the Motion or the entry of this Interim Order, or any objections that were made (to the extent such objections have not been withdrawn) are hereby overruled.

Based upon the foregoing, and the record of the hearing on approval of this Interim Order, and after due consideration and good cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

Section 1.    <u>Authorization and Conditions to Financing.</u>

1.1    <u>Motion Granted</u>.    The Motion is granted in accordance with Bankruptcy Rule 4001(c)(2) to the extent provided in this Interim Order (hereinafter referred to as the "**Interim Order**")."

1.2    <u>Authorization to Borrow and Use Loan Proceeds.</u>

1.2.1    <u>Authorization to Borrow and Use Loan Proceeds.</u> Borrower is hereby authorized and empowered to borrow and obtain advances or credit accommodations and to incur indebtedness and obligations owing to Lender pursuant to the terms and conditions of this Interim Order, the Ratification Agreement, the Collateral Agreement by and among the Debtor and Lender, the Existing Credit Agreement, the DIP Credit Agreement, and any other Pre-Petition Loan Documents (such agreements, collectively, the "**Loan Documents**," as such term is more fully defined in the Ratification Agreement), during the period commencing on the date of this Interim Order through and including the date of the Final Hearing as set forth in Section 6 of this Interim Order (the "**Interim Financing Period**"), in such amounts as may be made available to Borrower by Lender in accordance with the Budget.  Subject to the terms and conditions contained in this Interim Order and the Loan Documents, Borrower shall use the proceeds of the advances or other credit accommodations provided to Borrower pursuant to this Interim Order and the Loan Documents solely for the payment of the expense items specified in the Budget and the costs and expenses of Lender as provided under the Loan Documents and this Interim Order.

1.3    <u>Loan Documents</u>

1.3.1    <u>Authorization</u>.    The Debtor is hereby authorized and empowered to enter into, execute, deliver, perform, and comply with all of the terms, conditions and covenants of the DIP Credit Agreement, the other Loan Documents and all other agreements, documents and instruments executed or delivered in connection

with or related to the DIP Credit Agreement, the other Loan Documents or this Interim Order, including, without limitation, the Ratification Agreement, pursuant to which, <u>inter alia</u>, the Debtor ratifies, reaffirms, extends, assumes, adopts, amends, and restates the Existing Credit Agreement and the other Pre-Petition Loan Documents.

      1.3.2   <u>Approval</u>.   The Loan Documents (including, without limitation, the Ratification Agreement) and each term set forth therein are approved to the extent necessary to implement the terms and provisions of this Interim Order. All of such terms, conditions and covenants shall be sufficient and conclusive evidence of the borrowing arrangements by and among Debtor and Lender, and of Debtor's assumption and adoption of all of the terms, conditions, and covenants of the Ratification Agreement and the other Loan Documents for all purposes, including, without limitation, to the extent applicable, the payment of all Obligations arising thereunder, including, without limitation, all principal, interest, commissions, fees and expenses, including, without limitation, all of Lender's reasonable consultant fees, professional fees, attorney fees and expenses, as more fully set forth in the Loan Documents.

      1.3.3   <u>Amendment.</u>  Subject to the terms and conditions of the DIP Credit Agreement and the other Loan Documents, Lender may amend, modify, supplement or waive any provision of the Loan Documents (an "**Amendment**") without further approval or order of the Court so long as (i) such Amendment is not material (for purposes hereof, a "material" Amendment shall mean, any Amendment that operates to increase the interest rate other than as currently provided in the Loan Documents, increase the Supplemental Loan Limit (as defined in the Ratification Agreement), add specific new events of default or enlarge the nature and extent of default remedies available to Lender following an event of default, or otherwise modify any terms and conditions in any Loan Document in a manner materially less favorable to Debtor) and is undertaken in good faith by Lender and Debtor; (ii) the Debtor provides prior written notice of the Amendment (the "**Amendment Notice**") to (x) the U.S. Trustee and (y)

counsel to any official committee appointed in the Case under Section 1102 of the Bankruptcy Code (collectively, the "**Committee(s)**"), or in the event no such Committee is appointed at the time of such Amendment, the 20 Largest Unsecured Creditors; (iii) the Debtor files the Amendment Notice with the Court; and (iv) no objection to the Amendment is filed with the Court within three (3) business days of the date of service of the Amendment Notice in accordance with this Section 1.3.3.  Any material Amendment to the Loan Documents must be approved by the Court to be effective.

      1.4     Payments and Application of Payments.  The Debtor shall make all payments and transfers of Estate property to Lender as provided, permitted and/or required under the DIP Credit Agreement and the other Loan Documents, which payments and transfers, subject to Section 4.1 herein, shall not be avoidable or recoverable from Lender under Section 547, 548, 549, 550, 553 or any other Section of the Bankruptcy Code, or any other claim, charge, assessment, or other liability, whether by application of the Bankruptcy Code, other law or otherwise.  All proceeds of the Collateral received by Lender, and any other amounts or payments received by Lender in respect of the Obligations, shall be applied or deemed to be applied by Lender in accordance with the DIP Credit Agreement, the other Loan Documents and this Interim Order.  Without limiting the generality of the foregoing, upon ten days' notice to the U.S. Trustee and counsel for the Committee, the Debtor is authorized, without further order of this Court, to pay or reimburse Lender for all present and future costs and expenses, including, without limitation, all reasonable professional fees, consultant fees and legal fees and expenses paid or incurred by Lender as provided in this Interim Order and the Loan Documents, all of which shall be and are included as part of the principal amount of the Obligations and secured by the Collateral.

      1.5     Continuation of Prepetition Procedures.  To the extent the Court authorizes the Debtor to maintain its cash management system, which is the subject of a separate motion, all prepetition practices and procedures for the payment and collection

of proceeds of the Collateral, the turnover of cash, the delivery of property to Lender and the funding pursuant to the Loan Documents, including any blocked, lockbox or depository account arrangements of Debtor, is hereby approved and may continue without interruption after the commencement of the Case.

      1.6     Factoring Documents.

      1.6.1    Authorization.  The Debtor is hereby authorized and empowered to enter into, execute, deliver, perform, and comply with all of the terms, conditions and covenants of the Amendment to Factoring Agreement, pursuant to which, inter alia, the Debtor ratifies, reaffirms, extends, assumes, adopts, amends, and restates the Existing Factoring Agreement and the other Factoring Documents.  The Factor, however, is neither authorized nor required by this Interim Order or the Amendment to Factoring Agreement to lend to the Debtor, and instead, the Amendment to the Factoring Agreement specifically limits the postpetition factoring relationship to collection factoring.

      1.6.2    Approval.  The Factoring Documents and the Amendment to Factoring Agreement and each term set forth therein are approved to the extent necessary to implement the terms and provisions of this Interim Order.  All of such terms, conditions and covenants shall be sufficient and conclusive evidence of  the factoring arrangement by and among Debtor and Factor, and of Debtor's assumption and adoption of all of the terms, conditions, and covenants of the Amendment to Factoring Agreement and the Factoring Documents for all purposes, including, without limitation, to the extent applicable, the payment of all Pre-Petition Factor Obligations  and other obligations arising thereunder, including, without limitation, all principal, interest, commissions, fees and expenses, including, without limitation, all of Factor's reasonable consultant fees, professional fees, attorney fees and expenses, as more fully set forth in the Factoring Documents and the Amendment to the Factoring Agreement.

1.6.3    Amendment.    Subject to the terms and conditions of the Factoring Documents and the Amendment to Factoring Agreement, Factor may amend, modify, supplement or waive any provision of such documents (a "**Further Factoring Amendment**") without further approval or order of the Court so long as (i) such Further Factoring Amendment is not material (for purposes hereof, a "material" amendment shall mean, any amendment that operates to add specific new events of default or enlarge the nature and extent of default remedies available to Factor following an event of default, or otherwise modify any terms and conditions in any Factoring Document or the Amendment to Factoring Agreement  in a manner materially less favorable to Debtor) and is undertaken in good faith by Factor and Debtor; (ii) the Debtor provides prior written notice of the Further Factoring Amendment (the "**FF Amendment Notice**") to (x) the U.S. Trustee and (y) counsel to any official committee appointed in the Case under Section 1102 of the Bankruptcy Code (collectively, the "**Committee(s)**"), or in the event no such Committee is appointed at the time of such Further Factoring Amendment, the 20 Largest Unsecured Creditors; (iii) the Debtor files the FF Amendment Notice with the Court; and (iv) no objection to the Further Factoring Amendment is filed with the Court within three (3) business days of the date of service of the FF Amendment Notice in accordance with this Section 1.6.3.    Any material Amendment to the Factoring Documents or Amendment to Factoring Agreement must be approved by the Court to be effective.

1.7    Payments and Application of Payments.  The Debtor shall make all payments and transfers of Estate property to Factor as provided, permitted and/or required under the Factoring Documents, Amendment to Factoring Agreement and this Interim Order, which payments and transfers, subject to Section 4.1 herein, shall not be avoidable or recoverable from Factor under Section 547, 548, 549, 550, 553 or any other Section of the Bankruptcy Code, or any other claim, charge, assessment, or other liability, whether by application of the Bankruptcy Code, other law or otherwise.  All proceeds of

the Factor Collateral and Factor Replacement Collateral received by the Factor, and any other amounts or payments received by the Factor in respect of the Obligations (as defined in the Existing Factoring Agreement), including, but not limited to, the Pre-Petition Factor Obligations and any further obligations that arise under the Amendment to Factoring Agreement, shall be applied or deemed to be applied by the Factor in accordance with the Factoring Documents and Amendment to Factoring Agreement and this Interim Order. Without limiting the generality of the foregoing, upon ten days' notice to the U.S. Trustee and counsel for the Committee, the Debtor is authorized, without further order of this Court, to pay or reimburse the Factor for all present and future costs and expenses, including, without limitation, all reasonable professional fees, consultant fees and legal fees and expenses paid or incurred by the Factor as provided in this Interim Order and the Factoring Documents and Amendment to Factoring Agreement, all of which shall be and are included as part of the principal amount of the Pre-Petition Factor Obligations or the ongoing obligations owing to Factor secured by the Factor Collateral.

Section 2.    Postpetition Lien; Superpriority Administrative Claim Status.

        2.1    Postpetition Lien.

                2.1.1    Postpetition Lien Granting. To secure the prompt payment and performance of any and all Post-Petition Obligations of Debtor to Lender of whatever kind, nature or description, absolute or contingent, now existing or hereafter arising, Lender, shall have and is hereby granted, effective as of the Petition Date, valid and perfected first priority security interests and liens, superior to all other liens, claims or security interests that any creditor of the Debtor's Estate may have (but subject to certain liens and claims entitled to priority, including the Permitted Liens and Claims and the Factor Replacement Lien (each as defined below) as and to the extent expressly provided in Section 2.1.2 below), in and upon all of the Post-Petition Collateral (as defined in the Ratification Agreement and including all tangible and intangible assets of

the Debtor, including without limitation, subject to the entry of a Final Financing Order (as defined in the Ratification Agreement), any and all claims of the Debtor under Chapter 5 of the Bankruptcy Code). The Pre-Petition Collateral and the Post-Petition Collateral are collectively referred to herein as the "**Collateral**."

        2.1.2   Lien Priority.  The postpetition liens and security interests of Lender granted under the Loan Documents and this Interim Order in the Collateral shall be first and senior in priority to all other interests and liens of every kind, nature and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or interests granted in favor of third parties in conjunction with Section 363, 364 or any other Section of the Bankruptcy Code or other applicable law; provided, however, that Lender's and Factor's liens on and security interests in the Collateral shall be subject only to (i) the Carve Out Expenses (as defined below) solely to the extent provided for in Sections 2.3 and 2.4 of this Interim Order, and (ii) other valid, enforceable, non-avoidable liens and security interests perfected prior to the Petition Date that are senior to the prepetition liens of the Pre-Petition Lenders, including the liens and security interests of the Factor (which liens and security interests the Debtor and the Lender recognize as valid, granted and properly perfected prior to the Petition Date) (the foregoing clauses (i), and (ii) are collectively referred to herein as the "**Permitted Liens and Claims**"); provided that, notwithstanding the time, manner or order of the creation and/or perfection of any liens upon or security interests of Factor and Lender in (A) that certain Employment Agreement dated as of March 8, 2013 by and between the Debtor and Tamara Mellon, an individual (the "**TM Employment Agreement**"), and (B) that certain License and Royalty Agreement dated as of March 8, 2013 by and between the Debtor and Tamara Mellon, LLC (the "**License and Royalty Agreement**"), the liens and security interests of Factor in or to the TM Employment Agreement and the License and Royalty Agreement (the "**Factor Subordinate Collateral**") shall be subordinate in all respects to the liens and security interests of the

16

Lender in the Factor Subordinate Collateral. Notwithstanding anything to the contrary, however, to the extent the Factor is entitled to foreclose on the Factor Collateral, it shall have the absolute right to dispose of any of inventory bearing trademarks or other intellectual property that are subject to the License and Royalty Agreement.

2.1.3    Postpetition Lien Perfection.  This Interim Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the postpetition liens and security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state or local requirements or law requiring notice, filing, registration, recording or possession of the Collateral, or other act to validate or perfect such security interest or lien, including without limitation, with respect to any blocked, lockbox or depository account consisting of Collateral (a "**Perfection Act**").  Notwithstanding the foregoing, if Lender shall, in its sole discretion, elect for any reason to file, record or otherwise effectuate any Perfection Act, Lender is authorized to perform such act, and the Debtor is authorized to perform such act to the extent necessary or required by Lender, which act or acts shall be deemed to have been accomplished as of the date and time of entry of this Interim Order notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file or record any document in regard to such act in accordance with applicable law.  Lender may choose to file, record or present a certified copy of this Interim Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file or record such certified copy of this Interim Order in accordance with applicable law.  Should Lender so choose and attempt to file, record or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, attachment, or perfection of the postpetition liens and security interests granted herein by virtue of the entry of this Interim Order.

2.1.4  <u>Nullifying Prepetition Restrictions to Postpetition Financing.</u>  To the extent necessary to allow the Debtor to incur Post-Petition Obligations during the Interim Financing Period, notwithstanding anything to the contrary contained in any prepetition agreement, contract, lease, document, note or instrument to which the Debtor is a party or under which the Debtor is obligated, except as otherwise permitted under the Loan Documents, any provision that restricts, limits or impairs in any way the Debtor from granting Lender security interests in or liens upon any of the Debtor's assets or properties (including, among other things, any anti-lien granting or anti-assignment clauses in any leases or other contractual arrangements to which the Debtor is a party) under the DIP Credit Agreement, the other Loan Documents or this Interim Order, or otherwise entering into and complying with all of the terms, conditions and provisions hereof or the Loan Documents shall <u>not</u> (i) be effective and/or enforceable against the Debtor or Lender, or (ii) adversely affect the validity, priority or enforceability of the liens, security interests, claims, rights, priorities and/or protections granted to Lender pursuant to this Interim Order or the Loan Documents to the maximum extent permitted under the Bankruptcy Code and other applicable law.

2.2  <u>Superpriority Administrative Expense</u>.  For all Obligations (including, without limitation, all Pre-Petition Obligations and all Post-Petition Obligations) now existing or hereafter arising pursuant to this Interim Order, the Loan Documents or otherwise, Lender is granted an allowed superpriority administrative claim pursuant to Section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of Debtor, whether now in existence or hereafter incurred by Debtor, and over any and all administrative expenses or priority claims, including claims of the kind specified in, or ordered pursuant to, *inter alia*, Bankruptcy Code Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 364(c)(1), 546(c), 726 or 1114 (the "**Superpriority Claim**"), <u>provided</u>, <u>however</u>, the

Superpriority Claim shall be subject only to the Permitted Liens and Claims and Factor Replacement Lien, as and to the extent expressly set forth in this Interim Order.

    2.3    Carve Out Expenses.

    2.3.1    Carve Out Expenses.  Upon the declaration by Lender of the occurrence of an Event of Default or upon the Maturity Date (as defined in the Ratification Agreement), (a) Lender's liens, claims and security interests in the Collateral and proceeds thereof, and (b) the Superpriority Claim shall be subject only to the Lender's obligation to pay the following expenses (the "**Carve Out Expenses**"):

    a.    statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) as determined by agreement of the U.S. Trustee or by final order of the Court;

    b.    fees payable to the Clerk of this Court;

    c.    subject to the terms and conditions of this Interim Order, the unpaid and outstanding fees and expenses actually incurred on or after the Petition Date and prior to or on the date of an Event of Default or the Maturity Date, but only to the extent such unpaid fees and expenses are approved by a final order of the Court at any time pursuant to Sections 326, 328, 330, 331 of the Bankruptcy Code (collectively, the "**Allowed Professional Fees**") by attorneys, accountants and other professionals retained by the Debtors and any Committee(s) under Section 327 or 1103(a) of the Bankruptcy Code (collectively, the "**Professionals**"), plus $50,000 for Allowed Professional Fees incurred after the date of an Event of Default or the Maturity Date (the "**Professional Fee Carve Out**"); provided, however, that the Allowed Professional Fees of attorneys, accountants and other professionals retained by any Committee(s) appointed in the Case included in this Carve Out shall not exceed $75,000 in aggregate.  Nothing contained herein is intended to constitute, nor should be construed as consent to, the allowance of any Professional's fees, costs, or expenses by any party and shall not affect the rights of Debtor, Lender, the Committee, the U.S. Trustee, or any other party-in-

interest to object to the allowance or payment of any amounts incurred or requested.

d.      The Carve Out Expenses shall not exceed $270,000, which the Lender shall fund out of advances by making weekly payments of at least $30,000 into an escrow account during the 9 week period ending January 30, 2016 less any amounts prefunded by the Lender (the "**Carve-Out Escrow**").    The Factor Replacement Collateral, net of Factor's commissions, charges, fees, legal fees, costs and expenses, and interest in connection with the Factoring Documents, including as amended by the Amendment to Factoring Agreement, shall cover any shortfall between the Carve-Out Expenses and the Carve-Out Escrow.

2.3.2    Excluded Professional Fees.    Notwithstanding anything to the contrary in this Interim Order, neither the Professional Fee Carve Out nor the proceeds of any Loans or Collateral, including the Factor Collateral and the Factor Replacement Collateral (defined below) shall be used to pay any Allowed Professional Fees or any other fees or expenses incurred by any Professional in connection with any of the following: (a) an assertion or joinder in (but excluding any investigation into) any claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter seeking any order, judgment, determination or similar relief: (i) challenging the legality, validity, priority, perfection, or enforceability of the Obligations or liens and security interests of the Lender and Pre-Petition Lenders in the Collateral, or of the Factor in the Factor Collateral or the Factor Replacement Collateral, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Obligations or liens and security interests of the Lender and Pre-Petition Lenders in the Collateral, or of the Factor in Factor Collateral or the Factor Replacement Collateral, or (iii) preventing, hindering or delaying Lender's, Pre-Petition Lenders' or Factor's assertion or enforcement of any lien, claim, right or security interest or realization upon any Collateral, Factor Collateral, or Factor Replacement Collateral in accordance with the terms and conditions of this Interim Order; (b) a request to use the Cash Collateral (as

such term is defined in Section 363 of the Bankruptcy Code) without the prior written consent of Lender and Pre-Petition Lenders, or Factor, as the case may be, in accordance with the terms and conditions of this Interim Order; (c) a request for authorization to obtain debtor-in-possession financing or other financial accommodations pursuant to Section 364(c) or Section 364(d) of the Bankruptcy Code, other than from Lender, without the prior written consent of Lender and Pre-Petition Lenders; (d) the commencement or prosecution of any action or proceeding of any claims, causes of action or defenses against Lender, Pre-Petition Lenders or Factor or any of their officers, directors, employees, agents, attorneys, affiliates, successors or assigns, including, without limitation, any attempt to recover or avoid any claim or interest from Lender, Pre-Petition Lenders or Factor under Chapter 5 of the Bankruptcy Code; or (e) any act which has or could have the effect of materially and adversely modifying or compromising the rights and remedies of Lender, Pre-Petition Lenders or Factor, or which is contrary, in a manner that is material and adverse to Lender, Pre-Petition Lenders or Factor, to any term or condition set forth in or acknowledged by the Loan Documents, the Case, as modified by the Amendment to Factoring Agreement, or this Interim Order and which results in the occurrence of an Event of Default under the Loan Documents, the Case, as modified by the Amendment to Factoring Agreement, or this Interim Order; provided, however, that subject to Section 4.1 below and the Budget, the Professional Fee Carve Out and the proceeds of any Loans or Collateral may be used for allowed fees and expenses, in an amount not to exceed $25,000 in the aggregate, incurred solely by the Committee (if appointed), in investigating the validity, enforceability, perfection or priority of Lender's and or Pre-Petition Lenders' liens under the Pre-Petition Loan Documents and Factor's liens under the Case.

    2.4    Use of Cash Collateral; Adequate Protection.

    2.4.1    Authorization to Use Cash Collateral. Subject to the terms and conditions of this Interim Order, the DIP Credit Agreement and the other Loan

Documents, and in accordance with the Budget, Debtor shall be and is hereby authorized to use, until the expiration of Lender's commitment to lend under the DIP Credit Agreement and the other Loan Documents or the occurrence of an Event of Default, the Cash Collateral (as defined in Section 363 of the Bankruptcy Code). Nothing in this Interim Order shall authorize the disposition of any assets of the Debtor or its Estate outside the ordinary course of business, or Debtor's use of Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Order, the DIP Credit Agreement, the other Loan Documents and in accordance with the Budget.

      2.4.2   Replacement Liens.  As adequate protection for the diminution in value of its interests in the Pre-Petition Collateral, including Cash Collateral, on account of the Debtor's use of such Pre-Petition Collateral (including Cash Collateral), the imposition of the automatic stay and the subordination to the Carve Out-Expenses, the Pre-Petition Lenders are hereby granted pursuant to Sections 361 and 363 of the Bankruptcy Code, valid, binding, enforceable and perfected replacement liens upon and security interests in all Collateral (the "**Replacement Lien**"). The Replacement Lien shall (i) be junior and subordinate only to the Permitted Liens and Claims and the Factor Replacement Lien, as and to the extent expressly set forth in this Interim Order, Carve-Out Expenses and the liens and security interests granted to Lender in the Collateral securing the Post-Petition Obligations and (ii) otherwise be senior to all other security interests in, liens on, or claims against any of the Collateral.

      2.4.3   Section 507(b) Priority Claims. As adequate protection for the diminution in value of its interests in the Pre-Petition Collateral (including Cash Collateral) on account of the Debtor's use of such Pre-Petition Collateral (including Cash Collateral), the imposition of the automatic stay and the subordination to the Carve-Out-Expenses, the Pre-Petition Lenders are hereby granted as and to the extent provided by Section 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in the Case and any successor case (the "**Adequate Protection Superpriority**

**Claim**").   The Adequate Protection Superpriority Claim shall be junior only to the Superpriority Claim, Permitted Liens and Claims and Factor Replacement Lien, as and to the extent expressly set forth in this Interim Order, and the Carve-Out Expenses and shall otherwise have priority over all administrative expense claims and unsecured claims against Debtor and its Estate now existing or hereafter arising, of any kind or nature whatsoever.

      2.4.4   Other Lender Adequate Protection.   As further adequate protection for any diminution in the value of the Pre-Petition Collateral, Debtor is hereby authorized to provide adequate protection to the Pre-Petition Lenders in the form of: (a) payment of interest, fees and other amounts due under the Pre-Petition Loan Documents, at the times specified therein, to the Pre-Petition Lenders to the extent permissible under the Bankruptcy Code, and (b) ongoing payment of the fees, costs and expenses, including, without limitation, reasonable legal and other professionals' fees and expenses, of the Pre-Petition Lenders as required under the Pre-Petition Loan Documents.

      2.4.5   Factor Replacement Liens.   As adequate protection for the diminution in value of its interests in the Factor Collateral, the Factor is hereby granted pursuant to Sections 361 and 363 of the Bankruptcy Code, valid, binding, enforceable and perfected continuing and replacement liens upon and security interests (the "**Factor Replacement Lien**") in all now existing or hereafter acquired assets of the Debtor (the "**Factor Replacement Collateral**").   Except as specifically set forth in the last sentence of Section 2.1.2, above, the Factor Replacement Lien shall be senior to all other security interests in, liens on, or claims against any of the Factor Replacement Collateral, including, without limitation, the liens, claims and security interests of the Lender and Pre-Petition Lenders; provided, however, that the Factor Replacement Lien shall be junior to the Permitted Liens and Claims (to the extent the respective Permitted Lien and/or Claims has priority over the Factor's liens on the Factor Collateral) and the Carve-

Out Expenses (with the amount of the Carve-Out Expenses reduced by the amount of any Carve-Out Escrow).

2.4.6    Factor Section 507(b) and 364(c) Priority Claims.    As adequate protection for the diminution in value of its interests in the Factor Replacement Collateral, the Factor is hereby granted as and to the extent provided by Sections 364(c) and 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in the Case and any successor case (the "**Factor Adequate Protection Superpriority Claim**"). The Factor Adequate Protection Superpriority Claim shall have priority over all administrative expense claims and unsecured claims against Debtor and its Estate now existing or hereafter arising, of any kind or nature whatsoever except as to the Lender's collection of proceeds from the Factor Subordinate Collateral; provided, however, that the Factor Adequate Protection Superpriority Claim shall be junior to the Permitted Liens and Claims (to the extent the respective Permitted Lien and/or Claims has priority over the Factor's liens on the Factor Collateral) and the Carve-Out Expenses (with the amount of the Carve-Out Expenses reduced by the amount of any Carve-Out Escrow).

2.4.7    Other Factor Adequate Protection.    The Factor shall be provided the following as additional adequate protection for any diminution in the value of the Factor Collateral. Notwithstanding the commencement of the Case: (a) the Factor's prepetition ownership interest in certain of the Debtor's accounts receivable (the "**Pre-Petition Factored Accounts**") is hereby confirmed; (b) the Factor shall have the right, in accordance with the terms of the Factoring Documents, as modified by the Amendment to Factoring Agreement, to set off and apply and charge to Debtor and Debtor shall pay all amounts, including but not limited to, costs, fees, expenses (legal, audit, and otherwise), minimum commissions, principal, interest, and collection costs, whether accruing prepetition or postpetition, owed by the Debtor to the Factor under the Factoring Agreement (both before and after giving effect to the Amendment to Factoring

Agreement and this Interim Order), against the purchase price or against collections in respect of receivables owed to the Debtor by the Factor for the Pre-Petition Factored Accounts or the Post-Petition Factored Accounts (defined below, and collectively along with the Pre-Petition Factored Accounts, the "**Factored Accounts**") until such time that the Factor is paid in full (and under no circumstance shall the Factor be paid in full any later than the effective date of a plan of reorganization); (c) subject to any offsets or defenses existing thereunder, the Factor shall comply with all of its obligations under the Factoring Documents, as modified by the Amendment to Factoring Agreement with respect to the Factored Accounts; (d) after the Factor is paid in full, the Factor is authorized and directed to return to Debtor customers' payments received by the Factor with respect to non-factored accounts, if any, for collection by and remittance directly to the Debtor by such customers; (e) subject to the Factor's right to implement necessary and appropriate reserves in accordance with the terms of the Factoring Documents, as modified by the Amendment to Factoring Agreement, Factor shall remit proceeds when due and payable under the Factoring Documents, as modified by the Amendment to Factoring Agreement, directly to the Company pursuant to the Factoring Documents, as modified by the Amendment to Factoring Agreement; and (f) the Debtor is hereby authorized to continue to purchase and ship goods consistent with fulfilling its existing obligations under the Factoring Documents, as modified by the Amendment to Factoring Agreement, and receivables or invoices thereby generated (the "**Post-Petition Factored Accounts**") shall be Factored Accounts.  The automatic stay in effect pursuant to section 362(a) of the Bankruptcy Code is hereby modified to the extent necessary to implement the foregoing.  ~~For the avoidance of doubt, the Debtor shall not incur additional advances under the Factoring Agreement and shall not sell or pledge receivables postpetition except as authorized under section (f) above.~~ 

Section 3.    Default; Rights and Remedies; Relief from Stay.

3.1     Events of Default.  The occurrence of any of the following events shall constitute an "**Event of Default**" under this Interim Order:

a.      Debtor's failure to perform, in any respect, any of the terms, conditions or covenants, or its obligations, under this Interim Order; or

b.      An "Event of Default" under the DIP Credit Agreement or the Factoring Documents, including as modified by the Amendment to Factoring Agreement;

3.2     Rights and Remedies Upon Event of Default.  Upon the occurrence of and during the continuance of an Event of Default, (i) the Debtor shall be bound by all restrictions, prohibitions and other terms as provided in this Interim Order, the DIP Credit Agreement and the other Loan Documents, and the Factoring Documents, including as modified by the Amendment to Factoring Agreement and (ii) Lender or Factor, as the case may be, shall be entitled to take any act or exercise any right or remedy (subject to Section 3.4 below) as provided in this Interim Order or any Loan Document, or Factoring Documents, including as modified by the Amendment to Factoring Agreement including, without limitation, declaring all Obligations immediately due and payable (without presentment, demand, protest or other notice of any kind, all of which are expressly waived by the Debtor), accelerating the Obligations, ceasing to extend advances or financing accommodations on behalf of Debtor, setting off any Obligations with Collateral or proceeds in Lender's possession, setting off any Pre-Petition Factor Obligations or other obligations owing to Factor under Factoring Documents, including as modified by the Amendment to Factoring Agreement with Factor Collateral or Factor Replacement Collateral in Factor's possession, and enforcing any and all rights with respect to the Collateral, Factor Collateral or Factor Replacement Collateral, as the case may be.  Lender and Factor shall have no obligation to lend or advance any additional funds to or on behalf of Debtor, or provide any other financial accommodations to Debtor, immediately upon or after the occurrence of an Event of Default as to either

Lender or Factor or upon the occurrence of any act, event, or condition that, with the giving of notice or the passage of time, or both, would constitute an Event of Default. The Debtor shall cooperate fully with the Lender and Factor in their exercise of rights and remedies against the Collateral, Factor Collateral and Factor Replacement Collateral following and during the continuance of an Event of Default.

        3.3    <u>Expiration of Commitment</u>.  Upon the earlier of (i) the Maturity Date; or (ii) the expiration of Borrower's authority to borrow and obtain other credit accommodations from Lender pursuant to the terms of this Interim Order and the Loan Documents (except if such authority shall be extended with the prior written consent of Lender, which consent shall not be implied or construed from any action, inaction or acquiescence by Lender), and unless an Event of Default set forth in Section 3.1 above occurs sooner and the automatic stay has been lifted or modified pursuant to Section 3.4 of this Interim Order, all of the Obligations, including the Pre-Petition Factor Obligations or other obligations owing to Factor under the Factoring Documents, including as modified by the Amendment to Factoring Agreement, shall immediately become due and payable and Lender and Factor shall be automatically and completely relieved from the effect of any stay under Section 362 of the Bankruptcy Code, any other restriction on the enforcement of its liens upon and security interests in the Collateral and Factor's lien upon and security interest in the Factor Collateral and Factor Replacement Collateral or any other rights granted to Lender or Factor pursuant to the terms and conditions of the Loan Documents, the Factoring Documents, including as modified by the Amendment to Factoring Agreement, or this Interim Order, and Lender and Factor shall be and are hereby authorized, in their sole discretion, to take any and all actions and remedies provided to it in this Interim Order, the Loan Documents, the Factoring Documents, including as modified by the Amendment to Factoring Agreement, or applicable law which Lender and Factor may deem appropriate and to proceed against and realize upon

the Collateral, the Factor Collateral and Factor Replacement Collateral or any other property of the Debtor's Estate.

      3.4    <u>Relief from Automatic Stay</u>.  The automatic stay provisions of Section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified and vacated without further notice, application or order of the Court to the extent necessary to permit Lender or Factor, as the case may be, to perform any act authorized or permitted under or by virtue of this Interim Order, the Loan Documents, or the Factoring Documents, including as modified by the Amendment to Factoring Agreement, including, without limitation, (a) to implement the postpetition financing arrangements and factoring authorized by this Interim Order and pursuant to the terms of the Loan Documents and the Factoring Documents, including as modified by the Amendment to Factoring Agreement, (b) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the Collateral, the Factor Collateral and Factor Replacement Collateral and (c) to assess, charge, collect, advance, deduct and receive payments with respect to the Obligations, including the Pre-Petition Factor Obligations or other obligations owing to Factor under the Factoring Documents, including, without limitation, all interests, fees, costs and expenses permitted under the Loan Documents, and apply such payments to the Obligations pursuant to the Loan Documents, apply such payments to the Pre-Petition Factor Obligations or other obligations owing to Factor under the Factoring Documents, and permitted under this Interim Order.  In addition, and without limiting the foregoing, upon the occurrence of an Event of Default and after filing and serving with the Court and providing five (5) business days written notice (the "**Enforcement Notice**") to respective counsel for the Debtor and Factor, counsel for the Committee (if appointed), the U.S. Trustee, and all creditors who have served Lender and Factor with written notice of a filed or recorded prepetition lien or security interest against any of the Debtor's assets in their favor, Lender and Factor, as the case may be, shall be entitled, without

further order of or application or motion to the Court and without restriction or restraint by any stay under section 362 or 105 of the Bankruptcy Code, to take any action and exercise all rights and remedies provided to it by this Interim Order, the Loan Documents, the Factoring Documents, including as modified by the Amendment to Factoring Agreement, or applicable law as Lender and Factor, as the case may be, may deem appropriate in its sole discretion to, among other things, proceed against and realize upon the Collateral, the Factor Collateral or the Factor Replacement Collateral or any other assets or properties of Debtor's Estate upon which Lender or Factor, as the case may be, has been or may hereafter be granted liens or security interests to obtain the full and indefeasible repayment of all Obligations, including the Pre-Petition Factor Obligations or other obligations owing to Factor under the Factoring Documents.

Section 4.        Representations; Covenants; and Waivers.

4.1        Objections to Pre-Petition Obligations.    Any action, claim or defense (hereinafter, an "**Objection**") that seeks to object to, challenge, contest or otherwise invalidate or reduce, whether by setoff, recoupment, counterclaim, deduction, disgorgement or claim of any kind: (a) the existence, validity or amount of the (i) Pre-Petition Obligations or (ii) Pre-Petition Factor Obligations, (b) the extent, legality, validity, perfection or enforceability of (i) the Pre-Petition Lenders' prepetition liens and security interests in the Pre-Petition Collateral or (ii) the Factor's prepetition liens and security interests in the Factor Collateral or Factor Replacement Collateral, or (c) (i) Pre-Petition Lenders' right to apply proceeds of Post-Petition Collateral against Pre-Petition Obligations in satisfaction of Pre-Petition Lenders' prepetition liens as provided for in this Interim Order, (ii) the Factor's right to apply proceeds of Factor Replacement Collateral against Pre-Petition Factor  Obligations in satisfaction of its prepetition lien as provided for in this Interim Order shall be filed with the Court (x) by any Committee, and no other party, within sixty (60) calendar days from the date of appointment of the Committee by the U.S. Trustee, or (y) by any party in interest with requisite standing

within seventy-five (75) calendar days from the date of entry of this Interim Order; provided, that in the event the case is converted to Chapter 7 prior to the expiration of this period, a Chapter 7 trustee shall have the portion of the seventy-five (75) day period that did not pass prior to conversion in which to file an Objection; provided further, that in the event the Debtor's chapter 11 Plan is confirmed prior to the expiration of this period, that the period may be shortened or terminated by the Court. If any such Objection is timely filed and successfully pursued, nothing in this Interim Order shall prevent the Court from granting appropriate relief with respect to the (i) Pre-Petition Obligations or Pre-Petition Lenders' liens on the Pre-Petition Collateral or (ii) the Pre-Petition Factor Obligations or Factor's liens on the Factor Collateral. If no Objection is timely filed as to the Pre-Petition Lenders', or if an Objection is timely filed but denied, (a) the Pre-Petition Obligations shall be deemed allowed in full, shall not be subject to any setoff, recoupment, counterclaim, deduction or claim of any kind, and shall not be subject to any further objection or challenge by any party at any time, and Lender's prepetition liens on and security interest in the Pre-Petition Collateral shall be deemed legal, valid, perfected, enforceable, and non-avoidable for all purposes and of first and senior priority, subject to only the Permitted Liens and Claims and Factor Replacement Lien, and (b) Pre-Petition Lenders and their agents, officers, directors, employees, attorneys, professionals, successors, and assigns (each in their capacity as such) shall be deemed released and discharged from any and all claims and causes of action related to or arising out of the Pre-Petition Loan Documents and shall not be subject to any further objection or challenge by any party at any time. If no Objection is timely filed as to the Factor, or if an Objection is timely filed but denied, (a) the Pre-Petition Factor Obligations shall be deemed allowed in full, shall not be subject to any setoff, recoupment, counterclaim, deduction or claim of any kind, and shall not be subject to any further objection or challenge by any party at any time, and Factor's prepetition liens on and security interests in the Factor Collateral shall be deemed legal, valid, perfected, enforceable, and non-

avoidable for all purposes and of first and senior priority, and (b) Factor and its agents, officers, directors, employees, attorneys, professionals, successors, and assigns (each in its capacity as such) shall be deemed released and discharged from any and all claims and causes of action related to or arising out of the Factoring Documents and shall not be subject to any further objection or challenge by any party at any time. Nothing contained in this Section 4.1 or otherwise shall or shall be deemed or construed to impair, prejudice or waive any rights, claims or protections afforded to Pre-Petition Lenders in connection with all postpetition advances and other financial accommodations provided by Pre-Petition Lenders to Debtor in reliance on Section 364(e) of the Bankruptcy Code and in accordance with the terms and provisions of this Interim Order and the Loan Documents.

      4.2   <u>Debtor's Waivers</u>. At all times during the Case, and whether or not an Event of Default has occurred, subject to Section 4.1, the Debtor irrevocably waives any right that it may have to seek authority (i) to use Cash Collateral of Pre-Petition Lenders under Section 363 of the Bankruptcy Code, (ii) to obtain postpetition loans or other financial accommodations pursuant to Section 364(c) or 364(d) of the Bankruptcy Code, other than from Lender or as may be otherwise expressly permitted pursuant to the DIP Credit Agreement, (iii) to challenge the application of any payments authorized by this Interim Order as pursuant to Section 506(b) of the Bankruptcy Code, (iv) to propose, support or have a plan of reorganization or liquidation that does not provide for the indefeasible payment in cash in full and satisfaction of all Obligations on the effective date of such plan in accordance with the terms and conditions set forth in the Ratification Agreement (other than the Debtor's chapter 11 Plan filed on the Petition Date), or (v) to seek relief under the Bankruptcy Code, including without limitation, under Section 105 of the Bankruptcy Code, to the extent any such relief would in any way restrict or impair the rights and remedies of Pre-Petition Lenders as provided in this Interim Order and the Loan Documents or Pre-Petition Lenders' exercise of such rights or remedies; <u>provided</u>, <u>however</u>, that Pre-Petition Lenders may otherwise consent in

writing, but no such consent shall be implied from any other action, inaction, or acquiescence by Pre-Petition Lenders.

      4.3    Section 506(c) Claims.  Subject to the entry of a Final Financing Order (as defined in the Ratification Agreement), no costs or expenses of administration which have or may be incurred in the Case at any time during the Interim Financing Period (and subject to the entry of a Final Financing Order, any time after the expiration of the Interim Financing Period) shall be charged against Pre-Petition Lenders, their claims or the Collateral pursuant to Section 506(c) of the Bankruptcy Code without the prior written consent of Pre-Petition Lenders, and no such consent shall be implied from any other action, inaction or acquiescence by Pre-Petition Lenders.

      4.4    Collateral Rights.  Until all of the Obligations shall have been indefeasibly paid and satisfied in full:

      4.4.1   no other party shall foreclose or otherwise seek to enforce any junior lien or claim in any Collateral; and

      4.4.2   upon and after the earlier of the occurrence of an Event of Default or the Maturity Date (as defined in the Ratification Agreement), and subject to Lender obtaining relief from the automatic stay as provided for herein, in connection with a liquidation of any of the Collateral, Lender (or any of its employees, agents, consultants, contractors or other professionals) shall have the right, at the sole cost and expense of Debtors, to: (i) enter upon, occupy and use any real or personal property, fixtures, equipment, leasehold interests or warehouse arrangements owned or leased by Debtor; (ii) use any and all trademarks, tradenames, copyrights, licenses, patents or any other similar assets of Debtor, which are owned by or subject to a lien of any third party and which are used by Debtor in its business; and (iii) receive and apply any tax refunds against the Pre-Petition Obligations or Post-Petition Obligations, subject to the Permitted Liens and Claims (to the extent the respective Permitted Lien and/or Claims has priority over the Factor's liens on the Factor Collateral), the Factor Replacement Lien and the

Carve-Out Expenses (with the amount of the Carve-Out Expenses reduced by the amount of any Carve-Out Escrow). Lender will be responsible for the payment of any applicable fees, rentals, royalties or other amounts due such lessor, licensor or owner of such property for the period of time that Lender actually uses the equipment or the intellectual property (but in no event for any accrued and unpaid fees, rentals or other amounts due for any period prior to the date that Lender actually occupies or uses such assets or properties).

4.5    Release and Indemnification.

4.5.1    Upon the earlier of (a) the entry of a Final Financing Order approving the Motion or (b) the entry of an Order extending the Interim Financing Period beyond thirty (30) days after the date of this Interim Order, and in each instance subject to Section 4.1 above, in consideration of Lender and Pre-Petition Lenders making postpetition loans, advances and providing other credit and financial accommodations, as applicable to the Debtor pursuant to the provisions of the Loan Documents and this Interim Order, the Debtor, on behalf of itself, its successors and assigns, and its estate (collectively, the "**Releasors**"), shall forever release, discharge and acquit Lender and Pre-Petition Lenders and their successors and assigns, and their present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees and other representatives (collectively and each in their capacity as such, the "**Releasees**") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of every kind, nature and description, including, without limitation, any so-called "lender liability" claims or defenses, that Releasors had, have or hereafter can or may have against Releasees as of the date hereof, in respect of events that occurred on or prior to the date hereof with respect to the Debtor, the Obligations, the Loan Documents and any advances or other financial accommodations made by Lender and Pre-Petition Lenders to Debtor pursuant to the Loan Documents; provided, however, nothing herein shall release the Lender from

any obligation or responsibility to pay or otherwise fund the Carve Out Expenses in accordance with the terms of this Interim Order, the Budget, and the Ratification Agreement.

        4.5.2   Indemnification by Debtors of Lender. Subject to entry of a final order, the Debtor's indemnification obligations to Lender and Factor (the "**Indemnification Obligations**") provided for in the Loan Documents and the Factoring Documents (as modified by the Amendment to Factoring Agreement) are approved and such Indemnification Obligations shall be deemed to be Post-Petition Obligations.

Section 5.     Other Rights and Obligations.

        5.1   No Modification or Stay of This Interim Order. Notwithstanding (i) any stay, modification, amendment, supplement, vacating, revocation or reversal of this Interim Order, the Loan Documents or any term hereunder or thereunder, (ii) the failure to obtain a Final Financing Order pursuant to Bankruptcy Rule 4001(c)(2), (iii) the dismissal or conversion of the Case, or (iv) any order entered at any time in the Case containing terms inconsistent with the terms and conditions contained in this Interim Order (each, a "**Subject Event**"), (x) the acts taken by Lender in accordance with this Interim Order, and (y) the Post-Petition Obligations incurred or arising prior to Lender's actual receipt of written notice from Debtor expressly describing the occurrence of such Subject Event shall, in each instance, be governed in all respects by the original provisions of this Interim Order, and the acts taken by Lender in accordance with this Interim Order, and the liens granted to Lender in the Collateral, and all other rights, remedies, privileges, and benefits in favor of Lender pursuant to this Interim Order and the Loan Documents shall remain valid and in full force and effect pursuant to Section 364(e) of the Bankruptcy Code. For purposes of this Interim Order, the term "appeal," as used in Section 364(e) of the Bankruptcy Code, shall be construed to mean any proceeding for reconsideration, amending, rehearing, or re-evaluating this Interim Order by this Court or any other tribunal.

5.2     Power to Waive Rights; Duties to Third Parties.  Lender shall have the right to waive any of the terms, rights and remedies provided or acknowledged in this Interim Order in respect of Lender (the "**Lender Rights**"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any Lender Right(s).  Any waiver by Lender of any Lender Rights shall not be or constitute a continuing waiver.  Any delay in or failure to exercise or enforce any Lender Right shall neither constitute a waiver of such Lender Right, subject Lender to any liability to any other party, nor cause or enable any other party to rely upon or in any way seek to assert as a defense to any obligation owed by Debtor to Lender.

5.3     Disposition of Collateral.  Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral in anyway inconsistent with the terms and conditions of the DIP Credit Agreement or the other Loan Documents, and shall not, in any event, sell, transfer, lease, encumber, or otherwise dispose of any portion of the Collateral other than sales of inventory in the ordinary course of business, without the prior written consent of Lender (and no such consent shall be implied, from any other action, inaction or acquiescence by Lender) and an order of this Court.  Until all Obligations are indefeasibly paid and satisfied in full in cash in accordance with the terms of the Loan Documents and the applicable Financing Order on terms and conditions acceptable to Lender, Debtor and any estate fiduciary appointed in this case shall remit to Lender, or cause to be remitted to Lender, all proceeds of the Collateral for application by Lender to the Obligations, in such order and manner as Lender may determine in its discretion, in accordance with the terms of this Interim Order, the Credit Agreement and the other Loan Documents.

5.4     Inventory.  Debtor shall not, without the consent of Lender, (a) enter into any agreement to return any inventory to any of their creditors for application against any prepetition indebtedness under any applicable provision of Section 546 of the Bankruptcy Code, or (b) consent to any creditor taking any setoff against any of its

prepetition indebtedness based upon any such return pursuant to Section 553(b)(1) of the Bankruptcy Code or otherwise.

      5.5    <u>Reservation of Rights</u>.  The terms, conditions and provisions of this Interim Order are in addition to and without prejudice to the rights of Lender to pursue any and all rights and remedies under the Bankruptcy Code, the Loan Documents or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the Collateral or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of Professionals or other parties seeking compensation or reimbursement from the Estate.

      5.6    <u>Binding Effect</u>.

      5.6.1  The provisions of this Interim Order and the Loan Documents, the Post-Petition Obligations, the Superpriority Claim and any and all rights, remedies, privileges and benefits in favor of Lender provided or acknowledged in this Interim Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Interim Order pursuant to Bankruptcy Rules 6004(g) and 7062, shall continue in full force and effect, and shall survive entry of any such other order, including without limitation any order which may be entered confirming any plan of reorganization, converting the Case to any other chapter under the Bankruptcy Code, or dismissing the Case.

      5.6.2  Any order dismissing the Case under Section 1112 or otherwise shall be deemed to provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that (a) the Superpriority Claim and Lender's liens on and security interests in the Collateral shall continue in full force and effect notwithstanding such dismissal until the Obligations are indefeasibly paid and satisfied in full, and (b) this

Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the Superpriority Claim and liens in the Collateral to the extent provided under applicable law.

      5.6.3   In the event this Court modifies any of the provisions of this Interim Order or the Loan Documents following a Final Hearing, (a) such modifications shall not affect the rights or priorities of Lender pursuant to this Interim Order with respect to the Collateral or any portion of the Obligations which arises or is incurred or is advanced prior to such modifications, and (b) this Interim Order shall remain in full force and effect except as specifically amended or modified at such Final Hearing.

      5.6.4   This Interim Order shall be binding upon Debtor, all parties in interest in the Case and their respective successors and assigns, including any trustee or other fiduciary appointed in the Case or any subsequently converted bankruptcy case of Debtor.  This Interim Order shall also inure to the benefit of Lender, Debtor and their respective successors and assigns.

      5.7   <u>Restrictions on Cash Collateral Use, Additional Financing, Plan Treatment</u>.  All postpetition advances and other financial accommodations under the DIP Credit Agreement and the other Loan Documents are made in reliance on this Interim Order and there shall not at any time be entered in the Case, or in any subsequently converted case under Chapter 7 of the Bankruptcy Code, any order (other than the Final Financing Order) which (a) authorizes the use of cash collateral of Debtor in which Lender has an interest, or the sale, lease, or other disposition of property of any Debtor's Estate in which Lender has a lien or security interest, except as expressly permitted hereunder or in the Loan Documents, or (b) authorizes under Section 364 of the Bankruptcy Code the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest in property in which Lender holds a lien or security interest, or which is entitled to priority

administrative claim status which is equal or superior to that granted to the Lender; unless, in each instance (i) Lender shall have given its express prior written consent with respect thereto, no such consent being implied from any other action, inaction or acquiescence by Lender, or (ii) such other order requires that all Obligations shall first be indefeasibly paid and satisfied in full in accordance with the terms of the DIP Credit Agreement and the other Loan Documents, including, without limitation, all debts and obligations of Debtors to Lender which arise or result from the obligations, loans, security interests and liens authorized herein, on terms and conditions acceptable to Lender.  The security interests and liens granted to or for the benefit of Lender hereunder and the rights of Lender pursuant to this Interim Order and the Loan Documents with respect to the Obligations and the Collateral are cumulative and shall not be altered, modified, extended, impaired, or affected by any plan of reorganization or liquidation of Debtor and, if Lender shall expressly consent in writing that the Obligations shall not be repaid in full upon confirmation thereof, shall continue after confirmation and consummation of any such plan.

      5.8    <u>No Owner/Operator Liability</u>.  In determining to make any loan under the DIP Credit Agreement or any Financing Order, or in exercising any rights or remedies as and when permitted pursuant to the DIP Credit Agreement or any Financing Order, Lender shall not, solely by virtue thereof, be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute).

      5.9    <u>Marshaling</u>.  Subject to a Final Financing Order with respect to Pre-Petition Obligations, in no event shall Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.  Lender shall be

entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to Lender with respect to proceeds, products, offspring or profits of any of the Collateral.

 5.10 <u>Right to Credit Bid</u>. Lender and the Pre-Petition Lenders shall have the right to "credit bid" the amount of their claims, including the Obligations, during any sale of all or substantially all of the Debtor's assets, including without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(ii)-(iii) of the Bankruptcy Code.

 5.11 <u>Term; Termination</u>. Notwithstanding any provision of this Interim Order to the contrary, the term of the financing arrangements among Debtor and Lender authorized by this Interim Order may be terminated by Lender to the extent provided for by the terms of the DIP Credit Agreement and the other Loan Documents.

 5.12 All rights and protections granted to the Lender and the Pre-Petition Lenders pursuant to the following sections (including subsections) of this Interim Order, and all representations, waivers and releases made by the Debtor for the benefit of the Lender and Pre-Petition Lenders pursuant to the following sections (including subsections) of this Interim Order, are hereby also granted to and shall inure to the benefit of the Factor as if the Factor and the Debtors obligations to the Factor, including under the Factoring Documents (including as amended by the Factoring Agreement), as more fully set forth therein: paragraphs 4.2, 4.3, 4.4, 4.5, 5.1, 5.2, 5.3, 5.4, 5.5, 5.6, 5.7, 5. 8, 5.9, 5.10, and 5.11.

 5.13 <u>Limited Effect</u>. Unless the Interim Order specifically provides otherwise, in the event of a conflict between the terms and provisions of any of the Loan Documents, the Factoring Documents (including as amended by the Factoring Agreement) and this Interim Order, the terms and provisions of this Interim Order shall

govern, interpreted as most consistent with the terms and provisions of the Loan Documents and the Factoring Documents (including as amended by the Factoring Agreement), as the case may be.

      5.14   <u>Objections Overruled</u>.  All objections to the entry of this Interim Order are, to the extent not withdrawn, hereby overruled.

Section 6.    <u>Final Hearing and Response Dates</u>.

      6.1   The Final Hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) is scheduled for December 23, 2016, at 2:00 pm before this Court (the "**Final Hearing**").  *Debtor shall promptly mail copies of this Interim Order to the Noticed Parties, and to any other party that has filed a request for notices with this Court and to any Committee after same has been appointed, or Committee counsel, if same shall have filed a request for notice.*

      *6.2   Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections that conform to the applicable Bankruptcy Rules and Local Rules, which objections shall be served upon (a) the U.S. Trustee: 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801; (b) counsel for the Debtor: Morris, Nichols, Arsht & Tunnell, LLP, 1201 North Market Street, 18th Floor, Wilmington, DE 19899 (Attn: Derek C. Abbott, Esq. and Daniel B. Butz, Esq.); (c) counsel to the Lender: Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street, New York, NY 10019 (Attn: Joshua A Feltman, Esq.); and (d) counsel to the Factor: Lowenstein Sandler LLP, 1251 Avenue of the Americas, New York, NY 10020 (Attn: Bruce S. Nathan, Esq. and David M. Banker, Esq.) and (e) counsel to any Committee appointed in the case; and shall be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware, in each case, to allow actual receipt of the foregoing no later*

than _Decembra 17_ ,2015 at 4:00 p.m. prevailing Eastern time.

Dated: December 8, 2015

THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE