**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TAMARA MELLON BRAND, LLC, *et al*. | ) | Case No. 15-12420 (KG) |
| | ) | |
| Debtor.[1] | ) | |
| | ) | |

**DECLARATION OF TAMARA MELLON IN SUPPORT OF CONFIRMATION
OF DEBTOR'S PREPACKAGED PLAN OF REORGANIZATION
PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

I, Tamara Mellon, hereby declare under penalty of perjury:

1. I am the founder and CEO of Tamara Mellon Brand, LLC ("TMB" or the "Debtor"), a Delaware limited liability company. I have been employed by TMB since its creation.

2. In such capacity, I am generally familiar with the Debtor's day to day operations, business and financial affairs, and books and records.

3. Except as otherwise indicated herein, all facts set forth in this declaration (this "Declaration") are based on my personal knowledge of the Debtor's operations and finances, information gathered from my review of relevant documents, or information supplied to me by other members of the Debtor's management. I am over the age of 18 and am authorized to submit this Declaration in support of confirmation of the *Debtor's Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* (D.I. 3) (the "Original Plan" and together with the plan supplement, dated January 4, 2016 (D.I. 61) (the "Plan Supplement"), the

---

[1] The last four digits of the Debtor's federal tax identification number are 7426. The Debtor's address is 660 Madison Avenue, New York, NY, 10065.

9766042.2

"Plan").[2]  If called upon to testify, I could and would testify competently to the facts set forth herein.

**I.     Background**

4.     As further discussed in the Declaration of Tamara Mellon in Support of First Day Motions (D.I. 6) (the "First Day Declaration") filed on December 4, 2015, TMB requires additional funding to accomplish its goal of becoming a vertically-integrated high fashion ecommerce brand and survive as a viable going concern.  Despite its best efforts, TMB has not been able to secure additional funding outside of chapter 11 because certain interest holders have not permitted it to raise new capital with (and/or convert the term loan debt into preferred equity interests with) priority over their interests, and no existing lenders or potential investors have been willing to invest subordinate to their existing equity interests.  Therefore, in the fall of 2015, TMB began exploring opportunities and proposals from investors that would include a restructuring in chapter 11.

5.     As a result of these efforts, in November 2015, the Debtor reached agreement with New Enterprise Associates 15, LP ("NEA") to fund the Debtor's marketplace transition and recapitalize the company to position it for future success.  The agreement with NEA is to be implemented through the prepackaged chapter 11 Plan, and TMB believes that it represents the most effective way to maximize the value of its estate for the benefit of creditors and preserve as many jobs as possible.

6.     After giving effect to the transactions contemplated by the Plan, the Debtor will emerge from chapter 11 and will be appropriately capitalized with access to financing to support its emergence and go-forward business needs.  The Plan will achieve the Debtor's restructuring

---

[2] All terms not defined herein shall have the meanings given to them in the Plan.

2

9766042.2

goals by (a) recapitalizing it and allowing it to pay off all of its unsecured creditors in full and (b) position TMB for ongoing growth.

      7.      Specifically, the Plan contemplates that:

- On the Effective Date, a new entity, the Debtor shall transfer substantially all of its assets to a newly-formed C-corporation to be called Tamara Mellon Brand, Inc. ("NewCo").

- All causes of action of the Debtor shall be preserved and be assets of NewCo.

- On the Effective Date, a total of $12 million in new money will be invested in NewCo, with $10 million being invested by the NEA and $2 million by certain existing and new investors, in exchange for shares of preferred stock in NewCo.

- The Term Loan Claims shall be converted into shares of preferred stock in NewCo.

- All allowed claims of administrative expense claimants, priority claimants, secured claims other than the Term Loan Claims, and unsecured creditors will be assumed by NewCo and either paid in full on or about the Effective Date or paid by NewCo in the ordinary course or as agreed between NewCo and the applicable claimant.

- All Common Units, Incentive Units and Preferred Units in the Debtor shall be cancelled.

      8.      TMB believes that the Plan and the transactions contemplated thereunder will strengthen the Debtor's balance sheet and create a sustainable capital structure to position the company for the future and allow it to implement its "shop now, wear now" model where new collections debut in the season in which they are meant to be worn.

## II.   The Plan Satisfies Each Requirement for Confirmation.

### A.   The Plan Complies with the Applicable Provisions of the Bankruptcy Code as Required by Section 1129(a)(1) of Bankruptcy Code.

9.    I believe, based on knowledge and advice, that the Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123(a)(1) of the Bankruptcy Code.

#### 1.   The Plan Properly Classifies Claims and Interests as Required by Sections 1122 and 1123(a)(1) of the Bankruptcy Code.

10.   In addition to Administrative Claims, DIP Financing Claims, Fee Claims, Priority Tax Claims and U.S. Trustee Fees, which do not need to be classified under the facts and circumstances of this Chapter 11 Case, Article III of the Plan classifies five (5) Classes of Claims and Equity Interests for the Debtor.  The Claims and Equity Interests placed in each Class are substantially similar to other Claims and Equity Interests, as the case may be, in each such Class. I believe that valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and such classifications do not unfairly discriminate between holders of Claims and Equity Interests.  Based on the advice and guidance provided to me by the Debtor's advisors, I believe that this classification scheme satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

11.   In part, the Plan's classification scheme follows the Debtor's capital structure. Namely, the Plan separately classifies the Claims because each Holder of such Claims or Equity Interests may hold (or may have held) rights legally dissimilar to the Claims or Equity Interests in other Classes or because substantial administrative convenience resulted from such classification.  For example, Claims (rights to payment) are classified separately from Equity Interests (representing ownership in the business).  Secured Claims are classified separately from

4

unsecured Claims because the Debtor's obligations with respect to the former are secured by collateral. Accordingly, the Plan satisfies section 1122(a) of the Bankruptcy Code.

      **2.    The Plan Specifies Unimpaired and Impaired Classes and Provides the Same Treatment to Each Holder in a Particular Class as Required by Sections 1123(a)(2)–(4) of the Bankruptcy Code.**

12.    Article III and various other provisions of the Plan provide for, among other things, the following: (a) designated Classes of Claims and Equity Interests; (b) specified Classes of Unimpaired Claims, including Classes 1, 2, and 4; (c) specified treatment of Classes of Impaired Claims and Equity Interests, including with respect to Classes 3 and 5; and (d) the same treatment for each Claim or Equity Interest of a particular Class, unless a holder of a particular Claim or Equity Interests has agreed to a less favorable treatment of such Claim or Equity Interests.

      **3.    The Plan Provides for Adequate Means of Implementation as Required by Section 1123(a)(5) of the Bankruptcy Code.**

13.    I believe that the Plan and the various documents and agreements set forth in the Plan Supplement and described in the Plan provide adequate means for the Plan's implementation, including, without limitation:

    a.    all corporate action as set forth more fully in Articles IV and V of the Plan, including the adoption and filing with the Secretary of State of the State of Delaware the New Charter and New Bylaws;

    b.    the creation of New TMB, the Reorganized Debtor;

    c.    the cancellation of exiting equity of the Debtor;

    d.    the entry into certain agreements between Tamara Mellon and Tamara Mellon, LLC, on the one hand, and New TMB, on the other hand;

    e.    the issuance and distribution of New Preferred Stock and New Common Stock;

    f.    the cancellation of certain existing indebtedness;

    g.    the assumption and assignment to New TMB of the Debtor's executory contracts and unexpired leases;

    h.    the transfer and vesting of the assets of the Debtor in New TMB free and clear of any and all Liens, Claims, Encumbrances and other interests of any entity except as provided by the Plan or Confirmation Order;

    i.    the assumption of certain liabilities of the Debtor by New TMB; and

    j.    the authorization of all corporate actions necessary to effectuate the Plan.

**4.    The Plan Prohibits the Issuance of Non-Voting Securities in New Holdco as Required by Section 1123(a)(6) of the Bankruptcy Code.**

14.    I am aware that the New Charter and New Bylaws prohibit the issuance of non-voting equity securities and provides as to classes of securities an appropriate distribution of voting power among such classes, as required by section 1123(a)(6) of the Bankruptcy Code.

**5.    The Plan Provides for the Selection of Directors and Officers as Required by Sections 1123(a)(7) and 1129(a)(5) of the Bankruptcy Code.**

15.    I believe that the manner of selecting the officers and directors of the Reorganized Debtor under the Plan is entirely consistent with Delaware law, the Bankruptcy Code, the interests of creditors and equity security holders, and public policy. The Plan Supplement contains provisions with respect to the manner of selection of directors and officers of the Reorganized Debtor and the identities of the initial officers and initial board members of Reorganized Debtor have been disclosed in the Disclosure Statement, Plan Supplement and/or will be disclosed in connection with the Confirmation Hearing.

**6.    The Plan Complies with the Discretionary Provisions of Section 1123(b) of the Bankruptcy Code.**

16.    It is my understanding that the Plan employs various provisions in accordance with the discretionary authority of section 1123(b) of the Bankruptcy Code. For example, Article III of the Plan leaves certain Classes of Claims and Equity Interests Impaired, while

others are Unimpaired. Specifically, under Article III of the Plan, Classes 1, 2 and 4 are Unimpaired because the Plan leaves unaltered the legal, equitable, and contractual rights of the holders of Claims within such Classes. On the other hand, Classes 3 and 5 are Impaired since the Plan modifies the rights of the holders of Claims and Equity Interests within such Classes. The Plan also proposes appropriate treatment for contracts and leases and provides a structure for Claim allowance and disallowance to the extent necessary.

### B.     The Plan Complies with Section 1123(d) of the Bankruptcy Code.

17.     I understand that the Plan provides for the satisfaction of monetary defaults under each Executory Contract and Unexpired Lease to be assumed under the Plan by payment of the default amount, if any, subject to the limitations described in Article X of the Plan, or on such other terms as the parties to such Executory Contracts or Unexpired Leases otherwise agree. I understand that all cure amounts will be determined in accordance with the underlying agreements and applicable bankruptcy and nonbankruptcy law.

### C.     The Debtor Has Proposed the Plan in Good Faith.

18.     I believe that the Plan was proposed in good faith, with the legitimate and honest purposes of reorganizing the Debtor's ongoing business and maximizing the value of the Debtor and the recovery to creditors and other stakeholders. In particular, it is my belief that the Plan satisfies the purposes of the Bankruptcy Code. I understand that the fundamental purpose of chapter 11 is to enable a distressed business to reorganize its affairs to prevent job losses and the adverse economic effects associated with disposing of assets at liquidation value.

19.     The record demonstrates that the Debtor, by and through its directors and officers, diligently searched for capital. No viable alternatives to the Plan were found; the Plan is the only viable option to continue its business and pursue its goal of total vertical integration of its design, manufacturing and delivery platforms. The Plan is the product of good faith, arm's length

7

negotiations between the Debtor, by and through its directors, officers and advisors, and New Enterprise Associates 15, Limited Partnership ("NEA"). Following such negotiations, the Debtor, by and through its directors, officers and advisors, proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. The Debtor's and its board's good faith in connection with the Plan is evident from the facts and record of this Chapter 11 Case, the Disclosure Statement and the hearing thereon, and the record of the Combined Hearing and other proceedings held in this Chapter 11 Case. The Plan was negotiated and proposed with the purpose of maximizing the value of the Debtor's Estate for the benefit of all stakeholders and effectuating a successful reorganization of the Debtor. NEA supports confirmation of the Plan. Further, the Plan's classification, indemnification, exculpation, release, and injunction provisions are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(5), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and is each necessary for the Debtor's successful reorganization. Therefore, it is my opinion that the Plan has been proposed in good faith and will achieve a result consistent with the objectives and purposes of the Bankruptcy Code.

    **D.    The Plan Provides that the Debtor's Payment of Professional Fees and Expenses Are Subject to Court Approval.**

20.    It is my understanding that except as provided in Article II of the Plan, all Persons seeking awards by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under section 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall (a) file, on or before the date that is sixty (60) days after the Effective Date, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred (a "Final Fee Application") and (b) be paid in full by New TMB, in Cash, in such amounts as are

Allowed by the Bankruptcy Court in accordance with the order relating to or Allowing any such Administrative Claim. Notice of a hearing (the "Final Fee Hearing") on the Final Fee Applications shall be provided in accordance with the Bankruptcy Rules and Local Rules. TMB and/or New TMB are authorized to pay compensation for professional services rendered and reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

21. Therefore, the Debtor may not pay Fee Claims absent prior Court approval, and therefore that all such Fee Claims and corresponding payments are subject to prior Court approval and the reasonableness requirements under sections 328 and/or 330 of the Bankruptcy Code.

### E. The Debtor Has Disclosed or Will Disclose all Necessary Information Regarding Directors, Officers, and Insiders.

22. I believe that the disclosure of the proposed directors and officers, as set forth in the Disclosure Statement, the Plan and the Plan Supplement, each as may be amended, supplemented, or modified from time to time or at the Confirmation Hearing, is consistent with the interests of creditors and equity security holders and with public policy. The proposed initial directors and officers of the Reorganized Debtor are competent, have relevant and solid business and industry experience, and will give the Reorganized Debtor both continuity and fresh insight into running the business. Moreover, the disclosure of directors and officers specifies or will specify the nature of any compensation for any proposed member of the Reorganized Debtor and any such member who may be considered an insider.

### F. The Plan Is in the Best Interests of Creditors.

23. I understand that section 1129(a)(7) of the Bankruptcy Code sets forth the "Best Interests Test" for confirmation of a chapter 11 plan and generally provides that for each class of

9

impaired claims or interests, each holder in such class has accepted the plan or "will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date . . . ."  Each holder of an impaired Claim or Equity Interests either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Equity Interests, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on such date.

      G.      **The Plan Is Feasible.**

24. I understand that to satisfy the feasibility requirement of section 1129(a)(11) of the Bankruptcy Code, a debtor must demonstrate that confirmation of a plan of reorganization is not likely to be followed by the liquidation, or the need for further financial reorganization, of a debtor or any successor to such debtor.  I believe that the Debtor has satisfied this requirement.

25. Based on the evidence submitted regarding feasibility through the Disclosure Statement and the evidence to be proffered in connection with the Confirmation Hearing, I believe that the Reorganized Debtor will have sufficient remaining liquidity after honoring its obligations under the Plan to conduct its business operations and that confirmation of the Plan is not likely to be followed by liquidation or the need for further reorganization.

      H.      **The Plan Is Fair and Equitable and Does not Unfairly Discriminate with Respect to the Deemed Rejecting Class.**

26. I understand that to "cram down" the Plan on the non-accepting, Impaired Class, the Plan must not discriminate unfairly and must be "fair and equitable" with respect to such Class.  I believe the Plan satisfies the absolute priority rule with respect to all Claims and Equity Interests.  Only Class 5, Equity Interests, is deemed to reject the Plan.  Under the Plan, there are

no classes junior to Class 5.  Accordingly, I believe the Plan is "fair and equitable" with respect to all Impaired Classes of Claims and Equity Interests and satisfies section 1129(b) of the Bankruptcy Code.

27. I also believe that the Plan does not unfairly discriminate between holders of Claims and Equity Interests with similar legal rights.  I believe that the Plan's treatment of Class 5 is proper because all similarly situated holders of Equity Interests will receive substantially similar treatment on account of their Equity Interests and the Plan's classification scheme rests on a legally acceptable rationale.  Class 5 constitutes Equity Interests, which are not similarly situated—legally or otherwise—to any other Class.  Thus, I believe that the Plan does not discriminate unfairly with respect to impaired dissenting Equity Interests and satisfies the requirements of section 1129(b) and the Plan may be confirmed notwithstanding the deemed rejection by Class 5.

### I. The Release, Exculpation and Injunction Provisions are Integral to the Plan.

28. Article VII of the Plan seeks to implement release, exculpation and injunction provisions.  I believe that these provisions are appropriate because they are integral to the success of the Plan and the restructuring transactions underlying the Plan, as evidenced by the facts and circumstances of this chapter 11 case.  The release, exculpation and injunction provisions are given for valuable consideration, are fair and equitable and in the best interests of the Debtor's estate, and do not release claims or liabilities arising from gross negligence, fraud or willful misconduct.  Additionally, the Plan, including the release, exculpation and injunction provisions, has been unanimously accepted by the Class entitled to vote on the Plan.

29. The Debtor, its officers, directors, representatives and advisors made many contributions and difficult decisions leading to the successful restructuring embodied in the Plan.

11

9766042.2

Similarly, NEA and its advisors and representatives also made many material and substantial contributions leading to the success of the Plan. Accordingly, I understand that these parties will all receive the benefit of the release and exculpation provisions enforceable pursuant to the injunction provisions of the Plan. I believe that these contributions became critical components of the Plan.

### III.     Good Cause Exists to Waive the Stay of the Confirmation Order.

30.     I understand that certain Bankruptcy Rules provide for the stay of an order confirming a plan of reorganization, but that such stay may be waived upon court order after a showing of good cause.

31.     I believe that good cause exists for waiving and eliminating any stay of the entry of the proposed Confirmation Order so that the proposed Confirmation Order will be effective immediately upon its entry. As noted above, this chapter 11 case and the related transactions have been negotiated and implemented in good faith. Additionally, each day the Debtor remains in chapter 11 it incurs significant administrative and professional costs. For these reasons, the Debtor, its advisors, and NEA are working to expedite the Debtor's entry into and consummation of the Exit Facility and the documents and transactions related thereto so that the Effective Date of the Plan may occur as soon as possible after the confirmation date. The Debtor has not established a proposed date for the Effective Date of the Plan as of yet, but desires for the foregoing reasons to emerge as early as possible. Based on the foregoing, I believe that good cause exists to waive any stay imposed by the Bankruptcy Rules so that the Proposed Confirmation Order may be effective immediately upon its entry.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 13, 2016               Respectfully submitted,

                                      */s/ Tamara Mellon*
                                      Tamara Mellon